APPEAL,E−FILE,PSEUDO−GR,TYPE−D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25−cv−00766−JEB</u>
### *Internal Use Only*

J.G.G. et al v. TRUMP et al

Assigned to: Chief Judge James E. Boasberg

Related Case:  1:25−cv−01774−JEB

Case in other court:  USCA, 25−05068

               USCA, 25−05068

               USCA, 25−05124

Cause: 28:1331 Federal Question: Other Civil Rights

Date Filed: 03/15/2025

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: U.S. Government Defendant

**Plaintiff**

| | | |
|---|---|---|
| **J.G.G.** | represented by | **Aditi Shah** |
| | | AMERICAN CIVIL LIBERTIES UNION OF DC |
| | | 529 14th Street NW |
| | | Ste 722 |
| | | Washington, DC 20045 |
| | | 202−457−0800 |
| | | Email: ashah@acludc.org |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Arthur B. Spitzer** |
| | | ACLU OF THE DISTRICT OF COLUMBIA |
| | | 529 14th Street, NW |
| | | Suite 722 |
| | | Washington, DC 20045 |
| | | 202−601−4266 |
| | | Email: aspitzer@acludc.org |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Ashley Gorski** |
| | | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| | | 125 Broad Street |
| | | 18th Floor |
| | | New York, NY 10004 |
| | | 212−284−7305 |
| | | Email: agorski@aclu.org |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Audrey Jordan Wiggins** |
| | | DEMOCRACY FORWARD FOUNDATION |
| | | P.O. Box 34553 |

Washington, DC 20043
202–448–9090
Email: awiggins@democracyforward.org
*TERMINATED: 05/23/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bradley Girard**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
201–824–1304
Email: bgirard@democracyforward.org
*ATTORNEY TO BE NOTICED*

**Brian D. Netter**
DEMOCRACY FORWARD
FOUNDATION
PO Box 34553
Washington, DC 20043
202–808–1846
Email: bnetter@democracyforward.org
*ATTORNEY TO BE NOTICED*

**Cecillia D. Wang**
ACLU
425 California St
Suite 700
San Francisco, CA 94104
415–343–0775
Email: cwang@aclu.org
*ATTORNEY TO BE NOTICED*

**Christine L. Coogle**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
202–448–9090
Email: christine.l.coogle@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street
Suite 7th Floor
San Francisco, CA 94104
415–343–0785
Email: cwofsy@aclu.org
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
Suite 18th Floor
New York
New York, NY 10004
646–905–8907
Email: dgalindo@aclu.org
*ATTORNEY TO BE NOTICED*

**Evelyn Danforth–Scott**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street
Ste 7th Floor
San Francisco, CA 94104
415–343–0780
Email: edanforth–scott@aclu.org
*ATTORNEY TO BE NOTICED*

**Hina Shamsi**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th floor
New York, NY 10004
(212) 284–7321
Fax: (212) 549–2654
Email: hshamsi@aclu.org
*ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
212–519–7848
Email: m.tan@aclu.org
*ATTORNEY TO BE NOTICED*

**Michael Lawrence Waldman**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
202–442–9090
Email: mwaldman@democracyforward.org
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

3

**My Khanh Ngo**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street
Ste 7th Floor
San Francisco, CA 94104
718–483–5885
Email: mngo@aclu.org
*ATTORNEY TO BE NOTICED*

**Noelle Smith**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street
Ste 7th Floor
San Francisco, CA 94104
214–663–7451
Email: nsmith@aclu.org
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
(212) 549–2620
Fax: (212) 549–2654
Email: ojadwat@aclu.org
*ATTORNEY TO BE NOTICED*

**Oscar Sarabia Roman**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street
Ste 7th Floor
San Francisco, CA 94104
916–813–7891
Email: osarabia@aclu.org
*ATTORNEY TO BE NOTICED*

**Patrick Toomey**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
212–519–7816
Email: ptoomey@aclu.org
*ATTORNEY TO BE NOTICED*

**Pooja Boisture**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
202–448–9090
Email: pboisture@democracyforward.org
*TERMINATED: 05/23/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rich**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
202–274–7652
Email: srich@democracyforward.org
*TERMINATED: 05/28/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
ACLU FOUNDATION OF THE
DISTRICT OF COLUMBIA
529 14th Street NW, Suite 722
Washington, DC 20045
202–601–4267
Email: smichelman@acludc.org
*ATTORNEY TO BE NOTICED*

**Sidra Mahfooz**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, NY 10004
631–741–3383
Email: smahfooz@aclu.org
*ATTORNEY TO BE NOTICED*

**Skye Perryman**
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, DC 20043
254–722–5745
Email: sperryman@democracyforward.org
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**Somil Trivedi**
DEMOCRACY FORWARD

FOUNDATION
P.O. Box 34553
Washington, DC 20043
202–904–7727
Email: strivedi@democracyforward.org
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
AMERICAN CIVIL LIBERTIES UNION
125 Broad St.
18th Floor
New York, NY 10004
212–549–2616
Fax: 212–549–2654
Email: lgelernt@aclu.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**G.F.F.**                          represented by    **Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Gorski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Audrey Jordan Wiggins**
(See above for address)
*TERMINATED: 05/23/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bradley Girard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian D. Netter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cecillia D. Wang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine L. Coogle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evelyn Danforth–Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hina Shamsi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Lawrence Waldman**
(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**My Khanh Ngo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noelle Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Oscar Sarabia Roman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Toomey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pooja Boisture**
(See above for address)
*TERMINATED: 05/23/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rich**
(See above for address)
*TERMINATED: 05/28/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sidra Mahfooz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Skye Perryman**
(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**Somil Trivedi**
(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**J.G.O.**                          represented by   **Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Gorski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Audrey Jordan Wiggins**
(See above for address)
*TERMINATED: 05/23/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bradley Girard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian D. Netter**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Cecillia D. Wang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine L. Coogle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evelyn Danforth–Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hina Shamsi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Lawrence Waldman**
(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**My Khanh Ngo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noelle Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Oscar Sarabia Roman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Toomey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pooja Boisture**
(See above for address)
*TERMINATED: 05/23/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rich**
(See above for address)
*TERMINATED: 05/28/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sidra Mahfooz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Skye Perryman**
(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**Somil Trivedi**
(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**W.G.H.**                                    represented by  **Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Gorski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Audrey Jordan Wiggins**

(See above for address)
*TERMINATED: 05/23/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bradley Girard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian D. Netter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cecillia D. Wang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine L. Coogle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evelyn Danforth–Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hina Shamsi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Lawrence Waldman**
(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**My Khanh Ngo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noelle Smith**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Oscar Sarabia Roman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Toomey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pooja Boisture**
(See above for address)
*TERMINATED: 05/23/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rich**
(See above for address)
*TERMINATED: 05/28/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sidra Mahfooz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Skye Perryman**
(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**Somil Trivedi**
(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**J.A.V.**                          represented by **Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Arthur B. Spitzer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ashley Gorski**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Audrey Jordan Wiggins**
(See above for address)
*TERMINATED: 05/23/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bradley Girard**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brian D. Netter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cecillia D. Wang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine L. Coogle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Cody H. Wofsy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Daniel Antonio Galindo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Evelyn Danforth–Scott**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Hina Shamsi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Lawrence Waldman**

(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**My Khanh Ngo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Noelle Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Omar C. Jadwat**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Oscar Sarabia Roman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick Toomey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pooja Boisture**
(See above for address)
*TERMINATED: 05/23/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sarah Rich**
(See above for address)
*TERMINATED: 05/28/2025*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sidra Mahfooz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Skye Perryman**
(See above for address)
*TERMINATED: 05/23/2025*
*ATTORNEY TO BE NOTICED*

**Somil Trivedi**
(See above for address)
*TERMINATED: 05/23/2025*

*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**M.Z.V.V.**                                      represented by  **Aditi Shah**
*as next friend on behalf of J.A.B.V.*                            (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Michael King Thomas Tan**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Lee Gelernt**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**M.Y.O.R.**                                      represented by  **Aditi Shah**
*as next friend on behalf of M.A.O.R.*                           (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Michael King Thomas Tan**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Lee Gelernt**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**M.M.A.A.**                                      represented by  **Aditi Shah**
*as next friend on behalf of G.A.A.A.*                           (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Michael King Thomas Tan**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Lee Gelernt**
                                                                 (See above for address)
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**D.A.R.H.**                                      represented by  **Aditi Shah**
*as next friend on behalf of ANDRY JOSE*                         (See above for address)
*HERNANDEZ ROMERO*                                               *ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**EYLAN SCHILMAN**                    represented by    **Aditi Shah**
*as next friend on behalf of T.C.I.*                    (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LIYANARA SANCHEZ**                  represented by    **Aditi Shah**
*as next friend on behalf of FRENGEL*                   (See above for address)
*REYES MOTA*                                            *ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DORYS MENDOZA**                     represented by    **Aditi Shah**
*as next friend on behalf of M.R.M.*                    (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Michael King Thomas Tan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lee Gelernt**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**DONALD J. TRUMP**
*in his official capacity as President of the*
*United States*

represented by  **Abhishek Kambli**
DOJ–USAO
950 Pennsylvania Avenue, NW
Washington, DC 20530–0001
202–445–5496
Email: abhishek.kambli@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**August Edward Flentje**
DOJ–Civ
PO Box 868 Ben Franklin Station
Washington, DC 20044
202–514–3309
Email: august.flentje@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
US DEPARTMENT OF JUSTICE, CIVIL
DIVISION
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
(202) 598–8770
Email: christina.p.greer@usdoj.gov
*TERMINATED: 03/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C Ensign**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue
Washington, DC 20004
202–514–2331
Email: drew.c.ensign@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
U.S. DEPARTMENT OF JUSTICE
Office of Immigration Litigation,
Appellate Section
PO BOX 878
Ben Franklin Station
Washington, DC 20044
(202) 616–9344
Email: ernesto.h.molina@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Tiberius T Davis**
DOJ–Civ

Civil Division
950 Pennsylvania Avenue
Suite 400
Washington, DC 20530–0001
202–326–7924
Email: tiberius.davis@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAMELA J. BONDI**
*Attorney General of the United States, in her official capacity*

represented by **Abhishek Kambli**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**August Edward Flentje**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
(See above for address)
*TERMINATED: 03/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C Ensign**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tiberius T Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**KRISTI NOEM**
*Secretary of the U.S. Department of Homeland Security, in her official capacity*

represented by **Abhishek Kambli**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**August Edward Flentje**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
(See above for address)

*TERMINATED: 03/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C Ensign**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tiberius T Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **U.S. DEPARTMENT OF HOMELAND SECURITY** | represented by | **Abhishek Kambli**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**August Edward Flentje**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
(See above for address)
*TERMINATED: 03/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C Ensign**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tiberius T Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **MADISON SHEAHAN**<br>*Acting Director and Senior Official*<br>*Performing the Duties of the Director of* | represented by | **Abhishek Kambli**<br>(See above for address)<br>*LEAD ATTORNEY* |

*U.S. Immigration and Customs Enforcement, in her official capacity*

ATTORNEY TO BE NOTICED

**August Edward Flentje**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
(See above for address)
*TERMINATED: 03/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C Ensign**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tiberius T Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

represented by **Abhishek Kambli**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**August Edward Flentje**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
(See above for address)
*TERMINATED: 03/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C Ensign**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

Tiberius T Davis
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MARCO RUBIO**                    represented by    **Abhishek Kambli**
*Secretary of State, in his official capacity*        (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**August Edward Flentje**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
(See above for address)
*TERMINATED: 03/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C Ensign**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tiberius T Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. STATE DEPARTMENT**          represented by    **Abhishek Kambli**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**August Edward Flentje**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christina Greer**
(See above for address)
*TERMINATED: 03/19/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Drew C Ensign**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ernesto Horacio Molina , Jr.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tiberius T Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PETER B. HEGSETH**
*Secretary of Defense, in his official
capacity*

represented by **Tiberius T Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF DEFENSE**

represented by **Drew C Ensign**
U.S. DEPARTMENT OF JUSTICE
Civil Division
950 Pennsylvania Avenue
Washington, DC 20004
202–514–2331
Email: drew.c.ensign@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiberius T Davis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**BRANDON GILL**
*The Honorable*

represented by **Andrew Block**
AMERICA FIRST LEGAL
FOUNDATION
611 Pennsylvania Avenue SE
#231
Washington, DC 20003
202–836–7958
Email: andrew.block@aflegal.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**JANICE WOLK GRENADIER**
*TERMINATED: 03/27/2025*

represented by **JANICE WOLK GRENADIER**
15 West Spring Street
Alexandria, VA 22301
(202) 268–7178

PRO SE

**Movant**

**JOHN W. KEKER**                represented by    **Steven A. Hirsch**
COMPLEX APPELLATE LITIGATION
GROUP LLP
96 Jessie Street
San Francisco, CA 94105
415−649−6700
Email: steve.hirsch@calg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**ROBERT A. VAN NEST**           represented by    **Steven A. Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**ELLIOT R. PETERS**             represented by    **Steven A. Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**LAURIE CARR MIMS**             represented by    **Steven A. Hirsch**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**COOLIDGE REAGAN**              represented by    **Dan Backer**
**FOUNDATION**                   CHALMERS, ADAMS, BACKER &
KAUFMAN LLC
10521 Judicial Drive
Suite 200−A
Fairfax, VA 22030
202−210−5431
Fax: 202−478−0750
Email: dbacker@ChalmersAdams.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**JOSHUA HALL**                  represented by    **JOSHUA HALL**
*TERMINATED: 06/04/2025*         #104525
DAUPHIN COUNTY PRISON
501 MALL ROAD

HARRISBURG, PA 17111–1299
PRO SE

**Amicus**

**MARK J. ROZELL**                    represented by  **Kelly Brian McClanahan**
                                                       NATIONAL SECURITY COUNSELORS
                                                       1451 Rockville Pike
                                                       Suite 250
                                                       Rockville, MD 20852
                                                       501–301–4672
                                                       Fax: 240–681–2189
                                                       Email: kel@nationalsecuritylaw.org
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**HEIDI KITROSSER**                   represented by  **Kelly Brian McClanahan**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**MITCHEL A. SOLLENBERGER**           represented by  **Kelly Brian McClanahan**
                                                       (See above for address)
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**MEGHAN KELLY**                      represented by  **MEGHAN KELLY**
                                                       34012 Shawnee Drive
                                                       34012 Shawnee Drive
                                                       Dagsboro, DE 19939
                                                       302–278–2975
                                                       Email: meghankellyesq@yahoo.com
                                                       PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 03/15/2025 | 1 | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC–11544662) filed by J.G.O., G.F.F., J.G.G., W.G.H., J.A.V.. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Donald J. Trump, # 3 Summons Pamela Bondi, # 4 Summons Kristi Noem, # 5 Summons DHS, # 6 Summons Madison Sheahan, # 7 Summons ICE, # 8 Summons Marco Rubio, # 9 Summons DOS, # 10 Summons USAO)(Gelernt, Lee) (Entered: 03/15/2025) |
| 03/15/2025 | 2 | SEALED MOTION to Proceed Under Pseudonym filed by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V. (Attachments: # 1 Declaration of J.G.G., # 2 Declaration of W.G.H., # 3 Declaration of Molly Lauterback, # 4 Declaration of J.A.V., # 5 Declaration of Grace Carney, # 6 Text of Proposed Order)(Gelernt, Lee) (Entered: 03/15/2025) |

| 03/15/2025 | 3 | MOTION for Temporary Restraining Order by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Attachments: # 1 Certificate of Counsel, # 2 Memorandum in Support, # 3 Declaration of J.G.G., # 4 Declaration of Grace Carney, # 5 Declaration of J.G.O., # 6 Declaration of W.G.H., # 7 Declaration of Molly Laterback, # 8 Declaration of J.A.V., # 9 Text of Proposed Order)(Gelernt, Lee) (Entered: 03/15/2025) |
|---|---|---|
| 03/15/2025 | 4 | MOTION to Certify Class by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Attachments: # 1 Declaration of Daniel Galindo, # 2 Text of Proposed Order)(Gelernt, Lee) (Entered: 03/15/2025) |
| 03/15/2025 | 5 | NOTICE of Appearance by Daniel Antonio Galindo on behalf of All Plaintiffs (Galindo, Daniel) (Entered: 03/15/2025) |
| 03/15/2025 | | MINUTE ORDER granting 2 SEALED MOTION to Proceed Under Pseudonym. The Court has reviewed Plaintiffs' 2 Motion to Proceed Pseudonymously. Given the expedited nature of this matter, it determines that a full Opinion is not practical at this time. Believing that Plaintiffs have made the required showing on the relevant factors, the Court ORDERS that: 1) Their 2 Motion is GRANTED; and 2) They shall be permitted to proceed pseudonymously unless and until the assigned judge determines otherwise. Signed by Chief Judge James E. Boasberg on 3/15/2025. (zjd) Modified on 3/15/2025 (zjd). (Entered: 03/15/2025) |
| 03/15/2025 | | Case Assigned to Chief Judge James E. Boasberg. (zjd) (Entered: 03/15/2025) |
| 03/15/2025 | 6 | SUMMONS (9) Issued Electronically as to All Defendants, U.S. Attorney, and U.S. Attorney General. (Attachments: # 1 Notice and Consent) (zjd) (Entered: 03/15/2025) |
| 03/15/2025 | 7 | NOTICE of Appearance by Bradley Girard on behalf of All Plaintiffs (Girard, Bradley) (Entered: 03/15/2025) |
| 03/15/2025 | | MINUTE ORDER: The Court has reviewed Plaintiffs' Complaint and Motion for Temporary Restraining Order. Given the exigent circumstances that it has been made aware of this morning, it has determined that an immediate Order is warranted to maintain the status quo until a hearing can be set. As Plaintiffs have satisfied the four factors governing the issuance of preliminary relief, the Court accordingly ORDERS that: 1) Plaintiffs' 3 Motion for TRO is GRANTED; 2) Defendants shall not remove any of the individual Plaintiffs from the United States for 14 days absent further Order of the Court; and 3) The parties shall appear for a Zoom hearing on March 17, 2025, at 4:00 p.m. The hearing will proceed by videoconference for the parties and by telephone for members of the public. Toll free number: 833–990–9400. Meeting ID: 049550816. So ORDERED by Chief Judge James E. Boasberg on 3/15/2025. (lcjeb1) Modified to add public access line on 3/15/2025 (znbn). (Entered: 03/15/2025) |
| 03/15/2025 | 8 | NOTICE of Appearance by Skye Perryman on behalf of All Plaintiffs (Perryman, Skye) (Entered: 03/15/2025) |
| 03/15/2025 | 9 | NOTICE of Appearance by Somil Trivedi on behalf of All Plaintiffs (Trivedi, Somil) (Entered: 03/15/2025) |
| 03/15/2025 | | MINUTE ORDER: The Court ORDERS that the parties shall appear for Zoom hearing on Plaintiffs' 4 Motion for Class Certification on March 15, 2025, at 5:00 p.m. The hearing will proceed by videoconference for the parties and by telephone for members of the public. Toll free number: 833–990–9400. Meeting ID: 049550816. So ORDERED by Chief Judge James E. Boasberg on 3/15/2025. (lcjeb1) (Entered: 03/15/2025) |

| 03/15/2025 | 10 | NOTICE of Appearance by Scott Michelman on behalf of All Plaintiffs (Michelman, Scott) (Entered: 03/15/2025) |
|---|---|---|
| 03/15/2025 | | Set/Reset Hearings: Hearing set for 3/17/2025 at 04:00 PM via Zoom (Audio Line Available) before Chief Judge James E. Boasberg. (znbn) Modified to correct hearing location on 3/15/2025 (znbn). (Entered: 03/15/2025) |
| 03/15/2025 | 11 | NOTICE of Appearance by Christina Greer on behalf of All Defendants (Greer, Christina) (Entered: 03/15/2025) |
| 03/15/2025 | 12 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to Order on Motion for TRO,,, by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY. Fee Status: No Fee Paid. Parties have been notified. (Greer, Christina) (Entered: 03/15/2025) |
| 03/15/2025 | 13 | NOTICE of Appearance by Arthur B. Spitzer on behalf of All Plaintiffs (Spitzer, Arthur) (Entered: 03/15/2025) |
| 03/15/2025 | 14 | Transmission of the Notice of Appeal, Minute Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 12 Notice of Appeal to DC Circuit Court. (zjd) (Entered: 03/15/2025) |
| 03/15/2025 | 15 | ENTERED IN ERROR.....NOTICE of Appearance by Christina Greer on behalf of All Defendants (Greer, Christina) Modified on 3/17/2025; refiled as docket entry 16 (znmw). (Entered: 03/15/2025) |
| 03/15/2025 | 16 | NOTICE of Appearance by Drew C Ensign on behalf of All Defendants (Ensign, Drew) (Entered: 03/15/2025) |
| 03/15/2025 | | Minute Entry for proceedings held before Chief Judge James E. Boasberg: Motion Hearing held via Zoom (with public access line) on 3/15/2025 re 4 MOTION to Certify Class filed by J.G.O., W.G.H., J.G.G., G.F.F., J.A.V.. Oral arguments heard. Order forthcoming. (Court Reporter Tammy Nestor) (znbn) (Entered: 03/15/2025) |
| 03/15/2025 | | MINUTE ORDER: As discussed in today's hearing, the Court ORDERS that: 1) Plaintiffs' 4 Motion for Class Certification is GRANTED insofar as a class consisting of "All noncitizens in U.S. custody who are subject to the March 15, 2025, Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua' and its implementation" is provisionally certified; 2) The Government is ENJOINED from removing members of such class (not otherwise subject to removal) pursuant to the Proclamation for 14 days or until further Order of the Court; 3) The Government shall file any Motion to Vacate this TRO by March 17, 2025, with Plaintiffs' Opposition due by March 19, 2025; and 4) The hearing set for March 17, 2025, is VACATED and RESET for March 21, 2025, at 2:30 p.m. via Zoom. So ORDERED by Chief Judge James E. Boasberg on 3/15/2025. (lcjeb1) (Entered: 03/15/2025) |
| 03/15/2025 | 17 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to Order on Motion to Certify Class,,,, Set/Reset Deadlines,,,, by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY. Fee Status: No Fee Paid. Parties |

| | | |
|---|---|---|
| | | have been notified. (Greer, Christina) (Entered: 03/15/2025) |
| 03/15/2025 | 18 | Transmission of the Notice of Appeal, Minute Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 17 Notice of Appeal to DC Circuit Court. (zjd) (Entered: 03/15/2025) |
| 03/15/2025 | | USCA Case Number 25−5067 for 12 Notice of Appeal to DC Circuit Court, filed by DONALD J. TRUMP, MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, U.S. STATE DEPARTMENT, PAMELA BONDI. (zjm) Modified on 3/17/2025 to correct case number (zjm). (Entered: 03/17/2025) |
| 03/15/2025 | | USCA Case Number 25−5068 for 17 Notice of Appeal to DC Circuit Court, filed by DONALD J. TRUMP, MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. DEPARTMENT OF HOMELAND SECURITY, KRISTI NOEM, U.S. STATE DEPARTMENT, PAMELA BONDI. (zjm) (Entered: 03/17/2025) |
| 03/16/2025 | 19 | NOTICE by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY (Ensign, Drew) (Entered: 03/16/2025) |
| 03/16/2025 | 20 | TRANSCRIPT OF PROCEEDINGS before Chief Judge James E. Boasberg held on 3/15/25; Page Numbers: 1–47. Court Reporter/Transcriber Tammy Nestor, tammy_nestor@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/6/2025. Redacted Transcript Deadline set for 4/16/2025. Release of Transcript Restriction set for 6/14/2025.(Nestor, Tammy) (Entered: 03/16/2025) |
| 03/17/2025 | 21 | RESPONSE re 19 Notice (Other) filed by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Gelernt, Lee) (Entered: 03/17/2025) |
| 03/17/2025 | | MINUTE ORDER: The Court ORDERS that the parties shall appear in person (or by Zoom if necessary) for a hearing at 4:00 p.m. today regarding the 19 Notice and 21 Response. The Government shall be prepared to provide answers to the questions raised by Plaintiffs on page 6 of their Response. So ORDERED by Chief Judge James E. Boasberg on 3/17/2025. (lcjeb1) (Entered: 03/17/2025) |

| 03/17/2025 | | MINUTE ORDER: The Court ORDERS that, in order to accommodate the parties' schedules, the hearing set for today at 4:00 p.m. is VACATED and RESET for 5:00 p.m. The hearing will proceed in–person for the parties and by telephone for members of the public. Toll free number: 833–990–9400. Meeting ID: 049550816. Any use of the public–access telephone line requires adherence to the general prohibition against photographing, recording, livestreaming, and rebroadcasting of court proceedings (including those held by telephone or videoconference), as set out in Standing Order No. 24–31 (JEB). Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or other sanctions deemed necessary by the Court. So ORDERED by Chief Judge James E. Boasberg on 3/17/2025. (lcjeb1) (Entered: 03/17/2025) |
| --- | --- | --- |
| 03/17/2025 | 22 | NOTICE of Appearance by August Edward Flentje on behalf of All Defendants (Flentje, August) (Entered: 03/17/2025) |
| 03/17/2025 | | Set/Reset Hearings: Miscellaneous Hearing set for 3/17/2025 at 05:00 PM in Courtroom 22A– In Person (Audio Line Available) before Chief Judge James E. Boasberg. Motion Hearing set for 3/21/2025 at 02:30 PM via Zoom (Audio Line Available) before Chief Judge James E. Boasberg. (znbn) (Entered: 03/17/2025) |
| 03/17/2025 | 23 | NOTICE of Appearance by Abhishek Kambli on behalf of All Defendants (Kambli, Abhishek) (Entered: 03/17/2025) |
| 03/17/2025 | 24 | MOTION to Vacate *Response and Motion to Vacate Hearing* re 19 Notice (Other), Order,,,, Set Hearings,,, Set/Reset Hearings, 21 Response to Document by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY. (Ensign, Drew) Modified event on 3/17/2025 (znmw). (Entered: 03/17/2025) |
| 03/17/2025 | | MINUTE ORDER: The Court ORDERS that Defendants' 24 Motion to Vacate is DENIED. The hearing will proceed as scheduled. So ORDERED by Chief Judge James E. Boasberg on 3/17/2025. (lcjeb1) (Entered: 03/17/2025) |
| 03/17/2025 | | Minute Entry for proceedings held before Chief Judge James E. Boasberg: Hearing held on 3/17/2025. Oral arguments heard. Order forthcoming. (Court Reporter Tammy Nestor) (znbn) (Entered: 03/17/2025) |
| 03/17/2025 | | MINUTE ORDER: As discussed in today's hearing, the Court ORDERS that by 12:00 p.m. on March 18, 2025, the Government shall file a Notice, which may, if necessary, be sealed in part, setting forth: 1) A sworn declaration that no one on any flight departing the United States after 7:25 p.m. on March 15, 2025, was removed solely on the basis of the Proclamation at issue; 2) A sworn declaration setting forth when the Proclamation at issue was signed, when it was made public, and when it went into effect; 3) The Government's best estimate of the number of individuals subject to the Proclamation currently remaining in the United States and how many are currently in U.S. custody; and 4) The Government's position on whether, and in what form, it will provide answers to the Court's questions regarding the particulars of the flights. Such form could include *in camera* review or in a classified setting. If the Government takes the position that it will not provide that information to the Court under any circumstances, it must support such position, including with classified authorities if necessary. So ORDERED by Chief Judge James E. Boasberg on 3/17/2025. (lcjeb1) (Entered: 03/17/2025) |

| 03/17/2025 | 25 | TRANSCRIPT OF PROCEEDINGS before Chief Judge James E. Boasberg held on 3/17/25; Page Numbers: 1–31. Court Reporter/Transcriber Tammy Nestor, tammy_nestor@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/7/2025. Redacted Transcript Deadline set for 4/17/2025. Release of Transcript Restriction set for 6/15/2025.(Nestor, Tammy) (Entered: 03/17/2025) |
| --- | --- | --- |
| 03/17/2025 | 26 | MOTION to Vacate re 3/15/2025 Minute Orders on Temporary Restraining Order and Certification of Class by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY. (Attachments: # 1 Declaration Declaration of Robert L. Cerna, # 2 Declaration Declaration of Michael G. Kozak)(Flentje, August) Modified event and docket text on 3/18/2025 (znmw). (Entered: 03/17/2025) |
| 03/18/2025 | 27 | NOTICE of Appearance by Hina Shamsi on behalf of All Plaintiffs (Shamsi, Hina) (Entered: 03/18/2025) |
| 03/18/2025 | 28 | NOTICE *in Response to March 17 Minute Order* by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY (Attachments: # 1 Affidavit Cerna Declaration)(Ensign, Drew) (Entered: 03/18/2025) |
| 03/18/2025 |  | MINUTE ORDER: The Court ORDERS that the Zoom hearing set for March 21, 2025, at 2:30 p.m. shall now take place in Courtroom 22A. Members of the public may attend in person or by telephone. Toll free number: 833–990–9400. Meeting ID: 049550816. Any use of the public–access telephone line requires adherence to the general prohibition against photographing, recording, livestreaming, and rebroadcasting of court proceedings (including those held by telephone or videoconference), as set out in Standing Order No. 24–31 (JEB). Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or other sanctions deemed necessary by the Court. So ORDERED by Chief Judge James E. Boasberg on 3/18/2025. (lcjeb1) (Entered: 03/18/2025) |
| 03/18/2025 | 29 | NOTICE of Appearance– Pro Bono by Noelle Smith on behalf of All Plaintiffs (Smith, Noelle) (Entered: 03/18/2025) |
| 03/18/2025 | 30 |  |

| | | |
|---|---|---|
| | | NOTICE of Appearance– Pro Bono by Omar C. Jadwat on behalf of All Plaintiffs (Jadwat, Omar) (Entered: 03/18/2025) |
| 03/18/2025 | | MINUTE ORDER: In response to Defendants' 28 Notice at page 2, the Court ORDERS that by 12:00 p.m. on March 19, 2025, Defendants shall file *ex parte* and under seal (or submit to the Court) a declaration providing the following details regarding each of the two flights leaving U.S. airspace before 7:25 p.m. on March 15, 2025: 1) What time did the plane take off from U.S. soil and from where? 2) What time did it leave U.S. airspace? 3) What time did it land in which foreign country (including if it made more than one stop)? 4) What time were individuals subject solely to the Proclamation transferred out of U.S. custody? and 5) How many people were aboard solely on the basis of the Proclamation? So ORDERED by Chief Judge James E. Boasberg on 3/18/2025. (lcjeb1) (Entered: 03/18/2025) |
| 03/18/2025 | 31 | NOTICE of Appearance– Pro Bono by Sidra Mahfooz on behalf of All Plaintiffs (Mahfooz, Sidra) (Entered: 03/18/2025) |
| 03/18/2025 | 32 | NOTICE of Appearance– Pro Bono by Oscar Sarabia Roman on behalf of All Plaintiffs (Sarabia Roman, Oscar) (Entered: 03/18/2025) |
| 03/18/2025 | 33 | NOTICE of Appearance– Pro Bono by Ashley Gorski on behalf of All Plaintiffs (Gorski, Ashley) (Entered: 03/18/2025) |
| 03/18/2025 | 34 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Sarah M. Rich, Filing fee $ 100, receipt number ADCDC–11550426. Fee Status: Fee Paid. by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing)(Girard, Bradley) (Entered: 03/18/2025) |
| 03/18/2025 | 35 | NOTICE of Appearance– Pro Bono by Patrick Toomey on behalf of All Plaintiffs (Toomey, Patrick) (Entered: 03/18/2025) |
| 03/18/2025 | | MINUTE ORDER: The Court ORDERS that the 34 Motion for Leave to Appear Pro Hac Vice of Sarah Marion Rich is GRANTED. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)**. Click for instructions. So ORDERED by Chief Judge James E. Boasberg on 3/18/2025. (lcjeb1) (Entered: 03/18/2025) |
| 03/18/2025 | 36 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Audrey Wiggins, Filing fee $ 100, receipt number ADCDC–11551084. Fee Status: Fee Paid. by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing)(Girard, Bradley) (Entered: 03/18/2025) |
| 03/18/2025 | | MINUTE ORDER: The Court ORDERS that the 36 Motion for Leave to Appear Pro Hac Vice of Audrey J. Wiggins is GRANTED. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a)**. Click for instructions. So ORDERED by Chief Judge James E. Boasberg on 3/18/2025. (lcjeb1) (Entered: 03/18/2025) |
| 03/19/2025 | 37 | Emergency MOTION to Stay re Order,,,, Set Deadlines,,, by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY. (Ensign, Drew) (Entered: 03/19/2025) |
| 03/19/2025 | 38 | ORDER: The Court ORDERS that: 1) Defendants' 37 Motion is GRANTED IN PART and DENIED IN PART; and 2) Defendants shall have until March 20, 2025, at |

| | | |
|---|---|---|
| | | 12:00 p.m. to provide the information discussed in the Minute Order of March 18, 2025, or to invoke the state−secrets doctrine and explain the basis for such invocation. Signed by Chief Judge James E. Boasberg on March 19, 2025. (lcjeb3) (Entered: 03/19/2025) |
| 03/19/2025 | 39 | NOTICE of Appearance by Sarah Rich on behalf of J.G.G., G.F.F., J.G.O., W.G.H., J.A.V. (Rich, Sarah) (Entered: 03/19/2025) |
| 03/19/2025 | 40 | NOTICE of Appearance by Audrey Jordan Wiggins on behalf of J.G.G., G.F.F., J.G.O., W.G.H., J.A.V. (Wiggins, Audrey) (Entered: 03/19/2025) |
| 03/19/2025 | 41 | NOTICE of Appearance by Cody H. Wofsy on behalf of All Plaintiffs (Wofsy, Cody) (Entered: 03/19/2025) |
| 03/19/2025 | 42 | NOTICE OF WITHDRAWAL OF APPEARANCE as to MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY. Attorney Christina Greer terminated. (Greer, Christina) (Entered: 03/19/2025) |
| 03/19/2025 | 43 | NOTICE of Appearance− Pro Bono by My Khanh Ngo on behalf of All Plaintiffs (Ngo, My Khanh) (Entered: 03/19/2025) |
| 03/19/2025 | 44 | RESPONSE re 26 MOTION to Vacate *TRO* filed by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Attachments: # 1 Index of Exhibits, # 2 Declaration of Deborah Fleishaker, # 3 Declaration of Juanita Goebertus, # 4 Declaration of Sarah Bishop, # 5 Declaration of Linette Tobin, # 6 Declaration of Austin Thierry, # 7 Declaration of Osvaldo E. Caro−Cruz, # 8 Declaration of Katherine Kim, # 9 Declaration of Karyn Ann Shealy, # 10 Declaration of Stephanie Quintero, # 11 Declaration of Grace Carney, # 12 Declaration of Melissa Smyth, # 13 Declaration of Solanyer Michell Sarabia Gonzalez, # 14 Declaration of Jennifer Venghaus, # 15 Declaration of Oscar Sarabia Roman)(Gelernt, Lee) (Entered: 03/19/2025) |
| 03/20/2025 | 45 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Christine L. Coogle, Filing fee $ 100, receipt number ADCDC−11556213. Fee Status: Fee Paid. by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing)(Girard, Bradley) (Entered: 03/20/2025) |
| 03/20/2025 | 46 | NOTICE of Appearance by Michael Lawrence Waldman on behalf of J.G.G., G.F.F., J.G.O., W.G.H., J.A.V. (Waldman, Michael) (Entered: 03/20/2025) |
| 03/20/2025 | 47 | ORDER: The Court ORDERS that: 1) By March 21, 2025, at 10:00 a.m., Defendants shall submit a sworn declaration by a person with direct involvement in the Cabinet−level discussions regarding invocation of the state−secrets privilege; 2) By March 25, 2025, Defendants shall submit a declaration indicating whether or not the Government is invoking the privilege; 3) By March 25, 2025, Defendants shall file a brief showing cause why they did not violate the Court's Temporary Restraining Orders by failing to return class members removed from the United States on the two earliest planes that departed on March 15, 2025; and 4) Plaintiffs may file any response to such brief by March 31, 2025. Signed by Chief Judge James E. Boasberg on 3/20/2025. (lcjeb1) (Entered: 03/20/2025) |
| 03/20/2025 | 48 | MOTION for Leave to File *Amicus Curiae Brief* by BRANDON GILL. (Attachments: # 1 Exhibit Proposed Brief, # 2 Text of Proposed Order)(Block, Andrew) (Entered: 03/20/2025) |

| 03/20/2025 | 49 | NOTICE by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY (Attachments: # 1 Declaration Declaration of Robert L. Cerna)(Flentje, August) (Entered: 03/20/2025) |
|---|---|---|
| 03/20/2025 | | MINUTE ORDER: The Court ORDERS that the 45 Motion for Leave to Appear Pro Hac Vice of Christine L. Coogle is GRANTED. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Chief Judge James E. Boasberg on 3/20/2025. (lcjeb1) (Entered: 03/20/2025) |
| 03/21/2025 | 50 | RESPONSE TO ORDER OF THE COURT re 47 Order by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY (Attachments: # 1 Declaration)(Flentje, August) Modified event title on 3/21/2025 (znmw). (Entered: 03/21/2025) |
| 03/21/2025 | | Minute Entry for proceedings held before Chief Judge James E. Boasberg: Motion Hearing held on 3/21/2025. Oral arguments heard. Order forthcoming. (Court Reporter Sonja Reeves) (znbn) (Entered: 03/21/2025) |
| 03/21/2025 | | MINUTE ORDER: The Court ORDERS that Amicus's 48 Motion for Leave to File is DENIED as untimely. Filing the night before the hearing does not permit the Court sufficient time to consider the arguments asserted. So ORDERED by Chief Judge James E. Boasberg on 3/21/2025. (lcjeb1) (Entered: 03/21/2025) |
| 03/21/2025 | 51 | TRANSCRIPT OF MOTION HEARING before Chief Judge James E. Boasberg held on March 21, 2025; Page Numbers: 1–65. Date of Issuance:March 21, 2025. Court Reporter/Transcriber Sonja L. Reeves, RDR, CRR, Sonja_Reeves@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 4/11/2025. Redacted Transcript Deadline set for 4/21/2025. Release of Transcript Restriction set for 6/19/2025.(Reeves, Sonja) (Entered: 03/21/2025) |
| 03/24/2025 | 52 | ORDER: For the reasons set forth in the accompanying Memorandum Opinion, the Court ORDERS that: 1) Defendants' 26 Motion to Vacate is DENIED; and 2) If Plaintiffs wish to convert the Temporary Restraining Order into a preliminary injunction, they shall so inform the Court by March 26, 2025. Signed by Chief Judge James E. Boasberg on 3/24/2025. (lcjeb1) (Entered: 03/24/2025) |

| 03/24/2025 | 53 | MEMORANDUM OPINION re 52 Order on Motion to Vacate. Signed by Chief Judge James E. Boasberg on 3/24/2025. (lcjeb1) (Entered: 03/24/2025) |
|---|---|---|
| 03/24/2025 | 54 | NOTICE of Appearance by Christine L. Coogle on behalf of J.G.G., G.F.F., J.G.O., W.G.H., J.A.V. (Coogle, Christine) (Entered: 03/24/2025) |
| 03/24/2025 | 55 | NOTICE *in Response to March 19 Minute Order* by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V. re 47 Order,,,, Set Deadlines,,, (Attachments: # 1 Exhibit A: Declaration of S.Z.F.R., # 2 Exhibit B: Declaration of E.E.P.B.)(Gelernt, Lee) (Entered: 03/24/2025) |
| 03/24/2025 | 56 | NOTICE *Invoking State Secrets Privilege* by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY re 47 Order,,,, Set Deadlines,,, (Attachments: # 1 Affidavit Attorney General Bondi Declaration, # 2 Affidavit Secretary Rubio Declaration, # 3 Affidavit Secretary Noem Declaration)(Ensign, Drew) (Entered: 03/24/2025) |
| 03/25/2025 |  | MINUTE ORDER: Given the Government's 56 Notice Invoking State Secrets Privilege, the Court ORDERS that if Plaintiffs wish to respond, they shall file any Response by March 31, 2025. So ORDERED by Chief Judge James E. Boasberg on 3/25/2025. (lcjeb1) (Entered: 03/25/2025) |
| 03/25/2025 | 57 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Pooja A. Boisture, Filing fee $ 100, receipt number ADCDC–11566919. Fee Status: Fee Paid. by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Attachments: # 1 Declaration, # 2 Certificate of Good Standing)(Girard, Bradley) (Entered: 03/25/2025) |
| 03/25/2025 | 58 | RESPONSE TO ORDER TO SHOW CAUSE re 47 Order by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY. (Ensign, Drew) Modified event title on 3/26/2025 (znmw). (Entered: 03/25/2025) |
| 03/25/2025 | 59 | LEAVE TO FILE DENIED– Janice Wolk Grenadier – Motion. This document is unavailable as the Court denied its filing. Pro Se party has been notified by first class mail. "Leave to file DENIED." Signed by Chief Judge James E. Boasberg on 3/25/2025. (zjm) (Entered: 03/26/2025) |
| 03/25/2025 | 63 | MOTION to Intervene by JANICE WOLK GRENADIER. "Leave to file GRANTED." signed by Chief Judge James E. Boasberg on 3/25/2025 (Attachment: # 1 Exhibits)(zjm) Modified on 3/27/2025 to correct docket text (zjm). (Entered: 03/27/2025) |
| 03/26/2025 |  | MINUTE ORDER: The Court ORDERS that the 57 Motion for Leave to Appear Pro Hac Vice of Pooja Ashok Boisture is GRANTED. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Chief Judge James E. Boasberg on 3/26/2025. (lcjeb1) (Entered: 03/26/2025) |
| 03/26/2025 | 60 | Unopposed MOTION for Leave to File Amicus Brief by MARK J. ROZELL, HEIDI KITROSSER, MITCHEL A. SOLLENBERGER. (Attachments: # 1 Text of Proposed Order)(McClanahan, Kelly) (Entered: 03/26/2025) |
| 03/26/2025 |  | MINUTE ORDER: The Court ORDERS that: 1) The consent 60 Motion for Leave to File Amicus Brief is GRANTED; and 2) Movants shall file any such brief by April 1, |

| | | |
|---|---|---|
| | | 2025. So ORDERED by Chief Judge James E. Boasberg on 3/26/2025. (lcjeb1) (Entered: 03/26/2025) |
| 03/26/2025 | 61 | NOTICE re 52 Order *Regarding Plaintiffs' Motion for a Preliminary Injunction* by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V. (Gelernt, Lee) Modified to add link on 3/27/2025 (znmw). (Entered: 03/26/2025) |
| 03/26/2025 | | MINUTE ORDER: Given Plaintiffs' 61 Notice, the Court ORDERS that: 1) Plaintiffs shall file a Motion to Extend the TRO by 5:00 p.m. on March 27, 2025, and Defendants shall file any Opposition by 12:00 p.m. on March 28, 2025; 2) Plaintiffs shall file their PI Motion by March 28, 2025; Defendants' Opposition shall be due by April 1, 2025; and Plaintiffs' Reply shall be due by April 4, 2025; and 3) The parties shall appear for a hearing on the Motion on April 8, 2025, at 3:00 p.m. So ORDERED by Chief Judge James E. Boasberg on 3/26/2025. (lcjeb1) (Entered: 03/26/2025) |
| 03/27/2025 | 62 | NOTICE of Appearance by Pooja Boisture on behalf of J.G.G., G.F.F., J.G.O., W.G.H., J.A.V. (Boisture, Pooja) (Entered: 03/27/2025) |
| 03/27/2025 | 64 | MOTION for Temporary Restraining Order , *Motion to Extend Temporary Restraining Order* by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Attachments: # 1 Text of Proposed Order)(Gelernt, Lee) (Entered: 03/27/2025) |
| 03/27/2025 | | MINUTE ORDER: The Court ORDERS that the 63 Motion to Intervene is DENIED. So ORDERED by Chief Judge James E. Boasberg on 3/27/2025. (lcjeb1) (Entered: 03/27/2025) |
| 03/28/2025 | 65 | RESPONSE re 64 MOTION for Temporary Restraining Order , *Motion to Extend Temporary Restraining Order* filed by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA BONDI, U.S. DEPARTMENT OF HOMELAND SECURITY. (Ensign, Drew) (Entered: 03/28/2025) |
| 03/28/2025 | 66 | ORDER: The Court ORDERS that the TROs entered on March 15, 2025, are extended and shall remain in effect until April 12, 2025, or until further order of the Court. Signed by Chief Judge James E. Boasberg on 3/28/2025. (lcjeb1) (Entered: 03/28/2025) |
| 03/28/2025 | 67 | MOTION for Preliminary Injunction by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Attachments: # 1 Memorandum in Support, # 2 Index of Exhibits, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Text of Proposed Order)(Gelernt, Lee) (Entered: 03/29/2025) |
| 03/31/2025 | | MINUTE ORDER: The Court ORDERS that the parties shall appear on April 3, 2025, at 3:00 p.m. for a hearing on the Court's 47 Order to Defendants to show cause why they did not violate the Court's Temporary Restraining Orders. Members of the public may attend in person or by telephone. Toll free number: 833–990–9400. Meeting ID: 049550816. Any use of the public–access telephone line requires adherence to the general prohibition against photographing, recording, livestreaming, and rebroadcasting of court proceedings (including those held by telephone or videoconference), as set out in Standing Order No. 24–31 (JEB). Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or |

| | | |
|---|---|---|
| | | other sanctions deemed necessary by the Court. So ORDERED by Chief Judge James E. Boasberg on March 31, 2025. (lcjeb2) (Entered: 03/31/2025) |
| 03/31/2025 | 68 | NOTICE of Appearance by Cecillia D. Wang on behalf of All Plaintiffs (Wang, Cecillia) (Entered: 03/31/2025) |
| 03/31/2025 | 69 | RESPONSE re 56 Notice (Other), *Re: Invocation of State Secrets Privilege* filed by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Gelernt, Lee) (Entered: 03/31/2025) |
| 03/31/2025 | 70 | REPLY re 58 Memorandum, *Re: Order to Show Cause* filed by J.G.G., G.F.F., J.G.O., W.G.H., J.A.V.. (Gelernt, Lee) (Entered: 03/31/2025) |
| 03/31/2025 | 74 | LEAVE TO FILE DENIED– DANA ALBRECHT – Motion. This document is unavailable as the Court denied its filing. Pro Se party has been notified by first class mail. "Leave to file DENIED. Improper to file such motion in this case." Signed by Chief Judge James E. Boasberg on 3/31/25. (zjm) (Entered: 04/02/2025) |
| 04/01/2025 | 71 | NOTICE of Appearance– Pro Bono by Evelyn Danforth–Scott on behalf of All Plaintiffs (Danforth–Scott, Evelyn) (Entered: 04/01/2025) |
| 04/01/2025 | 72 | Memorandum in opposition to re 67 Motion for Preliminary Injunction, filed by MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, MARCO A. RUBIO, U.S. STATE DEPARTMENT, DONALD J. TRUMP, PAMELA J. BONDI, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY. (Attachments: # 1 Declaration Declaration of Selwyn Smith, # 2 Declaration Declaration of Marcos Charles)(Flentje, August) (Entered: 04/01/2025) |
| 04/01/2025 | 75 | LEAVE TO FILE DENIED– DANA ALBRECHT – Motion for CM/ECF.. This document is unavailable as the Court denied its filing. Pro Se party has been notified by first class mail. "Leave to fine DENIED." Signed by Chief Judge James E. Boasberg on 4/1/2025. (zjm) (Entered: 04/03/2025) |
| 04/02/2025 | 73 | AMICUS BRIEF re 56 Notice (Other), *(Amici Curiae)* filed by MARK J. ROZELL, HEIDI KITROSSER, MITCHEL A. SOLLENBERGER. (McClanahan, Kelly) Modified event title on 4/2/2025 (znmw). (Entered: 04/02/2025) |
| 04/03/2025 | | Minute Entry for Show Cause Hearing held before Chief Judge James E. Boasberg on 4/3/2025. Matter taken under advisement; forthcoming Order. (Court Reporter: Tammy Nestor) (lsj) (Entered: 04/03/2025) |
| 04/04/2025 | 76 | TRANSCRIPT OF PROCEEDINGS before Chief Judge James E. Boasberg held on 4/3/25; Page Numbers: 1–31. Court Reporter/Transcriber Tammy Nestor, tammy_nestor@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form <br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter. <br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our |

| | | |
|---|---|---|
| | | website at www.dcd.uscourts.gov.<br><br>Redaction Request due 4/25/2025. Redacted Transcript Deadline set for 5/5/2025. Release of Transcript Restriction set for 7/3/2025.(Nestor, Tammy) (Entered: 04/04/2025) |
| 04/04/2025 | 77 | REPLY to opposition to motion re 67 Motion for Preliminary Injunction, filed by G.F.F., J.A.V., J.G.G., J.G.O., W.G.H.. (Gelernt, Lee) (Entered: 04/04/2025) |
| 04/07/2025 | | MINUTE ORDER: The Court ORDERS that the hearing set for April 8, 2025, at 3:00 p.m. shall take place in Courtroom 22A. Members of the public may attend in person or by telephone. Toll free number: 833–990–9400. Meeting ID: 049550816. Any use of the public–access telephone line requires adherence to the general prohibition against photographing, recording, livestreaming, and rebroadcasting of court proceedings (including those held by telephone or videoconference), as set out in Standing Order No. 24–31 (JEB). Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or other sanctions deemed necessary by the Court. So ORDERED by Chief Judge James E. Boasberg on 4/7/2025. (lcjeb3) (Entered: 04/07/2025) |
| 04/07/2025 | 78 | NOTICE *Regarding Supreme Court Decision* by PAMELA J. BONDI, KRISTI NOEM, MARCO A. RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT (Attachments: # 1 Exhibit JGG Supreme Court Decision)(Ensign, Drew) (Entered: 04/07/2025) |
| 04/08/2025 | | MINUTE ORDER: In yesterday's ruling vacating this Court's TROs, the Supreme Court held that Plaintiffs cannot be deported under the Alien Enemies Act without an opportunity to challenge their removal in federal court. It also determined that the appropriate venue for such proceedings is the Southern District of Texas or wherever Plaintiffs are currently held. This Court accordingly ORDERS that: 1) Today's preliminary–injunction hearing is VACATED; and 2) Plaintiffs shall file a Notice by April 16, 2025, indicating whether they believe that they still have a basis to proceed on their Motion for Preliminary Injunction in this Court and, if so, proposing a briefing schedule. So ORDERED by Chief Judge James E. Boasberg on 4/8/2025. (lcjeb1) (Entered: 04/08/2025) |
| 04/11/2025 | 79 | REQUEST FOR LEAVE TO FILE REVIEW. The attached document requires leave to file: LAMAR C. CHAPMAN, III – MOTION. Reason(s): Filer is not a party to the case. (Attachments: # 1 Motion, # 2 Motion) (zjm) (Entered: 04/11/2025) |
| 04/14/2025 | 82 | REQUEST FOR LEAVE TO FILE REVIEW. The attached document requires leave to file: MIKE YELLEN's Motion. Reason(s): Filer is not a party to the case. (znmw) (Entered: 04/16/2025) |
| 04/15/2025 | | MINUTE ORDER re 79 Request for Leave to File Review. Leave to file is denied. So ORDERED by Chief Judge James E. Boasberg on 4/15/2025. (lcjeb1) Modified filed date on 4/16/2025 (znmw). (Entered: 04/15/2025) |
| 04/16/2025 | 80 | ORDER: Given the finding of probable cause for contempt set forth in the accompanying Memorandum Opinion, the Court ORDERS that: (1) If Defendants opt to purge their contempt, they shall file by April 23, 2025, a declaration explaining the steps they have taken and will take to do so; and (2) If Defendants opt not to purge their contempt, they shall instead file by April 23, 2025, declaration(s) identifying the |

| | | |
|---|---|---|
| | | individual(s) who, with knowledge of the Court's classwide Temporary Restraining Order, made the decision not to halt the transfer of class members out of U.S. custody on March 15 and 16, 2025. Signed by Chief Judge James E. Boasberg on April 16, 2025. (lcjeb2) (Entered: 04/16/2025) |
| 04/16/2025 | 81 | MEMORANDUM OPINION re: 80 Probable Cause Order. Signed by Chief Judge James E. Boasberg on April 16, 2025. (lcjeb2) (Entered: 04/16/2025) |
| 04/16/2025 | 83 | NOTICE of Appearance by Ernesto Horacio Molina, Jr on behalf of All Defendants (Molina, Ernesto) (Entered: 04/16/2025) |
| 04/16/2025 | 84 | NOTICE OF APPEAL TO DC CIRCUIT COURT by U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, PAMELA J. BONDI, U.S. STATE DEPARTMENT, DONALD J. TRUMP, U.S. DEPARTMENT OF HOMELAND SECURITY, MARCO A. RUBIO, KRISTI NOEM, MADISON SHEAHAN. Fee Status: No Fee Paid. Parties have been notified. (Molina, Ernesto) (Entered: 04/16/2025) |
| 04/16/2025 | 85 | MOTION for Temporary Restraining Order *and Notice in Response to the Court's April 8, 2025 Order* by G.F.F., J.A.V., J.G.G., J.G.O., W.G.H.. (Attachments: # 1 Text of Proposed Order)(Gelernt, Lee) (Entered: 04/16/2025) |
| 04/16/2025 | | MINUTE ORDER: The Court ORDERS that the 82 Request for Leave to File is DENIED. So ORDERED by Chief Judge James E. Boasberg on 4/16/2025. (lcjeb1) (Entered: 04/16/2025) |
| 04/16/2025 | 86 | RESPONSE TO ORDER OF THE COURT re 4/8/2025 Minute Order filed by G.F.F., J.A.V., J.G.G., J.G.O., W.G.H.. (See Docket Entry 85 to view document). (znmw) (Entered: 04/17/2025) |
| 04/17/2025 | 87 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 84 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 04/17/2025) |
| 04/17/2025 | | MINUTE ORDER: The Court ORDERS that: 1) The Government shall file any Opposition to Plaintiffs' 85 Motion for TRO by April 19, 2025, at 9:00 a.m.; Plaintiffs shall file any Reply by April 21, 2025, at 9:00 a.m.; and the parties shall appear for a hearing on April 21, 2025, at 5:00 p.m.; and 2) Plaintiffs shall amend their Complaint and file any new motion for preliminary relief by April 24, 2025; Defendants shall file their Opposition by May 1, 2025; Plaintiffs shall file their Reply by May 5, 2025; and the parties shall appear for a hearing on the motion on May 7, 2025, at 5:00 p.m. Signed by Chief Judge James E. Boasberg on 4/17/2025. (lcjeb1) (Entered: 04/17/2025) |
| 04/17/2025 | | Set/Reset Hearings: Motion Hearing set for 4/21/2025 at 05:00 PM in Courtroom 22A– In Person before Chief Judge James E. Boasberg. Motion Hearing set for 5/7/2025 at 05:00 PM in Courtroom 22A– In Person before Chief Judge James E. Boasberg. (znbn) (Entered: 04/17/2025) |
| 04/17/2025 | | USCA Case Number 25–5124 for 84 Notice of Appeal to DC Circuit Court, filed by DONALD J. TRUMP, MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. DEPARTMENT OF HOMELAND SECURITY, MARCO A. RUBIO, KRISTI NOEM, PAMELA J. BONDI, U.S. STATE DEPARTMENT. (zdp) (Entered: 04/17/2025) |
| 04/17/2025 | 96 | |

| | | |
|---|---|---|
| | | REQUEST FOR LEAVE TO FILE REVIEW. The attached documents require leave to file: MEGHAN KELLY – Motion to File Amicus Brief, Motion to Proceed In Forma Pauperis, Motion for Exception to Pro Hac Vice Rules. Reason(s): Filer is not a party to the case. (Attachments: # 1 Amicus Motion – Exhibit A, # 2 Amicus Motion – Exhibit B, # 3 Amicus Motion – Exhibit C, # 4 Amicus Motion – Propose Order, # 5 Motion to Proceed IFP, # 6 IFP Motion – Exhibit 1, # 7 IFP Motion – Exhibit 2, # 8 IFP Motion – Proposed Order, # 9 Motion for Exception to PHV, # 10 PHV Motion – Appendix A, # 11 PHV Motion – Appendix B, # 12 PHV Motion – Appendix C, # 13 PHV Motion – Appendix D, # 14 PHV Motion – Appendix E, # 15 PHV Motion – Appendix F, # 16 PHV Motion – Appendix J–K, # 17 PHV Motion – Appendix L, # 18 PHV Motion – Proposed Order, # 19 Certificate of Service) (znmw) (Entered: 04/22/2025) |
| 04/18/2025 | 88 | Emergency MOTION to Stay re 81 Memorandum & Opinion, 80 Order,,, Set Deadlines,, *Pending Appeal* by PAMELA J. BONDI, KRISTI NOEM, MARCO A. RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT. (Attachments: # 1 Exhibit)(Molina, Ernesto) (Entered: 04/18/2025) |
| 04/18/2025 | 89 | ERRATA by PAMELA J. BONDI, KRISTI NOEM, MARCO A. RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT re 88 Motion to Stay,. (Attachments: # 1 Corrected Emergency Motion For A Stay Pending Appeal)(Molina, Ernesto) (Entered: 04/18/2025) |
| 04/18/2025 | 90 | Emergency MOTION to Expedite *TRO in Light of AEA Removals* by G.F.F., J.A.V., J.G.G., J.G.O., W.G.H.. (Attachments: # 1 Declaration – Brown, # 2 Declaration – Brane)(Gelernt, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | 91 | ORDER: The Court ORDERS that Defendants' 88 Emergency Motion to Stay is DENIED. Signed by Chief Judge James E. Boasberg on April 18, 2025. (lcjeb2) (Entered: 04/18/2025) |
| 04/18/2025 | | MINUTE ORDER: Having reviewed Plaintiffs' 85 Motion for Temporary Restraining Order and 90 Emergency Motion to Expedite, the Court ORDERS that the parties shall appear for a Zoom hearing on April 18, 2025, at 6:15 p.m. The hearing will proceed by videoconference for the parties and by telephone for members of the public. Toll free number: 833–990–9400. Meeting ID: 049550816. So ORDERED by Chief Judge James E. Boasberg on April 18, 2025. (lcjeb2) (Entered: 04/18/2025) |
| 04/18/2025 | 92 | NOTICE by G.F.F., J.A.V., J.G.G., J.G.O., W.G.H. re 90 Motion to Expedite (Attachments: # 1 Exhibit)(Gelernt, Lee) (Entered: 04/18/2025) |
| 04/18/2025 | | MINUTE ORDER: For the reasons discussed in today's hearing, the Court ORDERS that: 1) Plaintiff's 90 Emergency Motion to Expedite the Temporary Restraining Order is DENIED; and 2) The briefing schedule for the TRO and the hearing set for Monday, April 21, 2025, at 5 p.m. are VACATED. So ORDERED by Chief Judge James E. Boasberg on 4/18/2025. (lcjeb4) (Entered: 04/18/2025) |
| 04/18/2025 | | Minute Entry for proceedings held before Chief Judge James E. Boasberg: Motion Hearing held on 4/18/2025 re 90 Emergency MOTION to Expedite *TRO in Light of AEA Removals* filed by J.G.O., W.G.H., J.G.G., G.F.F., J.A.V.. Oral argument heard. (Court Reporter Tammy Nestor) (znbn) (Entered: 04/18/2025) |

| 04/18/2025 | 93 | TRANSCRIPT OF PROCEEDINGS before Chief Judge James E. Boasberg held on 4/18/25; Page Numbers: 1–34. Court Reporter/Transcriber Tammy Nestor, Telephone number tammy_nestor@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**<span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS:</span>** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/9/2025. Redacted Transcript Deadline set for 5/19/2025. Release of Transcript Restriction set for 7/17/2025.(Nestor, Tammy) (Entered: 04/18/2025) |
| 04/18/2025 | 94 | Unopposed MOTION for Leave to File Amicus Brief *of John W. Keker, Robert A. Van Nest, Elliot R. Peters and Laurie Carr Mims* by JOHN W KEKER, ROBERT A. VAN NEST, ELLIOT R. PETERS, LAURIE CARR MIMS. (Attachments: # 1 Exhibit Proposed Amici Curiae Brief, # 2 Text of Proposed Order)(Hirsch, Steven) (Entered: 04/18/2025) |
| 04/19/2025 | | MINUTE ORDER: The Court ORDERS that the Unopposed 94 Motion for Leave to File Amicus Brief is GRANTED. So ORDERED by Chief Judge James E. Boasberg on 4/19/2025. (lcjeb1) (Entered: 04/19/2025) |
| 04/19/2025 | 95 | MOTION for Leave to File Amicus Brief by COOLIDGE REAGAN FOUNDATION. (Attachments: # 1 Brief of Putative Amicus Curiae, # 2 Text of Proposed Order)(Backer, Dan) (Entered: 04/19/2025) |
| 04/21/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 95 MOTION for Leave to File Amicus Brief by COOLIDGE REAGAN FOUNDATION. (Attachments: # 1 Brief of Putative Amicus Curiae, # 2 Text of Proposed Order)(Backer, Dan).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney–renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 4/28/2025. (zapb) 4/21/2025 (zapb). (Entered: 04/21/2025) |
| 04/21/2025 | 97 | REQUEST FOR LEAVE TO FILE REVIEW. The attached document requires leave to file: MEGHAN KELLY – Motion to Serve by Email and E–File. Reason(s): Filer |

| | | |
|---|---|---|
| | | is not a party to the case. (Attachments: # 1 E–File – Exhibit 1, # 2 E–File – Exhibit 2, # 3 E– File – Proposed Order, # 4 Certificate of Service) (znmw) (Entered: 04/22/2025) |
| 04/22/2025 | 98 | REQUEST FOR LEAVE TO FILE REVIEW. The attached document requires leave to file: MEGHAN KELLY – Proposed Amicus Brief. Reason(s): Filer is not a party to the case. (Attachments: # 1 Amicus Brief – Exhibits, # 2 Certificate of Service) (znmw) (Entered: 04/22/2025) |
| 04/22/2025 | | MINUTE ORDER: The Court ORDERS that the 95 Motion for Leave to File Amicus Brief is GRANTED. So ORDERED by Chief Judge James E. Boasberg on 4/22/2025. (lcjeb1) (Entered: 04/22/2025) |
| 04/22/2025 | | MINUTE ORDER re 97 Request for Leave to File Review. The Court ORDERS that leave to file is granted. So ORDERED by Chief Judge James E. Boasberg on 4/22/2025. (lcjeb1) (Entered: 04/22/2025) |
| 04/22/2025 | 104 | MOTION for CM/ECF Password by MEGHAN KELLY. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(zjm) (Entered: 04/25/2025) |
| 04/23/2025 | 105 | REQUEST FOR LEAVE TO FILE REVIEW. The attached document requires leave to file: MEGHAN KELLY – Corrected Proposed Amicus Brief. Reason(s): Filer is not a party to the case. (Attachments: # 1 Corrected Amicus Brief, # 2 Exhibit 1–12, # 3 Exhibit 13, # 4 Exhibit 14, # 5 Exhibit 15, # 6 Certificate of Service) (zjm) (Entered: 04/28/2025) |
| 04/24/2025 | 99 | NOTICE of Appearance by Brian D. Netter on behalf of G.F.F., J.A.V., J.G.G., J.G.O., W.G.H. (Netter, Brian) (Entered: 04/24/2025) |
| 04/24/2025 | 100 | REDACTED DOCUMENT– Redacted Public Version of ECF No. 2 *Unsealed Motion to Proceed Under Pseudonyms* by G.F.F., J.A.V., J.G.G., J.G.O., W.G.H.. (Galindo, Daniel) (Entered: 04/24/2025) |
| 04/24/2025 | 101 | AMENDED COMPLAINT against All Defendants filed by G.F.F., J.G.G., J.G.O., W.G.H., J.A.V., M.Z.V.V., M.Y.O.R., M.M.A.A., D.A.R.H., EYLAN SCHILMAN, LIYANARA SANCHEZ, DORYS MENDOZA.(Gelernt, Lee) (Entered: 04/24/2025) |
| 04/25/2025 | 102 | MOTION for Preliminary Injunction by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Declaration of Rebecca Hanson, # 3 Exhibit Declaration of Andres Antillano, # 4 Exhibit Declaration of Steven Dudley, # 5 Exhibit Declaration of Sarah Bishop, # 6 Exhibit Declaration of Juanita Goebertus, # 7 Exhibit Declaration of Liyanara Sanchez, # 8 Exhibit Declaration of DARH, # 9 Exhibit Declaration of MZVV, # 10 Exhibit Declaration of MYOR, # 11 Exhibit Declaration of MMAA, # 12 Exhibit Declaration of Dorys Mendoza, # 13 Exhibit Declaration of Elyan Schulman, # 14 Exhibit Declaration of Oscar Sarabia Roman, # 15 Text of Proposed Order)(Gelernt, Lee) (Entered: 04/25/2025) |
| 04/25/2025 | 103 | MOTION to Certify Class by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. (Attachments: # 1 Memorandum in Support, # 2 Declaration, # 3 Text of Proposed Order)(Gelernt, Lee) (Entered: 04/25/2025) |
| 04/29/2025 | 106 | REQUEST FOR SUMMONS TO ISSUE filed by LIYANARA SANCHEZ, M.Z.V.V., G.F.F., J.G.G., M.Y.O.R., EYLAN SCHILMAN, M.M.A.A., J.G.O., |

| | | DORYS MENDOZA, D.A.R.H., W.G.H., J.A.V.. (Attachments: # 1 Summons)(Gelernt, Lee) (Entered: 04/29/2025) |
|---|---|---|
| 04/30/2025 | 107 | SUMMONS (2) Issued Electronically as to PETE HEGSETH, U.S. DEPARTMENT OF DEFENSE. (znmw) (Entered: 04/30/2025) |
| 05/01/2025 | 108 | Memorandum in opposition to re 102 MOTION for Preliminary Injunction filed by DONALD J. TRUMP, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT. (Attachments: # 1 Exhibit A: Landau Declaration, # 2 Exhibit B:, # 3 Text of Proposed Order)(Ensign, Drew) (Entered: 05/01/2025) |
| 05/02/2025 | 109 | NOTICE of Appearance by Tiberius T Davis on behalf of All Defendants (Davis, Tiberius) (Entered: 05/02/2025) |
| 05/05/2025 | 110 | NOTICE of Appearance by Aditi Shah on behalf of All Plaintiffs (Shah, Aditi) (Main Document 110 replaced on 5/6/2025) (znmw). (Entered: 05/05/2025) |
| 05/05/2025 | 111 | REPLY to opposition to motion re 102 Motion for Preliminary Injunction,,, filed by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. (Gelernt, Lee) (Entered: 05/05/2025) |
| 05/06/2025 | | MINUTE ORDER: The Court ORDERS that Proposed Amicus's 104 Motion, which it construes as a Motion for CM/ECF Password, is GRANTED, provided that she comply with any requirements imposed by the Clerk's Office. So ORDERED by Chief Judge James E. Boasberg on 5/6/2025. (lcjeb1) (Entered: 05/06/2025) |
| 05/06/2025 | | MINUTE ORDER: The Court ORDERS that Proposed Amicus's [98, 105] Requests for Leave to File are DENIED. She must file a motion for leave to file an amicus brief before simply filing one. So ORDERED by Chief Judge James E. Boasberg on 5/6/2025. (lcjeb1) (Entered: 05/06/2025) |
| 05/06/2025 | 112 | NOTICE OF SUPPLEMENTAL AUTHORITY by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H. (Attachments: # 1 Supplement Memorandum Opinion from G.F.F. v. Trump, # 2 Supplement Memorandum Opinion from D.B.U. v. Trump)(Gelernt, Lee) (Entered: 05/06/2025) |
| 05/06/2025 | 113 | MOTION for Order to Proceed under Pseudonyms − Supplemental Motion for Leave to Proceed Under Pseudonyms by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. (Attachments: # 1 Text of Proposed Order)(Gelernt, Lee) Modified on 5/8/2025 to correct event (zjm). (Entered: 05/06/2025) |
| 05/07/2025 | | MINUTE ORDER: The Court ORDERS that the hearing set for today at 5:00 p.m. shall take place in Courtroom 22A. Members of the public may attend in person or by telephone. Toll free number: 833−990−9400. Meeting ID: 049550816. Any use of the public−access telephone line requires adherence to the general prohibition against photographing, recording, livestreaming, and rebroadcasting of court proceedings (including those held by telephone or videoconference), as set out in Standing Order No. 24−31 (JEB). Violation of these prohibitions may result in sanctions, including removal of court−issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or other sanctions deemed necessary by the Court. So |

| | | ORDERED by Chief Judge James E. Boasberg on 5/7/2025. (lcjeb1) (Entered: 05/07/2025) |
|---|---|---|
| 05/07/2025 | 114 | Memorandum in opposition to re 103 MOTION to Certify Class filed by PAMELA J. BONDI, PETE HEGSETH, KRISTI NOEM, MARCO A. RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT. (Davis, Tiberius) (Entered: 05/07/2025) |
| 05/07/2025 | 115 | NOTICE of Proposed Order re 114 Memorandum in opposition to re 103 MOTION to Certify Class *(Proposed Order)* filed by PAMELA J. BONDI, PETE HEGSETH, KRISTI NOEM, MARCO A. RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT. (Davis, Tiberius) Modified event title on 5/9/2025 (znmw). (Entered: 05/07/2025) |
| 05/07/2025 | | Minute Entry for proceedings held before Chief Judge James E. Boasberg: Motion Hearing held on 5/7/2025 re 85 MOTION for Temporary Restraining Order *and Notice in Response to the Court's April 8, 2025 Order* filed by J.G.O., W.G.H., J.G.G., G.F.F., J.A.V.. Oral argument heard, order forthcoming. (Court Reporter Janice Dickman) (znbn) (Entered: 05/07/2025) |
| 05/08/2025 | 116 | ORDER: As explained at the conclusion of yesterday's hearing, the Court ORDERS that: 1) By May 9, 2025, Respondents shall submit any declarations they wish to provide regarding whether the United States has constructive custody over the proposed CECOT class; 2) By May 12, 2025, Petitioners shall submit to the Court a notice regarding whether they wish to seek jurisdictional discovery, and, if so, the specific discovery they propose to propound; and 3) By May 14, 2025, Respondents shall submit any response to Petitioners' discovery proposal. Signed by Chief Judge James E. Boasberg on 5/8/2025. (lcjeb4) (Entered: 05/08/2025) |
| 05/08/2025 | 117 | ORDER: The Court ORDERS that: 1) Petitioners' 113 Motion for Leave to File Under Pseudonym is GRANTED; 2) All parties shall use the pseudonyms listed in the Amended Complaint in all documents filed in this action; and 3) Within fourteen days of this Order, Petitioners and their next friends must file a sealed declaration containing their real names and residential addresses. Signed by Chief Judge James E. Boasberg on 5/8/2025. (lcjeb1) (Entered: 05/08/2025) |
| 05/09/2025 | 118 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by PAMELA J. BONDI, PETE HEGSETH, KRISTI NOEM, MARCO A. RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Sealed Declaration, # 2 Exhibit Sealed Redacted Declaration, # 3 Exhibit Sealed Document 1, # 4 Exhibit Sealed Document 2, # 5 Exhibit Sealed Document 3, # 6 Exhibit Sealed Document 4, # 7 Text of Proposed Order Sealed Proposed Order)(Davis, Tiberius) (Entered: 05/09/2025) |
| 05/10/2025 | 119 | CERTIFICATE OF SERVICE re 118 by PAMELA J. BONDI, PETE HEGSETH, KRISTI NOEM, MARCO A. RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF |

| | | |
|---|---|---|
| | | HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT *of Sealed Filing*. (Davis, Tiberius) Modified to add link on 5/12/2025 (znmw). (Entered: 05/10/2025) |
| 05/10/2025 | 120 | NOTICE *(Filing Statement)* by PAMELA J. BONDI, PETE HEGSETH, KRISTI NOEM, MARCO A. RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT re 116 Order,,, Set Deadlines,, (Davis, Tiberius) (Entered: 05/10/2025) |
| 05/11/2025 | 121 | MOTION for Leave to File Excess Pages by MEGHAN KELLY. (Attachments: # 1 proposed order for leave to exceed page limits in Meghan Kelly's amicus brief)(KELLY, MEGHAN) (Entered: 05/11/2025) |
| 05/11/2025 | 122 | MOTION for Leave to File Amicus Brief by MEGHAN KELLY. (Attachments: # 1 4 exhibit A Affidavit Texas venue prejudicial against Plaintiffs to Motion to file Amicus Brief, # 2 5 Exhibit B Meg proposed 5 art of impeachment including protecting kids and folks at the border sent to all 541 congress people to Motion to File Amicus, # 3 6 Exhibit C Texas Governor Abbott's Border_Statement to Motion to file Amicus, # 4 7 Exhibit D Ice court case detained college kid in one state moved her in night across state lines Appellate Court said unlawful government change venue to manipulate forums to motion to file amicus, # 5 8 Exhibit E Leaked Memo to search without a warrant to Motion to file amicus, # 6 Certificate of Service to Motion to exceed page limits, Motion for Leave to file amicus and exhibits thereto, and proffered Amicus Brief and Exhibits thereto)(KELLY, MEGHAN) (Entered: 05/11/2025) |
| 05/11/2025 | 123 | SUPPLEMENT (Proposed Amicus Brief) re 122 MOTION for Leave to File Amicus Brief by MEGHAN KELLY. (Attachments: # 1 Exhibits 1–12 to proposed amicus brief above, # 2 Exhibit 13 USSC order Texas evaded by declaring insurrection Jan 24 2024 to proposed amicus brief, # 3 Exhibit 14 annexing Canada, Greenland, Panama Canal to proposed amicus brief above, # 4 Exhibit 15 Trump's potentially conflicting corporate interests to proposed amicus brief above, # 5 Proposed order on Meghan Kelly's Motion for Leave to file amicus brief)(KELLY, MEGHAN) Modified event title on 5/12/2025 (znmw). (Entered: 05/11/2025) |
| 05/12/2025 | | MINUTE ORDER: The Court ORDERS that Defendants' 118 Motion for Leave to File Document Under Seal is GRANTED. In the event that the Court, after review, believes that a redacted version of the filing should be placed on the public record, it will so order. So ORDERED by Chief Judge James E. Boasberg on 5/12/2025. (lcjeb1) (Entered: 05/12/2025) |
| 05/12/2025 | | MINUTE ORDER: The Court ORDERS that the 121 Motion for Leave to File Excess Pages is DENIED. So ORDERED by Chief Judge James E. Boasberg on 5/12/2025. (lcjeb1) (Entered: 05/12/2025) |
| 05/12/2025 | 124 | TRANSCRIPT OF PROCEEDINGS before Chief Judge James E. Boasberg held on May 7, 2025; Page Numbers: 1–42. Date of Issuance: May 12, 2025. Court Reporter: Janice Dickman, Telephone number: 202–354–3267, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. |

| | | |
|---|---|---|
| | | After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/2/2025. Redacted Transcript Deadline set for 6/12/2025. Release of Transcript Restriction set for 8/10/2025.(Dickman, Janice) (Entered: 05/12/2025) |
| 05/12/2025 | 125 | NOTICE *Regarding Jurisdictional Discovery* by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H. (Attachments: # 1 Exhibit A Proposed Discovery Requests)(Gelernt, Lee) (Entered: 05/12/2025) |
| 05/13/2025 | | MINUTE ORDER: The Court ORDERS that Amicus's 122 Motion for Leave is DENIED WITHOUT PREJUDICE. She must attach her proposed brief to any motion for leave to file. So ORDERED by Chief Judge James E. Boasberg on 5/13/2025. (lcjeb1) (Entered: 05/13/2025) |
| 05/14/2025 | 126 | RESPONSE re 125 Notice (Other), *in Opposition to Petitioners–Plaintiffs' Request for Further Discovery,* filed by PAMELA J. BONDI, PETE HEGSETH, KRISTI NOEM, MARCO A. RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT. (Davis, Tiberius) (Entered: 05/14/2025) |
| 05/14/2025 | 127 | REPLY to opposition to motion re 103 Motion to Certify Class, filed by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. (Gelernt, Lee) (Entered: 05/14/2025) |
| 05/15/2025 | 131 | **REQUEST FOR LEAVE TO FILE REVIEW.** The attached document requires leave to file: Motion to Intervene. Joshua Hall & Eric Heilner. Reason(s): Filer is not a party to the case. (zjm) (Entered: 05/21/2025) |
| 05/16/2025 | 128 | ORDER: The Court ORDERS that: 1) By May 19, 2025, Petitioners shall serve the requests listed in this Order upon Respondents in the finalized form contemplated by the Federal Rules of Civil Procedure; 2) By May 23, 2025, Respondents shall provide responses to the requests listed in this Order, assert any applicable privileges, and explain why such privilege applies; and 3) By May 26, 2025, Petitioners shall file any response to Respondents' submissions. Signed by Chief Judge James E. Boasberg on 5/16/2025. (lcjeb1) (Entered: 05/16/2025) |
| 05/16/2025 | | MINUTE ORDER: Per the Court's Minute Order of May 12, 2025, granting Defendants' 118 Motion for Leave to File Under Seal, and because they have now informed the Court that they do not oppose filing the redacted exhibit comprising ECF No. 118–2 on the public docket, the Court ORDERS that they shall do so by May 19, 2025. So ORDERED by Chief Judge James E. Boasberg on May 16, 2025. (lcjeb2) (Entered: 05/16/2025) |

| 05/16/2025 | 129 | REDACTED DOCUMENT– Declaration to Order, *filed in response to minute order of May 16, 2025,* by PAMELA J. BONDI, PETE HEGSETH, KRISTI NOEM, MARCO A. RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT. (Davis, Tiberius) (Entered: 05/16/2025) |
|---|---|---|
| 05/21/2025 | 130 | MOTION for Leave to File Amicus Brief by MEGHAN KELLY. (Attachments: # 1 declaration to Motion for leave to file an amicus brief by Meghan Kelly, # 2 Exhibit 1 Redacted admission Fraud in AEA by Defendants, # 3 Exhibit 2 proof of secretly concealing evidence in my favor to affect outcome of case on appeal Kelly v Trump Due Process violations and in future planned discipline to discredit me in cover ups and demean relig belief in Jesus, # 4 Exhibits 3 & 4 kelly v trump docs secretly sealed to hide evidence in my favor, # 5 Exhibit 5 and 6 exemption form bar dues in DE, # 6 Exhibit 7 Lexis published Motion to Reign in arms from gov force to compel Meghan forgo or interfere case kelly v trump, # 7 Exhibit 8 Danger against Meg and solicitor generalfuneral US Supreme Court accepted only one full copy the original and the original and 10 copies of the IFP with the required exhibit and 10 copies of Pet for rehearing without exhibits, # 8 9 Yahoo Mail – Number 23–7360_ Fw_ Thank you Lisa Nesbitt Kelly v Swartz_Meg asserts right to live_religious objections to healthcare, science and mental healthcare by..., # 9 Exhibit 10 Exhibit 43 to Appendix F kelly v trump, # 10 Exhibit 11 USSC fired court staff Lisa nesbitt same as state court to cover up mistakes that may be cured not concealed Meg wants to protect and correct not destroy, # 11 Exhibit 12 Proposed amicus brief by Meghan Kelly, # 12 Declaration proposed Amicus Brief, # 13 Certificate of Service og Meghan Kelly's May 21 Motion for leave to file amicus)(KELLY, MEGHAN) (Entered: 05/21/2025) |
| 05/21/2025 | 132 | SEALED DOCUMENT filed by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H. re 117 Order on Motion for Order,, Set/Reset Deadlines, (This document is SEALED and only available to authorized persons.)(Galindo, Daniel) (Entered: 05/21/2025) |
| 05/22/2025 | | MINUTE ORDER  re **131 Request for Leave to File Review.** Leave to file is granted. The Clerk is directed to file the attached document on the public docket. So ORDERED by Chief Judge James E. Boasberg on 5/22/2025. (lcjeb1) (Entered: 05/22/2025) |
| 05/22/2025 | | MINUTE ORDER: The Court ORDERS that Amicus's 130 Motion is GRANTED and her [130–11] Brief is deemed FILED. So ORDERED by Chief Judge James E. Boasberg on 5/22/2025. (lcjeb1) (Entered: 05/22/2025) |
| 05/22/2025 | | MINUTE ORDER: The Court ORDERS that Petitioners–Plaintiffs' Reply to the Government's discovery submissions shall now be due by May 27, 2025. So ORDERED by Chief Judge James E. Boasberg on 5/22/2025. (lcjeb1) (Entered: 05/22/2025) |
| 05/22/2025 | 133 | MOTION to Intervene by JOSHUA HALL. (znmw) (Entered: 05/23/2025) |
| 05/22/2025 | 143 | AMICUS BRIEF by MEGHAN KELLY. (zjm) (Entered: 05/28/2025) |
| 05/23/2025 | 134 | NOTICE OF WITHDRAWAL OF APPEARANCE as to D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. Attorney Pooja Boisture terminated. (Boisture, Pooja) (Entered: 05/23/2025) |

| 05/23/2025 | 135 | NOTICE OF WITHDRAWAL OF APPEARANCE as to D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. Attorney Skye Perryman terminated. (Perryman, Skye) (Entered: 05/23/2025) |
|---|---|---|
| 05/23/2025 | 136 | NOTICE OF WITHDRAWAL OF APPEARANCE as to D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. Attorney Somil Trivedi terminated. (Trivedi, Somil) (Entered: 05/23/2025) |
| 05/23/2025 | 137 | NOTICE OF WITHDRAWAL OF APPEARANCE as to D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. Attorney Michael Lawrence Waldman terminated. (Waldman, Michael) (Entered: 05/23/2025) |
| 05/23/2025 | 138 | NOTICE OF WITHDRAWAL OF APPEARANCE as to D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. Attorney Audrey Jordan Wiggins terminated. (Wiggins, Audrey) (Entered: 05/23/2025) |
| 05/23/2025 | 139 | STIPULATION *of Agreed Confidentiality Order* by PAMELA J. BONDI, PETER B. HEGSETH, KRISTI NOEM, MARCO RUBIO, MADISON SHEAHAN, DONALD J. TRUMP, U.S. DEPARTMENT OF DEFENSE, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT. (Davis, Tiberius) Modified on 5/27/2025 (znmw). (Entered: 05/23/2025) |
| 05/27/2025 | | ENTERED IN ERROR.....NOTICE OF ERROR regarding 139 Stipulation,. The following error(s) need correction: Missing signatures – Please refile. (znmw) Modified on 5/27/2025; per request from chambers (znmw). (Entered: 05/27/2025) |
| 05/27/2025 | 140 | ORDER: The Court ORDERS that the 139 Stipulated Confidentiality Order is ADOPTED. Signed by Chief Judge James E. Boasberg on 5/27/2025. (lcjeb4) (Entered: 05/27/2025) |
| 05/27/2025 | 141 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Sealed Document 1, # 2 Exhibit Sealed Document 2, # 3 Exhibit Sealed Document 3)(Gelernt, Lee) (Entered: 05/27/2025) |
| 05/27/2025 | 142 | CERTIFICATE OF SERVICE by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H. re 141 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H. (This document is SEALED and only available to authorized person . (Gelernt, Lee) (Entered: 05/27/2025) |
| 05/28/2025 | 144 | NOTICE OF WITHDRAWAL OF APPEARANCE as to D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. Attorney Sarah Rich terminated. (Rich, Sarah) (Entered: 05/28/2025) |

| 05/28/2025 | | MINUTE ORDER: The Court ORDERS that the 141 Sealed Motion for Leave to File Document Under Seal is GRANTED. So ORDERED by Chief Judge James E. Boasberg on 5/28/2025. (lcjeb1) (Entered: 05/28/2025) |
|---|---|---|
| 05/28/2025 | 145 | SEALED Response filed by D.A.R.H., G.F.F., J.A.V., J.G.G., J.G.O., M.M.A.A., M.Y.O.R., M.Z.V.V., DORYS MENDOZA, LIYANARA SANCHEZ, EYLAN SCHILMAN, W.G.H.. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit)(zjm) (Entered: 05/29/2025) |
| 06/04/2025 | 146 | NOTICE of Appearance by Michael King Thomas Tan on behalf of All Plaintiffs (Tan, Michael) (Entered: 06/04/2025) |
| 06/04/2025 | 147 | ORDER: For the reasons set forth in the accompanying Memorandum Opinion, the Court ORDERS that: 1) Plaintiffs' 102 Motion for Preliminary Injunction is GRANTED IN PART and DENIED IN PART; 2) Plaintiffs' 103 Motion for Class Certification is DENIED WITHOUT PREJUDICE as to the Criminal Custody Class and GRANTED as to the CECOT Class with modifications. The latter Class shall be defined as follows:<br><br>All noncitizens removed from U.S. custody and transferred to the Terrorism Confinement Center (CECOT) in El Salvador on March 15 and 16, 2025, pursuant solely to the Presidential Proclamation entitled, "Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua"; and<br><br>3) By June 11, 2025, Defendants shall submit a Notice to the Court advising how they intend to facilitate the ability of the CECOT Class to seek habeas relief. SIGNED by Chief Judge James E. Boasberg on 6/4/2025. (lcjeb3) (Entered: 06/04/2025) |
| 06/04/2025 | 148 | MEMORANDUM OPINION re 147 Order on Preliminary Injunction and Class Certification Motions. SIGNED by Chief Judge James E. Boasberg on 6/4/2025. (lcjeb3) (Entered: 06/04/2025) |
| 06/04/2025 | | MINUTE ORDER: Given the Court's ruling today on Plaintiffs' PI Motion, it ORDERS that Plaintiffs' 85 Motion for TRO is DENIED as moot. Similarly, Plaintiffs' 67 prior PI Motion is DENIED as moot. Finally, proposed Intervenor's 133 Motion to Intervene is DENIED as not satisfying Fed. R. Civ. P. 24. So ORDERED by Chief Judge James E. Boasberg on 6/4/2025. (lcjeb1) (Entered: 06/04/2025) |
| 06/04/2025 | | MINUTE ORDER: As set forth in the Court's 148 Memorandum Opinion, the Court ORDERS that Plaintiffs shall by June 6, 2025, post a $1.00 bond in accordance with Fed. R. Civ. P. 65(c). So ORDERED by Chief Judge James E. Boasberg on 6/4/2025. (lcjeb1) (Entered: 06/04/2025) |
| 06/05/2025 | | DEPOSIT of Funds for Bond in the amount of $ 1.00, Receipt Number 209726, pursuant to 06/04/2025 Minute Order. (zjm) (Entered: 06/06/2025) |
| 06/10/2025 | 149 | ENTERED IN ERROR.....NOTICE OF APPEAL TO DC CIRCUIT COURT as to 147 Order on Motion for Preliminary Injunction,,,, Order on Motion to Certify Class,,,, Set/Reset Deadlines,,, by PAMELA J. BONDI, MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT, DONALD J. TRUMP, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF DEFENSE, MARCO RUBIO, KRISTI NOEM, PETER B. HEGSETH. Fee Status: No Fee Paid. Parties have been notified. (Davis, Tiberius) Modified on 6/10/2025 (znmw). (Entered: 06/10/2025) |

| 06/10/2025 | | NOTICE OF ERROR regarding 149 Notice of Appeal to DC Circuit Court,. The following error(s) need correction: Incorrect case number. Please refile. (znmw) (Entered: 06/10/2025) |
|---|---|---|
| 06/10/2025 | 150 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 147 Order on Motion for Preliminary Injunction,,,, Order on Motion to Certify Class,,,, Set/Reset Deadlines,,, by PAMELA J. BONDI, MADISON SHEAHAN, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, U.S. STATE DEPARTMENT, DONALD J. TRUMP, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF DEFENSE, MARCO RUBIO, KRISTI NOEM, PETER B. HEGSETH. Fee Status: No Fee Paid. Parties have been notified. (Davis, Tiberius) (Entered: 06/10/2025) |

In the United States District Court
for the District of Columbia

| | |
|---|---|
| J.G.G. et al., | Case No. 1:25-cv-00766-JEB |
| *Plaintiffs*; | |
| LIYANARA SANCHEZ, as next friend on behalf of FRENGEL REYES MOTA, et al., | |
| *Petitioners–Plaintiffs*, | |
| v. | **NOTICE OF APPEAL** |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| *Respondents–Defendants*. | |

PLEASE TAKE NOTICE that all Respondents–Defendants appeal to the United States Court of Appeals for the District of Columbia Circuit from the order of this Court entered in this case on June 4, 2025, docketed at ECF No. 147, and all orders merging therewith.

Respectfully submitted,

**Yaakov M. Roth**
Acting Assistant Attorney General
Civil Division

**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation

**August Flentje**
Special Counsel for Immigration

1

s/Tiberius T. Davis
**Tiberius T. Davis**
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044-0878
(202) 514-2000
tiberius.davis@usdoj.gov

**Anthony Nicastro**
Acting Director
Office of Immigration Litigation

**Ernesto Molina**
Deputy Director
Office of Immigration Litigation

Dated: June 10, 2025          *Counsel for Respondents–Defendants*

2

**Certificate of Service**

I hereby certify that I served this document on June 10, 2025, by filing it with the Court's CM/ECF system, which will electronically deliver the document to all other parties or their counsel.

s/Tiberius T. Davis

*Counsel for Respondents–Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **J.G.G.,** *et al.*,<br><br>**Plaintiffs,**<br><br>**LIYANARA SANCHEZ, as next friend on behalf of FRENGEL REYES MOTA,** *et al.*,<br><br>**Petitioners-Plaintiffs,**<br><br>**v.**<br><br>**DONALD J. TRUMP,** *et al.*,<br><br>**Respondents-Defendants.** | **Civil Action No. 25-766 (JEB)** |

## <u>ORDER</u>

For the reasons set forth in the accompanying Memorandum Opinion, the Court

ORDERS that:

1. Plaintiffs' [102] Motion for Preliminary Injunction is GRANTED IN PART and

   DENIED IN PART;

2. Plaintiffs' [103] Motion for Class Certification is DENIED WITHOUT PREJUDICE

   as to the Criminal Custody Class and GRANTED as to the CECOT Class with

   modifications.  The latter Class shall be defined as follows:

   > All noncitizens removed from U.S. custody and transferred
   > to the Terrorism Confinement Center (CECOT) in El
   > Salvador on March 15 and 16, 2025, pursuant solely to the
   > Presidential Proclamation entitled, "Invocation of the Alien
   > Enemies Act Regarding the Invasion of The United States by
   > Tren De Aragua"; and

3. By June 11, 2025, Defendants shall submit a Notice to the Court advising how they

   intend to facilitate the ability of the CECOT Class to seek habeas relief.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  June 4, 2025

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **J.G.G.**, *et al.*,<br><br>        **Plaintiffs,**<br><br>**LIYANARA SANCHEZ, as next friend on behalf of FRENGEL REYES MOTA,** *et al.*,<br><br>        **Petitioners-Plaintiffs,**<br><br>                **v.**<br><br>**DONALD J. TRUMP,** *et al.*,<br><br>        **Respondents-Defendants.** | **Civil Action No. 25-766 (JEB)** |

## <u>MEMORANDUM OPINION</u>

One morning, Kafka's Josef K. awakens to encounter two strange men outside his room. As he gets his bearings, he realizes that he is under arrest. When he asks the strangers why, he receives no answer. "We weren't sent to tell you that," one says. "Proceedings are under way and you'll learn everything in due course." Franz Kafka, <u>The Trial</u> 5 (Breon Mitchell trans., Schocken Books Inc. 1998). Bewildered by these men and distressed by their message, K. tries to comfort himself that he lives in "a state governed by law," one where "all statutes [are] in force." <u>Id.</u> at 6. He therefore demands again, "How can I be under arrest? And in this manner?" "Now there you go again," the guard replies. "We don't answer such questions." Undeterred, K. offers his "papers" and demands their arrest warrant. "Good heavens!" the man scolds. "There's been no mistake." "[O]ur department," he assures K., is only "attracted by guilt"; it "doesn't seek [it] out . . . . That's the Law." <u>Id.</u> at 8–9. "I don't know that law," K. responds. "You'll feel it eventually," the guard says. <u>Id.</u> at 9.

Such was the situation into which Frengel Reyes Mota, Andry Jose Hernandez Romero, and scores of other Venezuelan noncitizens say they were plunged on March 15, 2025.  In the early morning hours, Venezuelans held by the Department of Homeland Security at El Valle Detention Facility in Texas were awakened from their cells, taken to a separate room, shackled, and informed that they were being transferred.  See J.G.G. v. Trump, 2025 WL 1119481, at *2 (D.D.C. Apr. 16, 2025); ECF Nos. 44-9 (Karyn Ann Shealy Second Decl.), ¶¶ 7–8; 44-10 (Stephanie Quintero Decl.), ¶ 3; 44-11 (Grace Carney First Decl.), ¶ 11; 44-12 (Melissa Smyth Decl.), ¶ 13.  To where?  That they were not told.  See ECF No. 101 (Am. Compl.), ¶ 69; Smyth Decl., ¶ 13.  When asked, some guards reportedly laughed and said that they did not know; others told the detainees, incorrectly, that they were being transferred to another immigration facility or to Mexico or Venezuela.  See Shealy Second Decl., ¶ 10; Quintero Decl., ¶ 3; ECF Nos. 67-6 (Grace Carney Second Decl.), ¶ 3; 67-11 (Abigail Beckman Decl.), ¶ 9; 102-8 (D.A.R.H. Decl.), ¶ 8.

Before long, Reyes Mota, Hernandez Romero, and the other detainees were shuttled onto buses, driven to a nearby airport, and loaded onto planes.  J.G.G, 2025 WL 1119481, at *2.  As the planes waited on the tarmac, many passengers aboard reportedly began to panic and beg officials for more information, but none was provided.  See Shealy Second Decl., ¶ 10.  The planes eventually departed that evening and, after a stop in Honduras, landed in El Salvador.  J.G.G., 2025 WL 1119481, at *4.  Upon their arrival, the detainees were transferred into a Salvadoran mega-prison known as the Center for Terrorism Confinement (CECOT).

Under what authority?  It turned out that mere hours before the planes took off, President Trump had invoked the Alien Enemies Act of 1798.  When the country is at war or has suffered an invasion or predatory incursion, the Act authorizes the President to apprehend and remove

citizens of the enemy nation — so-called "alien enemies." Asserting that a Venezuelan gang named Tren de Aragua had committed an invasion and predatory incursion upon the United States, the President directed immigration officials to apprehend and remove any such gang members from the United States. Reyes Mota and Hernandez Romero were among the men the Government deemed members of Tren de Aragua. Both vehemently deny any such affiliation and claim that they were never able to challenge the accusation before being removed. See ECF No. 102-7 (Liyanara Sánchez Decl.), ¶¶ 5–7; D.A.R.H. Decl., ¶¶ 6–7, 13.

This Court, at a swiftly convened hearing on March 15, ordered the Government not to relinquish custody of the men, but that mandate was ignored. Such defiance is currently the subject of the Court's contempt inquiry. See J.G.G. v. Trump, 2025 WL 1119481 (D.D.C. Apr. 16, 2025), appeal filed, No. 25-5124 (D.C. Cir. Apr. 17, 2025). Plaintiffs have now amended their Complaint to bring class claims on behalf of those deported to CECOT. In addition, T.C.I. brings separate class claims on behalf of those in U.S. criminal custody who fear future removal under the Alien Enemies Act. Both putative Classes invoke their due-process rights and assert that the Government has violated or will violate those fundamental protections. They also, more expansively, seek class-wide habeas relief on the basis that any detention or removal under the Alien Enemies Act is unlawful. The Court concludes that only one of these claims is likely to succeed on the merits and thus warrants preliminary class-wide relief: the CECOT Plaintiffs' claim that their summary removal violated their due-process rights.

Indeed, following the March 15 flights, the Supreme Court held — not just once, but twice — that such hurried removals violate the Fifth Amendment's Due Process Clause. See Trump v. J.G.G., 145 S. Ct. 1003, 1006 (2025) (per curiam); A.A.R.P. v. Trump, 145 S. Ct. 1364, 1367–68 (2025) (per curiam). All nine Justices agreed that due process requires providing

potential deportees notice "that they are subject to removal under the Act," which must be done

"within a reasonable time and in such a manner as will allow them to actually seek habeas relief"

before being removed. J.G.G., 145 S. Ct. at 1006; see id. at 1012 (Sotomayor, J., dissenting).

The reason should be self-evident: the "due process of law" exists so that no "person" within our

borders — regardless of citizenship — is deprived of his "liberty" on insufficient evidence or a

spurious charge. See Carey v. Piphus, 435 U.S. 247, 259 (1978). In our nation — unlike the one

into which K. awakes — the Government's mere promise that there has been no mistake does not

suffice. Any government confident of the legal or evidentiary basis for its actions has nothing to

fear from that requirement. It is, after all, "central to our system of ordered liberty." Memphis

Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986).

          In light of those Supreme Court holdings, this Court ultimately agrees with the CECOT

Plaintiffs that they are likely to succeed on the merits of their due-process claim. Defendants

plainly deprived these individuals of their right to seek habeas relief before their summary

removal from the United States — a right that need not itself be vindicated through a habeas

petition. Perhaps the President lawfully invoked the Alien Enemies Act. Perhaps, moreover,

Defendants are correct that Plaintiffs are gang members. But — and this is the critical point —

there is simply no way to know for sure, as the CECOT Plaintiffs never had any opportunity to

challenge the Government's say-so. Defendants instead spirited away planeloads of people

before any such challenge could be made. And now, significant evidence has come to light

indicating that many of those currently entombed in CECOT have no connection to the gang and

thus languish in a foreign prison on flimsy, even frivolous, accusations. See, e.g., Sánchez Decl.,

¶ 6 (Reyes Mota); D.A.R.H. Decl., ¶¶ 6–7 (Hernandez Romero); ECF Nos. 67-10 (Paulina Reyes

Decl.), Exh. A (Hernandez Romero); 102-9 (M.Z.V.V. Decl.), ¶ 6 (J.A.B.V.); 102-10 (M.Y.O.R.

Decl.), ¶¶ 5–6 (M.A.O.R.); see also ECF Nos. 102-2 (Rebecca Hanson Decl.), ¶¶ 21–27; 102-3 (Andres Antillano Decl.), ¶ 14; 102-4 (Steven Dudley Decl.), ¶ 25.

Because the other preliminary-injunction factors also support the CECOT Plaintiffs, the Court concludes that their Class is entitled to preliminary relief.  In short, the Government must facilitate the Class's ability to seek habeas relief to contest their removal under the Act.  Exactly what such facilitation must entail will be determined in future proceedings.  Although the Court is mindful that such a remedy may implicate sensitive diplomatic or national-security concerns within the exclusive province of the Executive Branch, it also has a constitutional duty to provide a remedy that will "make good the wrong done."  Bell v. Hood, 327 U.S. 678, 684 (1946).

## I.    Background

The Court has twice covered the relevant factual and procedural background for this dispute in great detail, see J.G.G. v. Trump, 2025 WL 890401, at *3–5 (D.D.C. Mar. 24, 2025); J.G.G., 2025 WL 1119481, at *1–7, so it focuses below on the facts relevant to the current claims.

### A.    Factual Background

In early March, the Department of Homeland Security began interviewing Venezuelan noncitizens in its custody about gang membership and moving them to El Valle Detention Facility.  J.G.G., 2025 WL 890401, at *3.  These actions were a prelude to a series of steps taken in rapid succession between March 14 and 16 that culminated in the deportation of several hundred Venezuelans to CECOT in El Salvador, where they currently remain.

On the evening of March 14, noncitizen detainees were pulled from their cells in El Valle and told that they would be deported the next day to an unknown destination.  Id.  They were allegedly given "no advance notice of the basis for their removal," nor were they informed that

they could challenge it.  See Am. Compl., ¶ 69.  A lucky few, however, were able to contact their

counsel, who surmised that President Trump had signed or would imminently sign a presidential

proclamation invoking the Alien Enemies Act, a wartime measure passed by the Fifth Congress

that grants the President the power to summarily remove "alien enemies" once he makes "public

proclamation" of a declared war, invasion, or predatory incursion.  Id.; see 50 U.S.C. § 21.  In

the very early hours of March 15, those individuals — the original Plaintiffs here — filed a

putative class-action lawsuit in this Court seeking a temporary restraining order preventing their

deportation under the Act.  See ECF Nos. 1 (Compl.); 3 (TRO Mot.); 4 (First Class Cert. Mot.).

They claimed that the forthcoming Proclamation would announce that a Venezuelan transnational

criminal organization and recently designated Foreign Terrorist Organization — Tren de Aragua

— was perpetrating an invasion or predatory incursion against the territory of the United States,

and that all Venezuelans deemed members of that gang would be removed as "alien enemies."

See ECF No. 3-2 (TRO Br.) at 1–2.  Plaintiffs argued that the Proclamation was illegal and that,

even if it were not, they were not members of Tren de Aragua and thus could not be removed

under the Alien Enemies Act.  Id.  They sought not release from custody, but merely an

opportunity to challenge the lawfulness of their removal, including through contesting their

alleged gang membership.  See J.G.G., 2025 WL 890401, at *3.

Later that morning, this Court granted a TRO as to several named Plaintiffs, ordering the

Government not to remove them.  See Minute Order of Mar. 15, 2025, 9:40 a.m.  It did so "to

maintain the status quo until a hearing can be set."  Id.  It subsequently set an emergency hearing

for 5:00 p.m. the same day to consider Plaintiffs' claim that relief should be broadened to a class

of all noncitizens in U.S. custody subject to the anticipated Proclamation.  See Minute Order of

Mar. 15, 2025, 11:04 a.m.  By this point, Defendants had already begun putting Plaintiffs and

6

other putative class members on airplanes, despite knowing that a lawsuit had been filed to halt the removals, and despite the fact that the Proclamation had still not yet been made public.  See J.G.G., 2025 WL 890401, at *3; Am. Compl., ¶ 66.

Approximately an hour before the 5:00 p.m. hearing was to begin, the White House published the Proclamation on its website.  See Invocation of the Alien Enemies Act Regarding the Invasion of The United States by Tren De Aragua, White House (Mar. 15, 2025), https://perma.cc/D3GM-5YBM; ECF No. 28-1 (Robert L. Cerna Second Decl.), ¶ 5.  As expected, it announced that that because Tren de Aragua had committed an "invasion" and "predatory incursion" against the United States, the Government could begin immediately deporting any Venezuelan noncitizens over the age of 14 whom it deemed to be members of Tren de Aragua.  See 90 Fed. Reg. 13033, 13034 (Mar. 14, 2025).

During the hearing, two planes loaded with Venezuelan noncitizens departed from Harlingen, Texas, one around 5:25 p.m. and the other around 5:45 p.m. — i.e., less than two hours after the Proclamation was made public.  See J.G.G., 2025 WL 1119481, at *3.  Although these precise facts were unknown to the Court at the time, Plaintiffs' counsel stated during the hearing that various "sources" had informed him that two removal flights that were scheduled to depart that afternoon "may have already taken off," including "during [the] hearing."  ECF No. 20 (Mar. 15 Hrg. Tr.) at 12.  The Court then provisionally certified the class and ordered that for 14 days the Government was enjoined from conducting the "removal" of any noncitizens in its custody solely on the basis of the Proclamation.  Id. at 42.  The Court also stated orally to Government counsel that he was to ensure that the Order was complied with "immediately," including as to class members who were already "in the air."  Id. at 43.  The Court then memorialized the TRO in a written Minute Order.  See Minute Order of Mar. 15, 2025, 7:25 p.m.

A third plane took off from Harlingen approximately ten minutes later, which the Government maintains carried only noncitizens subject to final orders of removal under the Immigration and Nationality Act.  See J.G.G., 2025 WL 1119481, at *4; Cerna Second Decl., ¶ 6.

Despite this Court's Order, the planes carrying noncitizens pursuant to the Proclamation continued on their journey.  They first touched down in Honduras and remained there for several hours before taking off again for El Salvador, where they landed shortly after midnight on March 16 and transferred most of their passengers into CECOT.  J.G.G., 2025 WL 1119481, at *4 (noting that several women and one man were apparently returned to the United States because Salvadoran officials refused their admission).

B.      Procedural Background

Because the Court had to act on such an expedited basis, it wished to afford the Government an opportunity to brief the issues involved, so it permitted Defendants to move to vacate the TROs, which they did.  See ECF No. 26 (Mot. to Vacate).  Plaintiffs responded, and the Court held oral argument on March 21.  See ECF No. 51 (Mar. 21 Hrg. Tr.).  The Government also appealed to the D.C. Circuit, seeking a stay of the TROs.  See Corrected Emergency Motion for a Stay Pending Appeal, J.G.G. v. Trump, No. 25-5067 (D.C. Cir. Mar. 16, 2025).

In a written Opinion, the Court denied the Government's Motion to Vacate.  It held that Plaintiffs had shown a likelihood of success on one of their core claims — i.e., those subject to removal under the Proclamation have a right to challenge the Government's determination that they are removable — and that they would face irreparable harm if the TROs were dissolved, which also tipped the balance of equities in their favor.  See J.G.G., 2025 WL 890401, at *11–14,

8

16–17.  It subsequently set a schedule for briefing Plaintiffs' Motion for a Preliminary

Injunction.  <u>See</u> Minute Order of Mar. 26, 2025, 6:29 p.m.; <u>see also</u> ECF No. 67 (First PI Mot.).

      The Court of Appeals also rejected Defendants' request to stay the Orders.  Two members

of the panel expressed concerns about the lawfulness of the Proclamation and noted that due

process entitled Plaintiffs to hearings to challenge their removals under the Act.  <u>See</u> <u>J.G.G. v.</u>

<u>Trump</u>, 2025 WL 914682, at *8–10 (D.C. Cir. Mar. 26, 2025) (Henderson, J., concurring); <u>id.</u> at

*13–14 (Millett, J., concurring).  The Government then applied to the Supreme Court for

emergency relief from the TRO.  <u>See</u> Application to Vacate Orders, No. 24A391 (U.S. Mar. 28,

2025).

      On the eve of the hearing on Plaintiffs' PI Motion, the Supreme Court vacated the TROs

on a narrow ground.  It held that challenges to removal under the Act must be brought through a

habeas-corpus proceeding — not, as Plaintiffs did, through the Administrative Procedure Act —

and venue therefore lay in the district of the class members' confinement, not the District of

Columbia.  <u>See</u> <u>Trump v. J.G.G.</u>, 145 S. Ct. at 1005–06.  While the Court was narrowly divided

on that venue question, it unanimously agreed with this Court that those subject to removal under

the Act must be allowed to challenge their removability in federal court before being deported.

<u>Id.</u> at 1006; <u>id.</u> (Kavanaugh, J., concurring); <u>id.</u> at 1012 (Sotomayor, J., dissenting).  Specifically,

all Justices confirmed that the Due Process Clause requires the Government to provide anyone it

seeks to remove notice "that they are subject to removal under the Act," and to do so "within a

reasonable time and in such a manner as will allow them to actually seek habeas relief" before

being removed.  <u>Id.</u> at 1006 (*per curiam*); <u>id.</u> at 1012 (Sotomayor, J., dissenting).

      Following the Supreme Court's vacatur of the TRO, this Court ordered the original

named Plaintiffs to file a Notice indicating whether they "believe that they still have a basis to

9

proceed on their Motion for Preliminary Injunction in this Court and, if so, proposing a briefing schedule." Minute Order of Apr. 8, 2025. Plaintiffs subsequently filed that Notice, along with a new Motion for a TRO. See ECF No. 85 (Second TRO Mot.). They asked this Court to order the Government to provide class members with 30 days' notice before seeking to remove any of them from the country under the Alien Enemies Act, id. at 1, and indicated that they intended to amend their Complaint to seek habeas relief on behalf of those sent to CECOT on March 15–16. Id. at 2. Meanwhile, named Plaintiffs — as well as other erstwhile class members throughout the country — began filing their own habeas petitions in the districts of their confinement. See, e.g., G.F.F. v. Trump, No. 25-2886, ECF No. 1 (S.D.N.Y. Apr. 9, 2025); J.A.V. v. Trump, No. 25-72, ECF No. 1 (S.D. Tex. Apr. 9, 2025).

On April 18, the Government endeavored to reprise its March 15 conduct. According to Plaintiffs, it attempted to remove individuals held in the Northern District of Texas without giving them constitutionally adequate notice or an opportunity to file for habeas relief. See ECF No. 90 (Mot. to Expedite) at 1–2. Plaintiffs asked this Court to expedite its ruling on their TRO in light of the "refus[al]" of the district court there to timely act. Id. at 2. The Court convened an emergency hearing, at which it agreed that the allegations were "very troubling" but declined to enjoin removals in light of ongoing proceedings in the Northern District of Texas and the Supreme Court's instruction that challenges to removal must be brought in detainees' districts of confinement. See ECF No. 93 (Apr. 18 Hrg. Tr.) at 24–25, 27–28; Minute Order of Apr. 18, 2025, 7:39 p.m. Later that evening, the Supreme Court enjoined removals from that district. See A.A.R.P. v. Trump, 145 S. Ct. 1034, 1034 (2025) (mem.).

On April 24 and 25, Plaintiffs filed their Amended Complaint, along with new Motions for a Preliminary Injunction and Class Certification. See Am. Compl.; ECF Nos. 102 (PI Mot.);

103 (Class Cert. Mot.). As they had previewed, they added new parties and now seek to certify two new classes (which they originally termed "subclasses"): one comprising the detainees held at CECOT, and the other individuals in criminal custody throughout the United States subject to removal under the Proclamation. See Class Cert. Mot. at 2; Am. Compl., ¶¶ 12–23 (parties). They also asked to "amend" the previously certified class of all noncitizens in U.S. custody subject to the Proclamation to include future class members. See Class Cert. Mot. at 2. For the putative CECOT Class, they seek habeas relief on the basis that their removal to El Salvador under the Proclamation was unlawful, and they ask the Court to facilitate their return to the United States. See PI Mot. at 1–2. For the putative Criminal Custody Class, they seek an order enjoining their removal under the Act and requiring the Government to provide constitutionally adequate notice and at least 30 days to challenge their detention and removal under the Act. Id. at 2. In addition, both Classes allege that their Fifth Amendment due-process rights were or will be violated by the Government's removal procedures. See Am. Compl., ¶¶ 142–45. The new named Petitioners-Plaintiffs also dispute that they are members of Tren de Aragua. Id., ¶¶ 12–18, 23.

In order to provide habeas relief to the CECOT Class, the Court would have to find that the United States retains "custody" of the putative Class members within the meaning of the federal habeas statute. See 28 U.S.C. § 2241(c). Although some facts in the record supported Plaintiffs' argument that the Government retains "constructive custody" over Class members through the arrangement that the United States made with El Salvador to imprison them, the Court ordered Plaintiffs to propose a plan for jurisdictional discovery on that question. See ECF No. 116 (First Discovery Order). It also ordered the Government to submit any additional declarations it wished to provide prior to Plaintiffs' discovery plan. Id. The next day, the

Government submitted a declaration and several documents under seal.  See ECF No. 118

(Sealed Documents).  It has since filed on the public docket a redacted version of that

declaration.  See ECF No. 129 (Michael G. Kozak Redacted Decl.).  As described in more detail

shortly, the upshot of Defendants' submission is that the United States has relinquished custody

of the CECOT Class to El Salvador.

   Plaintiffs subsequently proposed jurisdictional discovery consisting of a set of

admissions, interrogatories, and requests for production.  See ECF No. 125 (Jurisdictional

Discovery Plan).  After narrowing that request, the Court permitted discovery to proceed.  See

ECF No. 128 (Second Discovery Order).  By May 27, 2025, Defendants' discovery production

was substantially complete.  See ECF No. 145 (Pls. Discovery Resp.) at 3.  The Court is

therefore prepared to rule on Plaintiffs' Motions for Preliminary Injunction and Class

Certification.

## II.    Legal Standard

   "A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter

v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary

injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to

suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in

his favor, and [4] that an injunction is in the public interest."  Sherley v. Sebelius, 644 F.3d 388,

392 (D.C. Cir. 2011) (alterations in original) (quoting Winter, 555 U.S. at 20).  "The moving

party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the

requested relief is warranted."  Hospitality Staffing Solutions, LLC v. Reyes, 736 F. Supp. 2d

192, 197 (D.D.C. 2010) (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290,

297 (D.C. Cir. 2006)).

### III.  Analysis

In moving for a preliminary injunction, the putative Classes seek related but distinct relief.  The CECOT Class asks this Court to order Defendants to facilitate their return to the physical custody of the United States.  See ECF No. 102-1 (PI Br.) at 1.  That Class does so primarily through a petition for habeas corpus, arguing that Class members — although in El Salvador — are in the United States's constructive custody and the Proclamation is unlawful.  Id. at 17–25; Am. Compl. at 37.  The CECOT Plaintiffs also argue that their summary removals violated the Fifth Amendment's Due Process Clause.  See Am. Compl., ¶¶ 69–70, 144, 147; PI Br. at 14–16; ECF No. 103-1 (Class Cert. Br.) at 3.  The Criminal Custody Class — noncitizens in state or federal criminal custody with detainers lodged against them by Defendants pursuant to the Proclamation — also brings a habeas and a due-process claim.  Those Class members contend that they can attack their future removal in this Court through habeas, and that, in the alternative, Defendants will remove them without providing them sufficient opportunity to file such a habeas challenge, thereby violating their due-process rights.  See Am. Compl., ¶¶ 94, 142–45; PI Br. 10–11, 14–16.

The Court concludes that of these various claims, only one is likely to succeed on the merits: the CECOT Class was removed from the United States before its members had any meaningful opportunity "to actually seek habeas relief," thereby violating their due-process rights.  J.G.G., 145 S. Ct. at 1006.  Because this Class also faces irreparable harm from continued incarceration at CECOT, and because the balance of equities and public interest favor it, preliminary relief is warranted here.  Specifically, members of the CECOT Class must be allowed the practical opportunity to seek habeas relief that they were previously denied, such that their cases are "handled as [they] would have been had [they] not been improperly sent to El

13

Salvador." Noem v. Abrego Garcia, 145 S. Ct. 1017, 1018 (2025). Defendants must facilitate as much. Given that such a remedy may involve delicate questions relating to diplomacy and national security — core Executive Branch functions — the Court will proceed in measured fashion. It will begin by allowing the Government to propose how it will ensure that the CECOT Class receives the process it is constitutionally due. That process must nonetheless be forthcoming.

Before delving into the analysis, some housekeeping is in order. On March 15, when granting the TRO, the Court certified a class of all noncitizens in U.S. custody subject to the Proclamation. See Minute Order of Mar. 15, 2025, 7:25 p.m. The Supreme Court later vacated "[t]he March 15, 2025 minute order[] granting a temporary restraining order." J.G.G., 145 S. Ct. at 1006. To the extent that the Supreme Court did not thereby also vacate the provisional class certification, Plaintiffs have now clarified that they no longer seek to certify that original class. See ECF Nos. 127 (Class Cert. Reply) at 3 & n.1; 124 (May 7 Hrg. Tr.) at 5:2–23. They have also explained that the original named Plaintiffs are not members of either putative Class. See Class Cert. Reply at 3. This Opinion therefore does not discuss either the original class or the original named Plaintiffs; it instead evaluates only the viability of the CECOT and Criminal Custody Classes and their distinct claims. Last, because the Court ultimately concludes that it cannot exercise habeas jurisdiction over either putative Class, it refers to the challengers only as Plaintiffs, not Petitioners-Plaintiffs. It likewise uses the term Defendants, rather than Respondents-Defendants.

In the sections that follow, the Court first addresses whether Plaintiffs satisfy the factors governing preliminary relief before it turns to whether either Class may be certified. It does so

14

because such certification turns in part on the nature of the claim(s) the putative Classes can bring. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

A.  Preliminary-Injunction Factors

1.  *Likelihood of Success on the Merits*

a.  CECOT Class

Plaintiffs' proposed CECOT Class comprises those noncitizens removed from the United States under the Proclamation and currently detained at CECOT. See Class Cert. Mot. at 2. Reyes Mota, Hernandez Romero, J.A.B.V., M.A.O.R., G.A.A.A., and M.R.M. — all previously residing in the United States and presently imprisoned at CECOT — seek to represent the class through their next friends. See Am. Compl., ¶¶ 12–17. Each contests his designation as an alien enemy. Id. Prior to their removal on March 15, these men allege that they were not informed that they had been designated alien enemies or that they could challenge that designation, "[n]or were they given an opportunity to do so." Id., ¶ 69. Since their removal, they have been held incommunicado at CECOT. Id., ¶¶ 12–17. They allege that at least one additional flight has transported detainees to CECOT since the initial March 15 flights. Id., ¶ 75.

The Court construes the CECOT Plaintiffs' habeas and due-process claims as mutually exclusive. That is, if Plaintiffs are able to seek class-wide habeas relief, then their habeas petition vindicates their due-process rights and thereby moots the latter claim. See J.A.V. v. Trump, 2025 WL 1257450, at *11–12 (S.D. Tex. 2025). If, conversely, they cannot access the habeas writ, then their due-process claims may be able to proceed. The Court therefore examines the viability of each claim in that order.

i.  Habeas

To obtain habeas relief, the CECOT Plaintiffs bear the burden of establishing the Court's statutory jurisdiction to entertain their challenge. See In re Petitioners Seeking Habeas Corpus

15

Relief in Rel. to Prior Dets. at Guantanamo Bay, 700 F. Supp. 2d 119, 127 (D.D.C. 2010), aff'd

sub nom., Chaman v. Obama, 2012 WL 3797596 (D.C. Cir. Aug. 10, 2012).  A threshold to

invoking that jurisdiction is establishing that the proposed CECOT Class is "in custody" "under

or by color of the authority of the United States" or "in violation of the Constitution or laws or

treaties of the United States."  First Discovery Order at 1 (quoting 28 U.S.C. § 2241(c)(1), (3)).

Resolution of this inquiry alone determines whether the CECOT Plaintiffs' habeas action may

proceed.  If the Court answers in the affirmative, Defendants concede — as they must — that

this Court sitting in the District of Columbia would be the proper venue for any such claim.  See

May 7 Hrg. Tr. at 14:18–24; Rumsfeld v. Padilla, 542 U.S. 426, 447 n.16 (2004); Rasul v. Bush,

542 U.S. 466, 483–84 (2004).

        To begin, the fact that the CECOT Plaintiffs are in the physical custody of El Salvador is

not dispositive of the analysis, as "the use of habeas corpus has not been restricted to situations

in which the applicant is in actual, physical custody."  Jones v. Cunningham, 371 U.S. 236, 239

(1963).  Rather, the Supreme Court has "very liberally construed the 'in custody' requirement"

of the habeas statute, Maleng v. Cook, 490 U.S. 488, 492 (1989), extending habeas jurisdiction

to petitioners who are not in anyone's physical custody at all, see, e.g., Justices of Bos. Mun.

Court v. Lydon, 466 U.S. 294, 300–02 (1984) (free on personal recognizance awaiting trial), to

those who are in the physical custody of a private party, see, e.g., United States v. Jung Ah Lung,

124 U.S. 621, 622, 626 (1888) (captured by captain of steamship), and to those who are

imprisoned in one jurisdiction but subject to a detainer in the respondent's jurisdiction.  See

Braden v. 30th Jud. Circuit Court of Ky., 410 U.S. 484, 498–99 (1973).  As this Court has

previously explained, "The organizing principle for such disparate situations is the concept of

'constructive custody,'" First Discovery Order at 3, which exists whenever "the imprisoning

16

sovereign is the respondent's agent," the prisoner's "liberty is restrained by the respondent's parole conditions," or the prisoner "can point to some continuing collateral disability which is the result of the respondent's action." Steinberg v. Police Court of Albany, 610 F.2d 449, 453 (6th Cir. 1979). Courts in this district have thus held that the habeas statute extends to situations where, despite lacking physical custody of the prisoner, "the respondent [is] responsible for significant restraints on the petitioner's liberty." Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 48 (D.D.C. 2004); see In re Petitioners Seeking Habeas Corpus Relief, 700 F. Supp. 2d at 127.

The CECOT Plaintiffs pursue that theory of custody here. According to them, Defendants retain "the power to produce" members of the CECOT Class, see Munaf v. Geren, 553 U.S. 674, 686 (2008) (quoting Wales v. Whitney, 114 U.S. 564, 574 (1885)), because the Government "is responsible for" their detention abroad. See PI Br. at 7. That is so, they contend, because Defendants have been "working through an intermediary or agent" (i.e., El Salvador) to detain class members at CECOT at the "behest" of the United States, which in turn requested, directed, and currently funds their incarceration. Id.; see also Am. Compl., ¶ 77. In their view, that puts this case on all fours with Abu Ali, a decision from Judge John Bates in this district that held that the court likely had habeas jurisdiction to adjudicate a U.S. citizen's challenge to his detention in a Saudi Arabian prison at the request of U.S. authorities. See 350 F. Supp. 2d at 31, 67–69. They also rely on Munaf, where the Supreme Court ruled that American citizens held by U.S. authorities abroad at the behest of a multinational force were "in custody" for purposes of the habeas statute, "even if that custody could be viewed as 'under . . . color of' another authority." 553 U.S. at 686 (alteration in original) (quoting 28 U.S.C. § 2241(c)(1)). According to Plaintiffs, moreover, the fact that Defendants "have sought to 'deliberately shield'"

the CECOT Class "from seeking judicial review further supports habeas jurisdiction." PI Br. at 8 (quoting Abu Ali, 350 F. Supp. 2d at 54); see also Am. Compl., ¶ 80.

Defendants offer three principal responses to these arguments. First, they maintain that any understanding between the United States and El Salvador "is not an enforceable agreement providing that the United States can obtain or retain control over aliens imprisoned on Salvadoran soil by Salvadoran guards." ECF No. 108 (PI Opp.) at 5; see also id. at 8 (similar). Put another way, because constructive custody requires an agent-principal relationship, "[a]gency requires control," and the United States does not control El Salvador, no constructive custody exists here. Id. at 6. Second, they contend that "plenary and indefinite control over the detention site is key" to habeas jurisdiction, id. (citing Boumediene v. Bush, 553 U.S. 723, 765 (2008)), and the United States does not exercise even "de facto sovereignty" over CECOT. Id. at 7. Third, Defendants emphasize "the importance of citizenship" to the jurisdictional inquiry, noting that "when it comes to detention abroad, the writ may run to citizens where it does not run to aliens" — "[a]nd no Petitioner here alleges United States citizenship." Id. at 9–10.

As Plaintiffs point out, see ECF No. 111 (PI Reply) at 4–5, the Government's reliance on the latter two factors as the basis for habeas jurisdiction confuses § 2241 with the prerequisites for constitutional habeas, which they are not asserting here. Where statutory habeas jurisdiction does not lie, courts have indeed looked to such considerations — among other practical concerns — to determine whether the Suspension Clause nonetheless guarantees access to the writ. See, e.g., Johnson v. Eisentrager, 339 U.S. 763, 769–79 (1950); Boumediene, 553 U.S. at 766 (listing "at least three factors" relevant to constitutional analysis, including citizenship of detainee and nature of sites of apprehension and detention); Al Maqaleh v. Gates, 605 F.3d 84, 94–99 (D.C. Cir. 2010) (applying these factors to hold that aliens captured and held by U.S. military at

18

military base in Afghanistan lacked constitutional habeas right); see also Rasul, 542 U.S. at 476–78 (construing Eisentrager as constitutional habeas case).

At issue here, however, is the meaning of § 2241, a statutory inquiry governed by the text of the habeas statute.  See Munaf, 553 U.S. at 686.  That text makes no mention of either the citizenship of the detainee or of "plenary" U.S. control over the detention site.  See Rasul, 542 U.S. at 481 ("[T]here is little reason to think that Congress intended the geographical coverage of the statute to vary depending on the detainee's citizenship."); id. at 483–84 ("nothing more" required under § 2241 than federal custody of petitioner and jurisdiction over custodians).  While the Supreme Court, admittedly, has not always been clear on the relationship between constitutional and statutory habeas jurisdiction, cf. Munaf, 553 U.S. at 688 (noting, in statutory habeas case, that "habeas jurisdiction can depend on citizenship"), this Court sees little reason to graft onto § 2241 extra-textual requirements derived from the Supreme Court's Suspension Clause cases and relevant only when § 2241 itself does not apply.

That leaves the heart of the issue: the legal requirements for constructive custody under the habeas statute.  Defendants, as previously noted, contend that the inquiry turns on the respondent's legal control over the jailer — a theory that would seem to essentially preclude finding constructive custody whenever a foreign sovereign holds the keys.  Cf. Opati v. Republic of Sudan, 590 U.S. 418, 420 (2020) ("The jurisdiction of the nation within its own territory is necessarily exclusive and absolute.  It is susceptible of no limitation not imposed by itself.") (quoting Schooner Exchange v. McFaddon, 11 U.S. (7 Cranch) 116, 136 (1812) (Marshall, C.J.)).  That approach, however, is difficult to reconcile with Braden, which explained that a state "holding [a] prisoner in immediate confinement acts as [an] agent" for a state with a detainer against that individual, see 410 U.S. at 498–99, even though states "are separate

19

sovereigns from one another." Denezpi v. United States, 596 U.S. 591, 598 (2022) (citation

omitted). Defendants' theory of constructive custody also sits in significant tension with Munaf,

which noted that American soldiers could be viewed as operating by "color" of a multinational

force, even though they "answer[ed] only to an American chain of command." 553 U.S. at 685–

86 (cleaned up). While "actual custody" by the United States thus "suffice[d] for jurisdiction"

there, the Court acknowledged that the "disjunctive" construction of § 2241, id. at 686, permits

habeas jurisdiction whenever a petitioner is held in custody either "under" the authority (legal

control) or by "color" of the authority of the United States. See 28 U.S.C. § 2241(c)(1).

Rather than adopting the Government's bright-line rule, the Court is persuaded to follow

the factors outlined by Judge Bates, which ask whether:

> (i) [Petitioners are] detained at the behest of United States officials;
> (ii) [their] ongoing detention is at the direction of the United States
> enlisting a foreign state as an agent or intermediary who is
> indifferent to the detention of the prisoner[s]; (iii) [they are] being
> detained in the foreign state to deny [them] an opportunity to assert
> [their] rights in a United States tribunal; and (iv) [they] would be
> released upon nothing more than a request by the United States.

Abu Ali, 350 F. Supp. 2d at 68 (footnotes omitted). As he explained, "Any one of these factors

may not be sufficient to establish jurisdiction," id., and the list may not be exhaustive. Id. at 68

n.42. Collectively, however, they sketch the appropriate contours of whether and when a foreign

state might hold individuals "in custody . . . by color of the authority of the United States." 28

U.S.C. § 2241(c)(1). They also roughly track how the Supreme Court has interpreted parallel

language in other statutes. For instance, it has long been established that a person acts "under

color of" law for the purposes of 42 U.S.C. § 1983 or 18 U.S.C. § 242 when "he is a willful

participant in joint action with the State or its agents," and not only when he is himself "an

officer of the State." Dennis v. Sparks, 449 U.S. 24, 27 (1980); see also Adickes v. S.H. Kress &

Co., 398 U.S. 144, 152 (1970); United States v. Price, 383 U.S. 787, 794 (1966). So, too, the

Abu Ali factors capture situations where foreign states, while outside the legal control of the United States, nonetheless act "by color" of its authority to detain individuals. Such circumstances, however, will be "exceptional." Abu Ali, 350 F. Supp. 2d at 41.

What, then, does the record here suggest? No one disputes that members of the proposed CECOT Class are noncitizens apprehended inside the United States by U.S. officials pursuant to U.S. law and subsequently transferred to Salvadoran custody. In a declaration attached to their Motion, Plaintiffs also collect public statements from U.S. and Salvadoran officials documenting an arrangement in which El Salvador would accommodate deported Class members in exchange for monetary compensation from the United States. See ECF No. 102-14 (Oscar Sarabia Roman Decl.), Exhs. 8, 17 (statement by Secretary of State Marco Rubio explaining that El Salvador agreed to confine 250 alleged members of Tren de Aragua in its "very good jails at a fair price that will also save our taxpayer dollars"); id., Exhs. 9, 11 (statements by El Salvador's president that it is holding 238 alleged members of Tren de Aragua for "fee" paid by United States, thus offering United States "the opportunity to outsource part of its prison system"). Plaintiffs also point to an interview that President Trump conducted with ABC News on April 29, in which he indicated that he had the power to order the return of Kilmar Abrego Garcia, a Salvadoran national deported to El Salvador at the same time as the CECOT Class. See PI Reply at 2–3. That admission, they contend, shows that "the U.S. government has power over the detainees it removed to CECOT." Id. at 2. Relying on similar evidence, other courts have appeared to agree that those removed from the United States to CECOT remain in U.S. constructive custody. See Abrego Garcia v. Noem, 2025 WL 1014261, at *5–7 (D. Md. Apr. 6, 2025); Abrego Garcia v. Noem, 2025 WL 1021113, at *4 (4th Cir. Apr. 7, 2025) (Thacker, J., concurring).

21

Defendants dispute that characterization of the agreement reached with El Salvador. They have filed on the public docket a redacted declaration from Michael G. Kozak, who serves as the Senior Bureau Official with the Bureau of Western Hemisphere Affairs at the State Department.  See Redacted Kozak Decl.  He avers that "the detention and ultimate disposition of those detained in CECOT and other Salvadoran detention facilities are matters within the legal authority of El Salvador in accordance with its domestic and international legal obligations." Id., ¶ 9.  As evidence, he cites statements by President Nayib Bukele of El Salvador, allegedly making "a public proposal to [President] Nicolas Maduro of Venezuela for a 'humanitarian agreement that contemplates the repatriation of 100%' of the [Tren de Aragua] members transferred from the United States to El Salvador 'in exchange for the release and surrender of an identical number (252) of the thousands of political prisoners [Venezuela] hold[s].'" Id. (quoting and translating Nayib Bukele (@nayibbukele), X (Apr. 20, 2025, at 5:34 p.m.), https://perma.cc/M4FB-6THH).  Kozak also observes that El Salvador has refused some members of Congress access to Abrego Garcia and even transferred him out of CECOT without giving advance notice to the United States.  Id., ¶ 10.  In portions of Kozak's declaration filed under seal along with additional exhibits, the Court has also been furnished with greater specifics about the contours of the arrangement reached between the United States and El Salvador.  See Sealed Documents.  According to Defendants, these facts demonstrate that members of the proposed Class are currently in custody solely by color of Salvadoran authority.  See PI Opp. at 8.  Besides, they maintain, contrary public statements by political officials cannot be credited, especially compared to a "clear official declaration under oath." Id. at 10 (citing Trump v. Hawaii, 585 U.S. 667, 701–02 (2018)).

22

On the basis of the above conflicting evidence, the Court ordered jurisdictional discovery in hopes of further elucidation of the particulars of the relationship.  See Second Discovery Order.  That discovery, which the Government asserts is now substantially complete, consists of Defendants' responses to Plaintiffs' requests for admission and interrogatories, various redacted State Department records, four congressional hearing transcripts, and a privilege log explaining the basis for withholding 24 responsive records.  See Pls. Discovery Resp. at 2–3, 19.  The Court has reviewed the responses and documents, which were filed under seal.  Rather than adjudicate the parties' disputes over the sufficiency of the production and the propriety of the Government's privilege invocations, it believes it has enough information to resolve the jurisdictional question now.

While it is a close question, the current record does not support Plaintiffs' assertion that they are in the constructive custody of the United States.  Even crediting the public statements characterizing the arrangement as outsourcing the U.S. prison system and acknowledging the President's unofficial assertion of his power to request a release, such comments cannot overcome a sworn declaration from a knowledgeable government official attesting that the CECOT Class's ongoing detention is a question of Salvadoran law.  See Redacted Kozak Decl., ¶ 9 (both "detention" and "ultimate disposition" of CECOT Plaintiffs "are matters within the legal authority of El Salvador"); cf. Trump, 585 U.S. at 699–710 (considering extrinsic statements made by President but finding policy sufficient to survive rational-basis review based on facially legitimate stated justifications).  Sealed portions of that declaration shed further light on the diplomatic arrangement between the United States and El Salvador, as do the sealed exhibits that the Government has concurrently filed.  They appear to show that, while the United States and El Salvador have struck a diplomatic bargain vis-à-vis the detainees, the ongoing

23

detention of the CECOT Class is not solely at the "behest" of the United States, nor is El Salvador "indifferent" to their detention.  Abu Ali, 350 F. Supp. 2d at 68.  Rather, the picture that emerges from the current record is that El Salvador has chosen — in negotiation with the United States and for reasons far outside the ken of a federal district court — to detain Plaintiffs at CECOT, and it can choose to release them as well.

This conclusion, to be sure, presumes the truthfulness and reliability of the Kozak Declaration, which is rendered more difficult given the Government's troubling conduct throughout this case.  The Court nonetheless follows the lead of the Supreme Court, the D.C. Circuit, and other courts within this district in taking Kozak at his word.  In Munaf, the Supreme Court instructed federal district courts not to "second-guess" assessments of the political branches as to the nature of detention under a foreign sovereign.  See 553 U.S. at 702.  Applying that principle, our Circuit has found governmental submissions similar to the Kozak Declaration to be conclusive on the question whether ongoing detention is "on behalf of the United States." Kiyemba v. Obama, 561 F.3d 509, 515 (D.C. Cir. 2009) (quoting declaration from Deputy Assistant Secretary of Defense for Detainee Affairs); see Gul v. Obama, 652 F.3d 12, 18 & n.* (D.C. Cir. 2011) (quoting declaration from different Deputy Assistant Secretary of Defense for Detainee Affairs that detainees were "transferred entirely to the custody and control of the [receiving] government") (alteration in original).  So, too, have other judges in this district.  See, e.g., In re Petitioners Seeking Habeas Corpus Relief, 700 F. Supp. at 127–28; Al Hajji v. Obama, 2009 WL 4251108, at *1–2 (D.D.C. Nov. 23, 2009).

Indeed, those cases themselves evaluated habeas challenges to the transfer of Guantánamo detainees to foreign detention, a process that involved diplomatic negotiations between the United States and other governments "to ascertain or establish what measures the

24

receiving government intend[ed] to take pursuant to its own domestic laws and independent determinations that will ensure that the detainee [would] not pose a continuing threat to the United States and its allies."  Obaydullah v. Bush, No. 08-1173, ECF No. 15-1 (Sandra L. Hodgkinson Decl.), ¶ 5 (D.D.C. Aug. 12, 2008).  Despite the diplomatic involvement of the United States in those petitioners' subsequent and ongoing detention in the foreign states, courts nonetheless consistently held, in reliance on the Government's representations, that detention abroad was not on behalf of the United States.  See Kiyemba, 561 F.3d at 515; Gul, 652 F.3d at 18; In re Petitioners Seeking Habeas Corpus Relief, 700 F. Supp. 2d at 127–29; Al Hajji, 2009 WL 4251108, at *2.  Put differently, the fact that the United States had negotiated the continued detention of the Guantánamo prisoners post-transfer was not sufficient to bring their imprisonment abroad within the reach of the habeas statute.

It should be noted that the declarations filed in those cases were substantially more on point than what the Government has proffered here.  Compare, e.g., Obaydullah, No. 08-1173, Hodgkinson Decl., ¶ 5 (stating unequivocally that once transferred, detainees are "no longer in the custody and control of the United States"), and Kiyemba, 561 F.3d at 515 (quoting declaration from Deputy Assistant Secretary of Defense for Detainee Affairs stating that after release from U.S. custody, detention by foreign sovereign was "pursuant to its own laws and not on behalf of the United States"), with Redacted Kozak Decl., ¶ 9 (stating only that "the detention and ultimate disposition of those detained in CECOT and other Salvadoran detention facilities are matters within the legal authority of El Salvador").  Plaintiffs, however, have unearthed no comparably reliable evidence to rebut the Kozak Declaration.  The Court must therefore at this point accept the Government's representations as to the nature of the CECOT Plaintiffs' ongoing detention, despite their incongruity with multiple public statements made by both Salvadoran and

U.S. officials.  Cf. Kiyemba, 561 F.3d at 521 (Kavanaugh, J., concurring) ("Under the principles of Munaf, [the Government's] declaration suffices to demonstrate that the proposed transfer of an alien to the custody of a foreign nation is not the same thing as the U.S. Government's maintaining the detainee in U.S. custody.").  Those representations position this case closer to the Guantánamo transfer cases just referenced than to Abu Ali or any other constructive-custody case in which the jailer acts merely at the behest of the respondent.

The Court is nonetheless mindful of the possibility, raised by Plaintiffs, that the Government has adopted and presented its arrangement with El Salvador as a "ruse — and a fraud on the court — designed to maintain control over the detainees beyond the reach of the writ."  Kiyemba, 561 F.3d at 515 n.7.  Courts are rightfully wary of enabling the Executive "to switch the Constitution on or off at will" by "manipulat[ing]" detainees' place of confinement to escape habeas jurisdiction.  Al Maqaleh, 605 F.3d at 98–99 (quotation marks omitted).  Our legal tradition is wholly incompatible with the establishment of a network of overseas prisons, shielded from the Great Writ by the facade of foreign control, to which the Government routinely exports detainees without due process — a legal no man's land.  Indeed, the Habeas Corpus Act of 1679 generally prohibited detention "beyond the seas" to places where the writ did not run, see 31 Car. 2, c. 2, § 12 (1679) (Eng.), and such abuses partly animated this nation's War for Independence.  See Declaration of Independence para. 21 (U.S. 1776) (listing amongst grievances against the King that he "transport[ed]" colonists "beyond Seas to be tried for pretended offences").  Were such a scheme to subsequently be made apparent to the Court, it would follow the Supreme Court's instruction to "take such action as will defeat attempts to wrongfully deprive parties entitled to sue in Federal courts [for] the protection of their rights in those tribunals."  Ala. Great S. Ry. Co. v. Thompson, 200 U.S. 206, 218 (1906).

As matters currently stand, however, the Court takes the Government at its word that El Salvador is the legally responsible sovereign for the CECOT Plaintiffs' ongoing detention. And Plaintiffs — who bear the burden of establishing habeas jurisdiction, In re Petitioners Seeking Habeas Corpus Relief, 700 F. Supp. 2d at 127 — have pointed the Court to no robust evidence to the contrary. The Court nonetheless reminds the Government that any official who makes knowingly false statements in a sworn declaration subjects himself to perjury prosecution. See 18 U.S.C. § 1621(2).

Given the lack of habeas jurisdiction, the Court must next consider whether the CECOT Plaintiffs may obtain relief via another route.

ii.  Due Process

(a)  Standalone Claim

CECOT Plaintiffs also contend that the Government violated their Fifth Amendment due-process rights by denying them "adequate notice and meaningful procedural protections to challenge their removal." Am. Compl., ¶ 144; see PI Br. at 14–17. One might understandably wonder whether Plaintiffs can bring an independent due-process claim after the Supreme Court made clear that all challenges to removability under the Act must be via habeas. After all, that Court wrote in J.G.G. that plaintiffs' claims for "relief against the implementation of the Proclamation and against their removal under the [Act] . . . must be brought in habeas." 145 S. Ct. at 1005. According to Plaintiffs, however, their due-process claim "is a precondition to the effective exercise of habeas rights" and therefore "lies outside of habeas." Class Cert. Br. at 3; see also Am. Compl., ¶ 95; Second TRO Mot. at 2–4. The Court agrees.

Claims challenging the legality of Act-based removals must be brought in habeas, the Supreme Court wrote, because they "necessarily imply the invalidity of [one's] confinement and

27

removal under the [Act]," which brings them "within the core of the writ of habeas corpus." J.G.G., 145 S. Ct. at 1005 (quotation marks omitted). A claim that does not imply the invalidity of the challenger's "confinement and removal," then, need not be brought in habeas. That principle has been well established by cases detailing "the relationship between § 1983 and the federal habeas statutes," including whether and when habeas provides the sole avenue for relief. See Wilkinson v. Dotson, 544 U.S. 74, 78–82 (2005) (describing doctrine's "legal journey"). After several decades of development, the black-letter law is clear: habeas remedies displace other actions only when success in the non-habeas action would "necessarily vitiate the legality of . . . confinement." Id. at 81.

      In light of that rule, prisoners are free to challenge outside of habeas certain procedures they are afforded, even when they hope or expect that victory on those procedural claims will bring about a speedier release. In Wilkinson, for example, inmates who received unfavorable parole determinations brought § 1983 claims attacking the parole proceedings on the ground that they were unconstitutional, including by violating the Due Process Clause. See 544 U.S. at 76–77. The Supreme Court soundly rejected the state's argument that those challenges could be brought only in habeas, explaining that the state "jump[ed] from a true premise (that in all likelihood the prisoners hope these actions will help bring about earlier release) to a faulty conclusion (that habeas is their sole avenue for relief)." Id. at 78. The Court reiterated that claims must be brought in habeas only if "success in the action would . . . necessarily spell immediate or speedier release for the prisoner" or "would necessarily imply the unlawfulness of a . . . conviction or sentence." Id. at 81. Because success for those plaintiffs "[did] not mean immediate release from confinement or a shorter stay in prison" and instead "mean[t] at most" a

new hearing at which authorities retained "their discretion [to] decline to shorten [the] prison term," the Court explained, the inmates could bring their challenges outside of habeas. Id. at 82.

The federal reporters are replete with additional examples of that distinction. In Edwards v. Balisok, 520 U.S. 641 (1997), for example, the Supreme Court held that a challenger's claim "based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment" could be brought only in habeas. Id. at 648. The Court also made clear, however, that the challenger's request for an injunction against future allegedly unconstitutional procedures could be brought outside the writ. Id. at 648–49; see Wilkinson, 544 U.S. at 80. Likewise, in Skinner v. Switzer, 562 U.S. 521 (2011), the Supreme Court reiterated its earlier holdings by concluding that a prisoner complaining that he was unconstitutionally deprived of DNA testing could bring that claim outside of habeas. Id. at 533–34. Although the inmate surely hoped that any DNA results would facilitate a later attack on his conviction, the Court stressed the importance of the requirement that the prisoner's challenge "necessarily" attacks the validity of his confinement in order for habeas to provide the exclusive remedy. Id. at 534 (quotation marks omitted). As the Court pointed out, "While test results might prove exculpatory, that outcome is hardly inevitable . . . [because the] results might prove inconclusive or they might further incriminate [the plaintiff]." Id. The Court accordingly allowed the prisoner to bring his claim outside of habeas. Id. And in Davis v. U.S. Sentencing Commission, 716 F.3d 660 (D.C. Cir. 2013), our Circuit held that a prisoner challenging the Sentencing Guidelines on constitutional grounds did not need to bring a habeas claim because a successful challenge "would do no more than allow him to seek a sentence reduction, which the district court retains the discretion to deny." Id. at 666. The upshot is that while claims that actually "seek[]" habeas relief must be brought through the writ itself, claims that "simply relate[]

to . . . core habeas corpus relief" need not. <u>Wilkinson</u>, 544 U.S. at 81 (quotation marks omitted). Rather, they may be brought "through a variety of causes of action." <u>Davis</u>, 716 F.3d at 666.

Here, Plaintiffs allege that their constitutional rights were violated because they were denied "notice and a meaningful opportunity to challenge their designation as alien enemies." PI Br. at 14. In related litigation, the Supreme Court just weeks ago expressed "skeptic[ism] of the self-defeating notion that the right to the <u>notice</u> necessary to 'actually seek habeas relief' must <u>itself</u> be vindicated through individual habeas petitions, somehow by plaintiffs who have not received notice." <u>A.A.R.P.</u>, 145 S. Ct. at 1370 (quoting <u>J.G.G.</u>, 145 S. Ct. at 1006). Guided by both that statement and the repeated instructions of that Court regarding the parameters of habeas, this Court concludes that if the CECOT Plaintiffs succeed on their due-process claims, that success would not necessarily imply that their confinement and removal under the Alien Enemies Act are invalid. It would instead grant them only the chance to argue as much. Put simply, Plaintiffs' due-process claim "attack[s] only the wrong procedures" (<u>i.e.</u>, the process that denied them a chance to actually seek habeas relief), "not the wrong result" of the sought-after procedures (<u>i.e.</u>, removal). <u>Wilkinson</u>, 544 U.S. at 80 (cleaned up) (quoting <u>Heck v. Humphrey</u>, 512 U.S. 477, 483 (1994)). The CECOT Plaintiffs' due-process challenge is legally independent from their habeas claims regarding their removability under the Act and therefore need not be raised through habeas.

Such a suit may be brought in equity. As the Supreme Court has long established, "[I]n a proper case, relief may be given in a court of equity . . . to prevent an injurious act by a public officer," including "violations of federal law by federal officials." <u>Armstrong v. Exceptional Child Ctr., Inc.</u>, 575 U.S. 320, 327 (2015) (quoting <u>Carroll v. Safford</u>, 44 U.S. (3 How.) 441, 463 (1845)); <u>see also id.</u> at 337–39 (Sotomayor, J., dissenting) ("That parties may call upon the

federal courts [in equity] to enjoin unconstitutional government action is not subject to serious dispute.").  That principle derives from "a long history of judicial review of illegal executive action, tracing back to England."  Id. at 327 (majority opinion).  Pursuant to that principle, "it is established practice for [the Supreme] Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution."  Bell, 327 U.S. at 684.  Because such relief is "a judge-made remedy," the Supreme Court has explained, it does not "rest[] upon" the existence of a right of action.  Armstrong, 575 U.S. at 327; see also Samuel L. Bray & Paul B. Miller, Getting Into Equity, 97 Notre Dame L. Rev. 1763, 1772–76 (2022) ("It is a mistake, or at least conducive of a mistake, to refer to 'causes of action' in equity.").  Plaintiffs with constitutional grievances can therefore seek "the equitable relief that is traditionally available to enforce federal law" absent a specific cause of action, as long as Congress has not displaced the equitable power of the federal courts.  See Armstrong, 575 U.S. at 329; cf. Heikkila v. Barber, 345 U.S. 229, 234–36 (1953) (holding habeas available to vindicate due-process rights even in face of statutes precluding judicial review).  Courts, for example, often permit plaintiffs to bring suits directly under the Constitution's guarantees of individual rights, such as the First Amendment.  See, e.g., Trudeau v. FTC, 456 F.3d 178, 190 & n.22 (D.C. Cir. 2006).

That principle permits Plaintiffs to proceed here.  Just like litigants have since the beginning of our legal tradition, they may invoke this Court's equitable authority to restrain the Government from infringing upon constitutional protections.  They need not do so in habeas, nor are they obligated to identify a cause of action conferring that right.  See Am. Compl., ¶¶ 142–45 (styling due-process argument as an independent claim for relief separate from any other statutory causes of action).

31

(b)    Venue

Even though Plaintiffs can bring a freestanding due-process claim outside of habeas, given the physical distance between the events in question and the District of Columbia, the Court believes it prudent to ensure that this is a proper venue. The relevant statute, which "govern[s] the venue of all civil actions brought in district courts of the United States" provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(a)(1), (e)(1).

Plaintiffs bring this action against a variety of Government officials in their official capacities, as well as Government agencies, all of whom reside here in Washington. See Am. Compl. at ECF pp. 1–2. Plaintiffs have adequately pled that "each Government-official defendant, through the official's own individual actions, has violated the Constitution," rather than attempting to hold them "liable for the unconstitutional conduct of their subordinates." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). For example, Plaintiffs allege that Acting Director of Immigrant and Customs Enforcement Todd Lyons "is responsible for ICE's policies, practices, and procedures, including those relating to the detention of immigrants during their removal procedures." Am. Compl., ¶ 28. They also plead that Secretary of State Rubio "negotiates and enters into contracts or agreements with El Salvador for the removal and detention of [Plaintiffs] and others, and would be responsible for facilitating the return of [Plaintiffs] sent to El Salvador or any other country." Id., ¶ 30. Plaintiffs have therefore named proper defendants and sued them in the district in which they reside. As such, this matter falls well within the permissive

32

venue statute.  See 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3815 (4th ed. May 2025 Update).

(c)    Merits

Having established that the CECOT Plaintiffs may raise a standalone due-process claim based on their right to file for habeas relief prior to removal under the Proclamation, the remaining question is whether they are likely to succeed in showing that they were unlawfully prevented from doing so.  See Am. Compl., ¶¶ 69–70; PI Br. at 15.  They are.

As previously noted, earlier in the lifespan of this litigation, the Supreme Court held — with all nine Justices agreeing — that detainees seeking to challenge their detention or removal under the Alien Enemies Act "must receive notice after the date of this order that they are subject to removal under the Act," and such notice "must . . . allow them to actually seek habeas relief in the proper venue before such removal occurs."  J.G.G., 145 S. Ct. at 1006.  It grounded that holding in the Due Process Clause, pointing out that it is "'well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings."  Id. (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)); see also Yamataya v. Fisher (The Japanese Immigrant Case), 189 U.S. 86, 100–01 (1903).  That conclusion follows from the words of the Amendment itself, which applies to "any person" — not, as do other constitutional guarantees, to "citizens."  Cf. U.S. Const., amend. XIV, § 1, cl. 2 (Privileges or Immunities Clause).  While the process that is constitutionally due in any case is "flexible," Morrissey v. Brewer, 408 U.S. 471, 481 (1972), in every circumstance its core purpose is to "protect" against "the mistaken or unjustified deprivation of life, liberty, or property."  Carey, 435 U.S. at 259.  In this context, as the Supreme Court held, habeas serves that purpose — and a pivotal purpose it is, as at least one federal court has already found the Government's evidence insufficient to warrant alien-enemy

33

designation for certain habeas petitioners labeled members of Tren de Aragua.  See Sanchez Puentes v. Garite, 2025 WL 1203179, at *2 (W.D. Tex. Apr. 25, 2025).

Although the Government had previously denied that individuals were entitled to judicial review of their detention and removal under the Act, see Am. Compl., ¶ 70, it now acknowledges that it is required to provide detainees with notice of their designation under the Act and an opportunity to seek habeas relief prior to removal.  See PI Opp. at 14.  A declaration from Carlos D. Cisneros, an Assistant Field Office Director for ICE in Harlingen, Texas, sets forth the current parameters of the process the Government believes adequate: an English-only form that makes no mention of the right to file a habeas petition; "oral interpretation or assistance" to those who do not speak English or are illiterate; 12 hours once he receives that notice for a noncitizen to "express[]" an "intent to file a habeas petition"; and a further 24 hours to file such petition, only if the noncitizen expresses that intent.  See ECF No. 108-2 (Carlos D. Cisneros Decl.), ¶¶ 4–11 & ECF p. 5.

Unsurprisingly, the Supreme Court has since cast serious doubt on the sufficiency of those procedures.  In a separate case, it has explained that an Alien Enemies Act detainee "must have sufficient time and information to reasonably be able to contact counsel, file a petition, and pursue appropriate relief."  A.A.R.P., 145 S. Ct. at 1368.  "[N]otice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal," the Court noted, "surely does not pass muster."  Id.  Lower courts confronting this question have uniformly agreed.  The amount of time they have deemed constitutionally sufficient to enable detainees to file habeas petitions after receiving notice has ranged from 10 to 21 days — but never as few as 36 hours or even close.  See G.F.F. v. Trump, 2025 WL 1301052, at *6 (S.D.N.Y. May 6, 2025) (10 days); Gutierrez-Contreras v. Warden, 2025 WL 1202547, at

*3 (C.D. Cal. Apr. 25, 2025) (14 days); D.B.U. v. Trump, 2025 WL 1163530, at *1 (D. Colo. Apr. 22, 2025) (21 days); A.S.R. v. Trump, 2025 WL 1378784, at *20 (W.D. Pa. May 13, 2025) (21 days). Courts have also held that the notice to detainees must be provided in a language they understand, see D.B.U., 2025 WL 1163530, at *1; see also A.S.R., 2025 WL 1378784, at *20 (requiring notice in Spanish), and it must offer enough information for detainees to pursue their right to seek judicial review. See A.A.R.P., 145 S. Ct. at 1367–68; D.B.U., 2025 WL 1163530, at *1. At least one court has held that the notice must inform individuals of the "particular allegations" establishing the Government's case for alien-enemy designation. G.F.F., 2025 WL 1301052, at *6–8.

The CECOT Plaintiffs, however, got none of that. Indeed, according to the allegations in the Amended Complaint, which are supported by the declarations, they did not receive even the anemic process that the Government subsequently committed to provide. See Am. Compl., ¶¶ 69–70. Defendants admitted as much during oral argument on this Motion. See May 7 Hrg. Tr. at 30:19–30:20 (conceding that CECOT Class did not receive "the 12 hours that we are providing at this moment"). Instead, Plaintiffs allege that they were "already being transported to the airport and loaded onto planes" when the Proclamation establishing the basis for their removal was — as the Act requires — made public for the first time. See Am. Compl., ¶ 66; see also id., ¶ 35. According to the Amended Complaint, moreover, they "received no advance notice of the basis for their removal"; neither they nor their attorneys were told of their alien-enemy designation; and they were not informed they could challenge any such designation, much less given the opportunity to do so. Id., ¶ 69. "They were not even told where the plane was going when they boarded." Id. These allegations — which Defendants either concede or thus far do not dispute — suggest that the CECOT Class was removed before its members were

"actually" allowed to "seek habeas relief," J.G.G., 145 S. Ct. at 1006, as the Fifth Amendment required.

It is therefore beside the point that, as a general matter, noncitizens outside the United States — as the CECOT Plaintiffs currently are — lack due-process rights. See Ali v. Rumsfeld, 649 F.3d 762, 767 n.5 (D.C. Cir. 2011). This is not a case in which overseas noncitizens claim that a constitutional violation occurred abroad; such a claim would urge the "extraterritorial application of the Fifth Amendment," which the Supreme Court has rejected. United States v. Verdugo-Urquidez, 494 U.S. 259, 269 (1990) (discussing Eisentrager, 339 U.S. 763). Instead, the Supreme Court has already held that Plaintiffs possessed due-process rights when they were on U.S. soil, as they concededly were at the time of the violation (i.e., their removal). They seek here to vindicate those established rights, and they are entitled to a remedy for a past violation of those rights even if they now find themselves overseas for reasons beyond their control. Indeed, the "remedy for a procedural due process violation is restoration of the status quo ante and an injunction barring deprivation of the plaintiff's rights without the requisite procedural protections." Ray v. Foltz, 370 F.3d 1079, 1085 n.8 (11th Cir. 2004) (quotation marks omitted); accord U.S. Pub. Int. Rsch. Grp. v. Atl. Salmon of Maine, LLC, 339 F.3d 23, 33 (1st Cir. 2003) ("Injunctive remedies for past harm commonly dictate future conduct so as to mitigate past harm."). Plaintiffs are thus likely to succeed on the merits of their claim.

Defendants barely resist this conclusion. See May 7 Hrg. Tr. at 31:3–11. Their sole response is to argue in passing that the Supreme Court established Plaintiffs' due-process rights only prospectively — i.e., "after the date of [its] order." PI Opp. at 18–19 (quoting J.G.G., 145 S. Ct. at 1006). They neither cite any authority for this surprising claim nor develop it beyond a single sentence, thereby effectively forfeiting it. See Al-Tamimi v. Adelson, 916 F.3d 1, 6 (D.C.

36

Cir. 2019). Even taking that argument on its terms, however, the Government's constitutional theory has already been roundly rejected. As the Supreme Court has explained, the "source" of any newly announced constitutional rule "is the Constitution itself," and thus the "underlying right necessarily pre-exists [the Court's] articulation" of it. Danforth v. Minnesota, 552 U.S. 264, 271 (2008); see also Am. Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 201 (1990) (Scalia, J., concurring in the judgment) ("Since the Constitution does not change from year to year; since it does not conform to our decisions, but our decisions are supposed to conform to it; the notion that our interpretation of the Constitution in a particular decision could take prospective form does not make sense."). If the Due Process Clause now entitles a party to certain procedures, it always has; the Supreme Court does not change its meaning by clarifying how it applies in a particular case.

To the extent that Defendants mean to suggest that, even if Plaintiffs' due-process rights were in fact violated, they are nonetheless not entitled to a remedy for actions that predate the Supreme Court's constitutional holding, they are wrong there, too. "[T]he fundamental rule of retrospective operation . . . has governed judicial decisions for near a thousand years." Harper v. Va. Dep't of Taxation, 509 U.S. 86, 94 (1993) (cleaned up). Whenever the Court announces a "new principle of law," id. at 94 (quotation marks omitted), and "applies [it] to the parties before it," that rule becomes "the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." Id. at 97. There is no equitable exception to this rule of general retroactivity for the remedial stage alone. See Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 754–55 (1995); Nat'l Fuel Gas Supply Corp. v. FERC, 59 F.3d 1281, 1288 (D.C. Cir. 1995) (noting that, after Hyde, courts may not "depart,

even at the remedial stage, from the rule of <u>Harper</u> requiring that a judicial decision be applied retroactively").

And here, that rule applies with full force: the Court's due-process holding was handed down <u>in this very case</u> — that is, it was applied not just to "the parties before it," <u>Harper</u>, 509 U.S. at 97, but to a putative class that included, at the time, individuals who currently comprise the CECOT Plaintiffs whose case is "still open on direct review." <u>Id.</u>  The Court's instruction that Alien Enemies Act "detainees must receive notice after the date of this order that they are subject to removal under the Act," <u>J.G.G.</u>, 145 S. Ct. at 1006, clarified only that, whatever prior notice they had been given, new and constitutionally adequate notice was required.  It in no way indicated that prior summary removals were lawful, nor did it explicitly "reserve the question whether its holding should be applied to the parties before it." <u>Harper</u>, 509 U.S. at 97 (quotation marks omitted).

Besides, even if the Court <u>had</u> reserved that question, retroactivity rears its head at most when the Court announces a "new principle of law," which occurs when it "overrul[es] clear past precedent on which litigants may have relied" or "decid[es] an issue of first impression whose resolution was not clearly foreshadowed." <u>Chevron Oil Co. v. Huson</u>, 404 U.S. 97, 106 (1971). Neither circumstance applies here.  Just the opposite: the Supreme Court grounded its holding in the "well established" principle that "the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." <u>J.G.G.</u>, 145 S. Ct. at 1006 (quotation marks omitted). And it later emphasized that it has "long held" that due process in the removal context requires an "opportunity . . . to be heard." <u>A.A.R.P.</u>, 145 S. Ct. at 1367 (quotation marks omitted).  Its clarification that such opportunity must take the form of a habeas petition also accorded with over a century of caselaw under the Alien Enemies Act, <u>see, e.g.</u>, *Ex parte* Gilroy, 257 F. 110,

38

110 (S.D.N.Y. 1919); U.S. ex rel. Zdunic v. Uhl, 137 F.2d 858, 859 (2d Cir. 1943); Ludecke v.

Watkins, 335 U.S. 160, 163 (1948) — caselaw that the Government itself previously invoked to

argue that habeas was the exclusive remedy available to Plaintiffs.  See Mot. to Vacate at 8–11.

In light of the above, it is unsurprising that Defendants have identified no case — not even a

stray comment in a case — that would support their position that the summary deportation of the

CECOT Class on March 15, in the midst of ongoing court proceedings concerning the legality of

the Government's actions, was lawful.  All the available precedent says the opposite.  To the

extent, moreover, that Chevron Oil's equitable factors for denying retrospective relief have any

"continuing validity" after Harper and Hyde, this case does not present "the sort of grave

disruption or inequity . . . that would bring that doctrine into play."  Ryder v. United States, 515

U.S. 177, 184–85 (1995).

　　　　The simplest answer here is thus the right one: the CECOT Class's removal from the

United States, before its members had received constitutionally adequate notice of the reason for

that removal or any meaningful opportunity "to actually seek habeas relief," J.G.G., 145 S. Ct. at

1006, violated their Fifth Amendment right to "due process of law."  U.S. Const. amend. V.  That

violation entitles them to appropriately tailored equitable relief.  See Swann v. Charlotte-

Mecklenburg Bd. of Ed., 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown,

the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and

flexibility are inherent in equitable remedies.").  The Court will discuss the nature of that relief in

Section III.C, infra.

　　　　　　　　b.　　Criminal Custody Class

　　　　The second potential Class before the Court comprises noncitizens in the United States in

state or federal criminal custody — not DHS immigration detention — who have detainers

pursuant to the Proclamation.  See Class Cert. Br. at 2.  Through a next friend, T.C.I. seeks to

represent the Class.  Id. at 2–3; see Am. Compl., ¶¶ 18, 94.  He is in criminal custody in New Jersey while he awaits sentencing on federal charges for a case in the Eastern District of New York.  See PI Br. at 10–11; ECF No. 102-13 (Eylan Schulman Decl.), ¶ 2.  He claims that the Government has lodged a detainer on him and served him with a "Notice of Apprehension" indicating that he will be removed pursuant to the Proclamation, although he does not know when or where such removal will happen.  See Schulman Decl., ¶¶ 3–4; Roman Decl., Exh. 2 (Second Notice of Apprehension) at 1 (informing recipient that "he or she shall be apprehended, restrained, and removed from the United States" under Alien Enemies Act).  Pointing to a declaration offered by Defendants in mid-March, T.C.I. contends that there are several dozen Venezuelan noncitizens who, like him, are in criminal custody with an active detainer under the Proclamation.  See Am. Compl., ¶ 97; PI Br. at 10; Cerna Second Decl., ¶ 6 (stating that as of March 18, 2025, "approximately 32 [alleged members of Tren de Aragua] are in criminal custody with active detainers against them").

T.C.I. seeks two forms of relief for himself and the putative Class via what the Court again construes to be alternative — and mutually exclusive — grounds.  See supra p. 15.  First, he desires a writ of habeas corpus that would enjoin their removal under the Proclamation, which he argues is unlawful.  See PI Br. at 17–37; Am. Compl., ¶ 94 & pp. 36–37.  He also alleges that when they exercise the detainers, Defendants will provide him and the Class insufficient notice and opportunity to file a habeas petition prior to their removal, thereby violating their Fifth Amendment due-process rights.  See PI Br. 14–15; PI Reply at 9–10; Am. Compl., ¶¶ 94, 142–45 & p. 36.  He therefore requests that this Court order Defendants to provide this Class sufficient notice and at least 30 days to file a habeas petition before removing them.  See PI Br. at 1–2, 14–

40

17; Am. Compl. at 36.  The Court looks separately at the habeas and due-process claims, ultimately concluding that T.C.I. and the Class are unlikely to succeed on either.

i.    Habeas

As explained below, the Court agrees with T.C.I. that, while still in criminal custody, he can challenge his impending deportation through a proper habeas petition.  So, too, can members of the putative Class if the detainers on them also reflect the Government's intention to apprehend and remove them pursuant to the Act.  This Court, however, does not presently have statutory jurisdiction over any of those habeas challenges.  The two questions are analyzed separately.

(a)    Future Challenge

As discussed above in relation to constructive custody, § 2241(c) of the federal habeas statute provides that in order to seek relief, T.C.I. and Class members must be in "custody."  28 U.S.C. § 2241(c)(1)–(4).  In this context, one is in "custody" for purposes of the Alien Enemies Act if he is subject to removal under the Act.  Cf. J.G.G., 135 S. Ct. at 1005 (claim "seek[ing] equitable relief . . . against [one's] removal under the" Act "fall[s] within the core of the writ of habeas corpus and thus must be brought in habeas" "[r]egardless of whether" the petitioner "formally request[s] release from [Act-based] confinement") (quotation marks omitted).  While one would therefore fall within the scope of the habeas statute if he were currently subject to removal, the first question raised by this Class's petition is whether its members can challenge through habeas their future removal even while confined by federal or state officials on criminal charges.  They can.

It is well established that one held in confinement can use habeas to attack a detainer lodged against him by a separate sovereign.  Challenges to future custody can be brought through

41

habeas not just when two sentences are imposed by the same jailer, see, e.g., Peyton v. Rowe, 391 U.S. 54, 67 (1968) (holding that prisoner could challenge through habeas second of two consecutive sentences while still serving first), but also when a prisoner seeks to attack future custody imposed by an authority <u>different</u> from the one currently holding him.  As the Supreme Court explained in <u>Braden</u>, for instance, "a petitioner held in one State" may "attack a detainer lodged against him by another State."  410 U.S. at 498.  There, the petitioner was serving a sentence in an Alabama prison for violating Alabama law, but Kentucky had lodged a detainer against him pursuant to a pending indictment in that state on criminal charges.  <u>Id.</u> at 486–87. From Alabama prison, Braden filed a habeas petition in the Western District of Kentucky, naming a Kentucky state court as respondent and seeking an order granting him a speedy trial on the indictment, which at the time had been pending for three years.  <u>Id.</u> at 485.  The petitioner therefore did not "challenge the present effect being given the Kentucky detainer by the Alabama authorities," but rather attacked "the validity of the Kentucky indictment which underl[ay] the detainer lodged against him by [Kentucky] officials."  <u>Id.</u> at 486–87 (cleaned up).  The Supreme Court explained why Braden was "in custody" for purposes of § 2241(c)(3) even though "the future custody under attack [would] not be imposed by the same sovereign which [held] [him] in his current confinement": the Alabama warden was "act[ing] as the agent of the Commonwealth of Kentucky in holding the petitioner pursuant to the Kentucky detainer."  <u>Id.</u> at 489 n.4 (quotation marks omitted); see <u>id.</u> at 498–99 (same).

From <u>Braden</u> and the Supreme Court's decision in our case, then, it follows that T.C.I. may avail himself of habeas corpus to challenge his future Act-based removal even as he is detained under other authorities.  The record indicates that Defendants will seek to apprehend and remove T.C.I. upon resolution of his federal criminal proceedings.  The Notice of

Apprehension he claims to have received informs him that Defendants have determined that he is removable under the Proclamation and that he "shall be . . . removed," Second Notice of Apprehension at 1, so there is no reason to doubt that they have lodged a detainer in order to effectuate such removal. Any challenge to an Act-based removal can and must be brought through habeas. J.G.G., 135 S. Ct. at 1005. Contrary to what Defendants appear to argue, see ECF No. 114 (Class Cert. Opp.) at 7 ("[Habeas] jurisdiction cannot be premised on future custody because custody is a jurisdictional prerequisite."), "habeas corpus relief is not limited to immediate release from illegal custody"; instead, "the writ is available as well to attack future confinement and obtain future releases." Preiser v. Rodriguez, 411 U.S. 475, 487 (1973).

Concluding that T.C.I. can attack his future deportation while still in criminal custody breaks no new ground. In the INA context, while courts often hold that a prisoner cannot use habeas to challenge a detainer indicating merely that he will be subject to future immigration proceedings, see, e.g., Zolicoffer v. DOJ, 315 F.3d 538, 540–41 (5th Cir. 2003); Prieto v. Gluch, 913 F.2d 1159, 1160–61, 1164 (6th Cir. 1990), the courts of appeals consistently hold that such a prisoner can challenge a detainer through habeas if immigration officials intend to take him into custody upon his release or if he has a final order of removal under the INA. See, e.g., Simmonds v. INS, 326 F.3d 351, 354–56 (2d Cir. 2003); Korac v. Warden Fairton FCI, 814 F. App'x 722, 723 (3d Cir. 2020) (citing Kolkevich v. Att'y Gen., 501 F.3d 323, 334 n.6 (3d Cir. 2007)); Ortiz v. Mayorkas, 2022 WL 595147, at *2–3 (4th Cir. Feb. 28, 2022); Rosales v. ICE, 426 F.3d 733, 735 (5th Cir. 2005); Garcia-Echaverria v. United States, 376 F.3d 507, 510–11 (6th Cir. 2004); Nakaranurack v. United States, 68 F.3d 290, 293 (9th Cir. 1995); Aguilera v. Kirkpatrick, 241 F.3d 1286, 1291 (10th Cir. 2001) (citing Galaviz-Medina v. Wooten, 27 F.3d 487, 493 (10th Cir. 1994)). The Notice of Apprehension that T.C.I. received is analogous to a

43

final order of removal insofar as it is an administratively final determination of his deportability under the Act, cf. Nasrallah v. Barr, 590 U.S. 573, 579 (2020) ("[I]n the deportation context, a final order of removal is a final order concluding that the alien is deportable or ordering deportation.") (quotation marks omitted); 8 U.S.C. § 1231(a)(1)(B)(i); 8 C.F.R. § 1241.33(a), and it therefore suffices to indicate Defendants' intention to apprehend and remove him under the Act upon the conclusion of his criminal proceedings.  Cf. Garcia-Echaverria, 376 F.3d at 511; Galaviz-Medina, 27 F.3d at 493.

(b)    Proper Respondent

Even if members of the Class can challenge their impending removals through habeas, the question remains: does this Court have statutory jurisdiction over those petitions?  That question "breaks down into two related subquestions": who is the proper respondent to the petition, and does this Court have jurisdiction over him?  Padilla, 542 U.S. at 434.  That is because a district court is "limited to granting habeas relief 'within [its] respective jurisdiction[],'" id. at 442 (quoting 28 U.S.C. § 2241(a)), which means that to issue a writ, it must "have jurisdiction over the custodian" — i.e., over the habeas respondent.  Id. (quoting Braden, 410 U.S. at 495).

"[T]here is generally only one proper respondent to a given prisoner's habeas petition," id. at 434, and it is the person "who has the immediate custody of the party detained."  Id. at 435 (quoting Wales, 114 U.S. at 574).  That precept flows from the federal habeas statute, id. at 434, which provides that the writ "shall be directed to the person having custody of the" petitioner. See 28 U.S.C. § 2243 (emphasis added); see also id. § 2242 ("Application for a writ of habeas corpus . . . shall allege . . . the name of the person who has custody over him and by virtue of what claim or authority, if known.").  Those statutory provisions, in turn, reflect the nature of the

44

Great Writ, which acts not "upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." Braden, 410 U.S. at 494–95 (citing Wales, 114 U.S. at 574).  For habeas challenges concerning "present physical confinement," therefore, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Padilla, 542 U.S. at 435.  In such cases, only the district court in the district of confinement has statutory jurisdiction. Id. at 443.

T.C.I. is of course correct that this "immediate physical custodian rule" does not fully apply "when a habeas petitioner challenges something other than his present physical confinement" — e.g., his future custody.  Id. at 438.  Braden established as much.  In that case, the Court held that the habeas petition could be brought against a Kentucky state court in Kentucky because the Alabama prisoner "was in the custody of Kentucky officials" "by virtue of the detainer," and the Kentucky state court was where that detainer "was lodged." Padilla, 542 U.S. at 438 (quotation marks omitted); see Braden, 410 U.S. at 497–500.

Despite Braden's limitation on the immediate-custodian rule, Plaintiffs take a wrong turn in claiming that Defendants — the President, the Secretaries of Defense, Justice, Homeland Security, and State, and the Acting Director of ICE — are proper respondents.  The Court reaches that conclusion for a reason other than that urged by Defendants.  They agree that, given their presence in the District, they would fall within this Court's habeas jurisdiction. Cf. May 7 Hrg. Tr. at 14:18–22.  But none is the future custodian, they object, because it is "speculative" that the Class "will be confined in CECOT under the constructive custody of one of" them. See PI Opp. at 13.  Such objection misunderstands T.C.I.'s argument, which does not turn on a prediction that the Class will be deported to CECOT or another facility where the United States might have

constructive custody.  See PI Br. at 37–39 (claiming that, when removed, he and Class members

will likely be sent to CECOT or to Venezuela); Am. Compl., ¶¶ 94, 100, 105, 107.  Rather, he

contends that Defendants are proper respondents because they "are responsible for implementing

the [Alien Enemies Act] process" that will culminate in his and others' removal from the United

States.  See PI Br. at 11 (emphasis added).

      The Court nevertheless cannot find Defendants to be proper respondents.  These officials'

ostensible roles in authorizing and supervising the program of Act-based removals does not

render any of them a custodian for the Class's habeas challenges.  Such a petition must be

brought against the official who has lodged the detainer and/or who will be the immediate

physical custodian of Plaintiffs upon the detainers' execution, not against those who, like

Defendants, simply oversee the federal removal policy.

      T.C.I. errs principally in thinking that the limited exception to the immediate-custodian

rule established by Braden frees him to bring his habeas petition against any official to whom his

future "custody" might be traced, such as the President who issued the Proclamation or a Cabinet

official overseeing its implementation.  Even if the present physical custodian — i.e., Braden's

Alabama jailer or T.C.I.'s warden in New Jersey — is not the respondent in a challenge to future

custody, that does not mean that courts can jettison the longstanding requirement that the proper

respondent be the "the person who [will have] custody over" the petitioner.  See 28 U.S.C.

§ 2242; id. § 2243 (same).  That is, in bringing a challenge to future custody, the petitioner must

still name as respondent "the person" who will be the immediate custodian or the closest analog.

This is particularly true when the future custody entails physical confinement and is thus "core"

habeas — as is the case here.  J.G.G., 145 S. Ct. at 1005 (challenges to "confinement and

removal under the [Act] . . . fall within the 'core' of the writ of habeas corpus") (emphasis

added); cf. Padilla, 542 U.S. at 439 (rejecting that habeas petitioner can "name someone other than his immediate physical custodian as respondent simply because the challenged physical custody . . . stems from a military order by the President"). By those terms, the proper respondent for T.C.I.'s future challenge is the person who would take physical custody of him upon conclusion of his criminal proceedings or the official or office that issued his detainer. While we may not now know who that will be, we do know that it is not any of Defendants.

These conclusions follow from the Supreme Court's decision in Padilla and the Seventh Circuit's in al-Marri v. Rumsfeld, 360 F.3d 707 (7th Cir. 2004), upon whose reasoning Padilla drew heavily. In both cases, the habeas petitioners started out in federal criminal custody. Padilla, 542 U.S. at 431; al-Marri, 360 F.3d at 708. While their criminal proceedings were pending (in New York for Padilla and Illinois for al-Marri), the President ordered the Secretary of Defense to designate them as enemy combatants, and they were subsequently transferred to a naval brig in South Carolina. Padilla, 542 U.S. at 430–32; al-Marri, 360 F.3d at 708. Each then filed a habeas petition in New York and Illinois, respectively, naming as respondents the President, the Secretary of Defense, and the brig commander. Padilla, 542 U.S. at 432; al-Marri, 360 F.3d at 707, 709. Both the Supreme Court and Seventh Circuit held that only the latter was the proper habeas respondent because she was the one "exercis[ing] day-to-day control over [petitioners'] physical custody." Padilla, 542 U.S. at 439; see id. at 434–42; al-Marri, 360 F.3d at 709.

In both cases, the courts addressed the contention that because "physical detention" is no longer "a prerequisite to habeas relief, the immediate custodian rule" is also "no longer bind[ing]," "even in challenges to physical custody." Id. at 437. In response, Padilla explained:

> That argument, as the Seventh Circuit aptly concluded [in al-Marri], is a "non sequitur." That our understanding of custody has

> broadened to include restraints short of physical confinement does
> nothing to undermine the rationale or statutory foundation of [the]
> immediate custodian rule where physical custody <u>is</u> at issue. . . .

<u>Id.</u> (emphasis added) (quoting <u>al-Marri</u>, 360 F.3d at 711) (citation omitted).  As the Seventh

Circuit elaborated, the fact that "<u>Braden</u> severed the link between physical detention and

'custody'" does not mean that "anyone with legal authority to influence the physical custodian's

actions may be the respondent, and thus the litigation may be conducted against a Cabinet officer

in any district."  <u>al-Marri</u>, 360 F.3d at 711.

The <u>Padilla</u> Court moreover clarified the sole scenario in which a habeas respondent can

name "the party exercising legal control" over him, rather than his immediate custodian.  <u>See</u>

542 U.S. at 439.  That possibility "<u>only</u> comes into play when there is no immediate physical

custodian with respect to the challenged 'custody,'" as was the case in <u>Braden</u>.  <u>Id.</u>  <u>Padilla</u>

therefore emphasized that despite <u>Braden</u> and the "expanding definition of 'custody' under the

habeas statute," when it is possible to do so, the petitioner must name the person who is the

immediate custodian "exercis[ing] day-to-day control over" him.  <u>Id.</u>  Even "when custody takes

a form other than physical detention," the immediate-custodian rule still exerts gravitational pull:

in such a case, "it is necessary to identify" the closest individual to the immediate custodian,

which will be the person "who <u>asserts</u> the legal right to control that is being contested in the

litigation," <u>al-Marri</u>, 360 F.3d at 711 (emphasis added), or, stated slightly differently, the person

who is "responsible for maintaining — not authorizing — the [challenged] custody."  <u>Padilla</u>,

542 U.S. at 440 n.13 (citing <u>id.</u>); <u>al-Marri</u>, 360 F.3d at 708 (explaining that while "President

authorized al-Marri's custody by designating him as an enemy combatant," "there is a difference

between authorizing and exercising custody," and habeas custodian is one who does the latter).

The fact that <u>Padilla</u> and <u>al-Marri</u> concerned challenges to <u>present</u> custody does not mean

that these propositions apply with any less force in challenges to <u>future</u> custody.  In other words,

48

just because a future challenge need not be brought against the petitioner's current physical custodian, that does not also mean that the rules defining the proper habeas respondent no longer constrain who the <u>future</u> custodian is.  To argue otherwise would be another non sequitur.  After all, in a scenario like this or like <u>Braden</u> in which a prisoner can challenge some future custody, there are two "ongoing custodies imply[ing] [two] custodians."  <u>al-Marri</u>, 360 F.3d at 711.  There is no reason to conclude that the proper-respondent rules apply to one custodian but not the other. Indeed, "the fact that" the immediate-custodian rule is "subject to exceptions does not mean that, in the exceptional case," courts can disregard "the considerations that in the ordinary case are served by the immediate-custodian rule."  <u>Padilla</u>, 542 U.S. at 453 (Kennedy, J., concurring). Instead, even "[w]hen an exception applies," courts must still give effect to those considerations. <u>Id.</u>  In short, then, the habeas petitioner must name as respondent the person who is or will be the immediate-most custodian, which is the person who does or will have physical custody, or, if none can be identified, the one who does or will exercise — rather than authorize or supervise — the "custody" being attacked.

Applied here, those principles dictate that none of Defendants is a proper habeas respondent.  T.C.I. challenges his future "confinement and removal under the [Act]," <u>J.G.G.</u>, 145 S. Ct. at 1005, based on the detainer lodged against him.  When Defendants take him into custody upon resolution of his criminal proceedings in order to initiate his removal under the Act, there will almost certainly be an official (or office) exercising day-to-day physical control over him.  If that person (or entity) can be identified, T.C.I. must name him (or it).  If such physical custodian cannot be identified, T.C.I. would need to name the person asserting the right to physically apprehend and remove him under the Proclamation.  <u>See</u> <u>al-Marri</u>, 360 F.3d at 711. That would presumably be the person (or office) who lodged the Proclamation-based detainer —

perhaps an ICE agent or field office in New York or New Jersey. See May 7 Hrg. Tr. at 24:25–

25:2 (Government counsel unable to identify who issued detainers in question). If T.C.I. can

identify no such person, then — and only then — might a more remote supervisory official be

the proper respondent. T.C.I. has not suggested that an immediate custodian cannot be located,

so the Court must conclude that the proper respondent is neither the President who issued the

Proclamation nor the Cabinet secretaries and agency head who supervise the removal program.

Cf. al-Marri, 360 F.3d at 708 (explaining that "for an inmate of a brig, jail, or prison the

'custodian' is the person in charge of that institution," and "[i]n the federal system, this means

the warden," not "the Director of the Bureau of Prisons" or "the Attorney General"); Guerra v.

Meese, 786 F.2d 414, 416 (D.C. Cir. 1986) (same).

Finally, it bears mention that Padilla noted — but did not resolve — a question that the

Supreme Court had "left open" in Ahrens v. Clark, 335 U.S. 188 (1948), and that had

subsequently "divided" the courts of appeals: "whether the Attorney General is a proper

respondent to a habeas petition filed by an alien detained pending deportation." 542 U.S. at 435

n.8 (collecting cases). The answer to whether she could be named in a habeas challenge to a

final order of removal under the INA might, of course, illuminate the present inquiry. There are

several reasons why the cases addressing that question bolster, rather than dislodge, this Court's

conclusions. For one, as the Ninth Circuit last year observed, there was not actually much of a

split: "[T]he only case holding that the Attorney General was a proper respondent" — one of the

Ninth Circuit's own — "was subsequently withdrawn" and resolved on other grounds. Doe v.

Garland, 109 F.4th 1188, 1195 (9th Cir. 2024) (citing Armentero v. INS, 340 F.3d 1058 (9th Cir.

2003), reh'g granted, opinion withdrawn, 382 F.3d 1153 (9th Cir. 2004), opinion after grant of

reh'g, 412 F.3d 1088 (9th Cir. 2005)). All other circuits held that the Attorney General was not a

proper respondent even when the challenge was to a final order of removal and not physical confinement.  Armentero, 412 F.3d at 1098 n.17 (Berzon, J., dissenting).

In several places, moreover, Padilla expressly undercuts weight-bearing arguments made in favor of permitting the Attorney General to be named as a habeas respondent.  For instance, the Ninth Circuit endorsed (and other circuits considered) that she could sometimes be named because of her often "unique decisionmaking authority over immigration matters, including detention and parole of aliens."  Armentero, 340 F.3d at 1071; see, e.g., Henderson v. INS, 157 F.3d 106, 125–27 (2d Cir. 1998); Vasquez v. Reno, 233 F.3d 688, 696 (1st Cir. 2000).  The Padilla Court, however, directly repudiated this reasoning; while it acknowledged the Secretary of Defense's "unique and pervasive personal involvement in authorizing Padilla's detention," it flatly rejected that such involvement "justifie[d] naming him as the respondent."  542 U.S. at 440 n.13 (quotation marks omitted); see id. ("If personal involvement were the standard, 'then the prosecutor, the trial judge, or the governor would be named as respondents' in criminal habeas cases.") (quoting al-Marri, 360 F.3d at 711).  The Court, moreover, reiterated that the immediate-custodian rule does not cease to apply "simply because the challenged physical custody does not arise out of a criminal conviction."  Id. at 439.  For habeas challenges involving physical custody — be they criminal, military, or immigration detention — the immediate-custodian rule governs.

In sum, this Court lacks statutory jurisdiction over the putative Criminal Custody Class's habeas petitions because no Defendant is a proper respondent.  The Class's habeas claims are therefore unlikely to succeed.

ii.       Due Process

The putative Criminal Custody Class is also unlikely to succeed on the merits of its due-process claim.  Although in theory its members could bring such a standalone claim for the same

51

reasons the CECOT Class can, see supra Section III.A.1.a.ii.(a), the Court concludes that neither T.C.I. nor the putative Class members have Article III standing to pursue it.

T.C.I. contends that when Defendants act to remove him and Class members pursuant to the Proclamation, their Fifth Amendment due-process rights will be violated twice over. He alleges first that they will not receive "adequate notice and meaningful procedural protections" and will therefore be denied a chance to challenge their removal through habeas before being deported. See Am. Compl., ¶ 144; J.G.G., 144 S. Ct. at 1006. Their due-process rights will additionally be violated, T.C.I. alleges, because they will be denied the opportunity to voluntarily depart the country within a reasonable time. See Am. Compl., ¶ 145; see 50 U.S.C. § 21 (when Act's authorities are available to him, President "is authorized . . . to provide for removal of those [alien enemies] who . . . refuse or neglect to depart" United States); id. § 22 (in certain circumstances, removable alien enemy "shall be allowed" "reasonable time" to "settle [his] affairs" prior to removal).

For himself and the putative Class, T.C.I. seeks preliminary relief only on the first of these due-process claims. He asks this Court to order Defendants "to provide immediate, adequate notice of designation to each [Class] member and [his] counsel, and a reasonable opportunity of no less than 30 days to challenge [his] designation, detention, and removal under the [Act], consistent with due process." PI Br. at 1–2; see also Am. Compl. at 36. For slightly different reasons, however, neither T.C.I. nor the putative Class members have established that they have standing to sue for that relief.

Plaintiffs bear the burden of establishing Article III standing, Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014), and because "standing is not dispensed in gross," they "must demonstrate standing for each claim that they press and for each form of relief that they

seek." <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 431 (2021).  To do so, they must establish

that they suffer (a) an injury-in-fact that is both (b) "fairly traceable to the challenged action of

the defendant" and (c) "likely, as opposed to merely speculative," to be "redressed by a favorable

decision."  <u>Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.</u>, 528 U.S. 167, 180–81

(2000).

      Plaintiffs fall short of demonstrating an injury-in-fact.  Such an injury must be both (1)

"concrete and particularized" and (2) "actual or imminent, not conjectural or hypothetical."  <u>Id.</u>

at 180.  Plaintiffs stumble on the second of these requirements.  Because they seek injunctive

relief, they "must show either that [they are] 'suffering an ongoing injury' (actual) or that [they]

'face[] an immediate threat of injury' (imminent)."  <u>Animal Legal Def. Fund, Inc. v. Vilsack</u>, 111

F.4th 1219, 1227 (D.C. Cir. 2024) (quoting <u>Dearth v. Holder</u>, 641 F.3d 499, 501 (D.C. Cir.

2011)).  "To show an imminent injury," Plaintiffs "must show 'a substantial probability of injury'

or 'a substantial risk that the harm will occur.'"  <u>Id.</u> (quoting <u>Nat'l Ass'n of Broadcasters v. FCC</u>,

789 F.3d 165, 181 (D.C. Cir. 2015)); <u>see</u> <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 409–10,

414 n.5 (2013).  This they have not done.

      Start with T.C.I.  He contends that the notice and procedural protections that Defendants

will likely provide will violate his due-process rights because — and only because — they will

not allow him to challenge his removal through a habeas petition.  <u>See</u> Am. Compl., ¶ 144; <u>see</u>

<u>also id.</u>, ¶ 87.  In other words, he does not seek adequate notice and a 30-day period as ends unto

themselves; he seeks them — and contends that the Due Process Clause requires that he receive

them — so that he can bring a habeas petition in federal court contesting his removability under

the Act.  <u>Id.</u>, ¶ 18 (T.C.I. wants to "be able to challenge his designation as an 'alien enemy' and

to defend himself against the false allegations of his membership in a gang").  In making this

53

claim, he invokes the Supreme Court's decision in this case, see PI Br. 1–2, 14–16; Am. Compl., ¶ 95, and his legal theory indeed aligns with that decision.  See J.G.G., 145 S. Ct. at 1006.

Even by his terms, however, Defendants' inadequate removal procedures violate his due-process rights only insofar as they deprive him of an opportunity to challenge his removability through habeas corpus; he suffers no due-process injury if he is able "to actually seek habeas relief . . . before [his] removal."  Id.  Yet he has shown himself able to do just that by actually bringing a habeas petition in this very case.  Cf. J.A.V., 2025 WL 1257450, at *12 (making this point in separate case).  To be sure, as explained, such petition must be filed against different respondents.  See supra Section III.A.b.i.(b).  But T.C.I. nowhere argues that he cannot do so before being removed by Defendants.  So even were it the case that the notice and procedures the Government will provide are constitutionally inadequate, T.C.I. falls short of showing that he is being injured by such inadequacy or that it is "substantially likely" that he will be moving forward.  Animal Legal Def. Fund, 111 F.4th at 1226.

It is also too conjectural or hypothetical that members of the putative Class are suffering or will suffer their asserted due-process injury.  T.C.I. contends that Defendants provide a noncitizen detained under the Proclamation 12 hours to express his intent to file a habeas petition and 24 hours to file such a petition in a federal court.  See Am. Compl., ¶ 87; PI Br. 4, 15.  Defendants answer that noncitizens have "at least" those amounts of time and that the "notice is provided in a language the aliens can understand, generally through an interpreter."  PI Opp. at 15 (emphasis omitted).  Although the Supreme Court has since weighed in on what the Due Process Clause requires in these circumstances, A.A.R.P., 145 S. Ct. at 1367–68, for purposes of standing, the Court must "assume arguendo" that T.C.I. is right that Defendants' alleged procedures are constitutionally inadequate.  Tanner-Brown v. Haaland, 105 F.4th 437, 445 (D.C.

Cir. 2024); see Warth v. Seldin, 422 U.S. 490, 498, 500 (1975) ("Standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal" because "the question of standing is whether the litigant is entitled to have the court decide the merits."); cf. Schnitzler v. United States, 761 F.3d 33, 41 (D.C. Cir. 2014) (for standing purposes on equal-protection claim, plaintiff needed to show he was part of group that was denied equal treatment, but court must assume that group was suspect class).

The problem for members of the putative Class, however, is that it is far from clear that they will likely receive the constitutionally inadequate notice and opportunity that they describe. The Amended Complaint cursorily asserts that Class members will be subject to the "same government practices" as noncitizens in Defendants' custody, see Am. Compl., ¶ 100, but it provides nothing to support that assertion.  A litany of court decisions, moreover, has now held that Defendants' current pre-removal procedures are constitutionally inadequate, so it is possible that the Government will take a different tack.   Even if that were not the case, however, T.C.I. does not establish that, given the putative Class members' situation, they will have less than the 30 days' time to file a habeas petition that he says would be constitutionally sufficient.  Like him, putative Class members are all currently in criminal custody with detainers, and he provides no reason to believe that they cannot also — like their lead Plaintiff — file a habeas petition in federal court (against the proper respondent) before being transferred to Defendants' custody.  It may be the case that they are now practically stymied from doing so, such that their only chance to challenge their removal will occur after such transfer — in which case they very well could be subject to the constitutionally inadequate procedures they identify.  But Plaintiff makes no argument to that effect.  By virtue of threadbare allegations, then, he has fallen well short of

establishing that putative Class members' claimed due-process injury is ongoing or is substantially likely to occur.

### 2. *Irreparable Harm*

Convinced that only the CECOT Plaintiffs are likely to succeed on the merits of their due-process claim, the Court limits its analysis of the other factors governing preliminary relief to that group. Irreparable harm is undoubtedly "a high standard," Chaplaincy of Full Gospel Churches, 454 F.3d at 297, but the Court need not linger on this factor for long. It has already determined that deportees in Salvadoran prisons "readily meet" the criteria for showing irreparable harm given the "poor living conditions" there, as well as "the risk of torture, beatings, and even death." J.G.G., 2025 WL 890401, at *16. The Court sees no reason to disturb that conclusion, which the Supreme Court has since echoed. See A.A.R.P., 145 S. Ct. at 1367–68 (ordering preliminary relief after noting that "detainees fac[e] an imminent threat of severe, irreparable harm" if they are deported). Indeed, absent adequate due process and the associated opportunity to challenge their removal, the CECOT Plaintiffs are in danger of being transported to any number of other locations where they would also risk severe injury. See Redacted Kozak Decl., ¶ 9 (citing President Bukele's apparent proposal to send Plaintiffs to Venezuela).

### 3. *Balance of Equities & Public Interest*

The Court similarly will not dwell on "the balance of equities" and "the public interest," which it considers together where the Government is a party. See Sherley, 644 F.3d at 392 (quoting Winter, 555 U.S. at 20). The CECOT Plaintiffs have shown that they are likely to succeed on the merits of their claim that their constitutional rights have been violated and that they face irreparable harm if they are forced to stay in El Salvador. The Government, on the other hand, fears that its ability to conduct foreign affairs may be "compromis[ed]" by an

injunction.  See PI Opp. at 44.  The Supreme Court has made clear that such concerns, while

surely weighty, do not defeat the need for the Government to fix its legal wrongs.  See Abrego

Garcia, 145 S. Ct. at 1018.  Because of the "substantial public interest in having governmental

agencies abide by the federal laws that govern their existence and operations," League of Women

Voters v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016) (quotation marks omitted), the Court again

concludes that the balance of equities and public interest fall in the CECOT Plaintiffs' favor.  See

J.G.G., 2025 WL 890401, at *17.

B.    Class Certification

Having determined which claims, if any, Plaintiffs can bring and whether they have

shown that they are entitled to preliminary-injunctive relief, the remaining question is whether

they can bring those claims on behalf of a class.  The Court concludes that the CECOT Class

may be certified.  As for the Criminal Custody Class, even if some members had standing to

pursue a due-process claim, the Class could not be certified with T.C.I. as its sole named

Plaintiff.

1.    *CECOT Class*

As indicated, the named CECOT Plaintiffs seek to certify and represent a class consisting

of "[a]ll noncitizens in custody at [CECOT] in El Salvador who were, are, or will be subject to"

the Proclamation "and/or its implementation."  Class Cert. Mot. at 2.  Although their Class

Certification Motion is mostly oriented toward their request for class-wide habeas relief, they

also seek equitable relief on behalf of their proposed Class for "unlawful removal" because of

the "denial of meaningful procedural protections."  Class Cert. Br. at 10; see id. at 3–4; Am.

Compl. at 36–37.  The Court will thus analyze their Motion in light of the CECOT Plaintiffs'

due-process claims only, given its holding that habeas is unavailable here.  The "overlap"

57

between the certification analysis and the merits of Plaintiffs' claims "cannot be helped." Wal-Mart, 564 U.S. at 351.

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Califano v. Yamasaki, 442 U.S. 682, 700–01 (1979). Litigants seeking class-wide injunctive relief must therefore clear two hurdles to merit certification: Federal Rules of Civil Procedure 23(a) and 23(b)(2). Rule 23(a), which sets forth the baseline requirements for any class action, requires a party seeking certification to demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements — "numerosity," "commonality," "typicality," and "adequacy" — "effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" Gen. Telephone Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982) (quoting Gen. Telephone Co. of Northwest v. EEOC, 446 U.S. 318, 330 (1980)).

Once Rule 23(a)'s baseline is met, Rule 23(b)(2) then permits certification whenever "the party opposing the class" (here, the Government) "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Put otherwise, it codifies the "presumption that the interests of the class members are cohesive." Lightfoot v. District of Columbia, 273 F.R.D. 314, 329 (D.D.C. 2011) (quotation marks omitted). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of

them." Wal-Mart, 564 U.S. at 360 (quotation marks omitted). It is thus well suited "to enable class resolution of civil-rights claims alleging classwide deprivations of protected rights." J.D. v. Azar, 925 F.3d 1291, 1314 (D.C. Cir. 2019).

In deciding whether class certification is appropriate, a district court must ordinarily undertake a "rigorous analysis" to see that the requirements of the Rule have been satisfied. Falcon, 457 U.S. at 161. "Rule 23 does not set forth a mere pleading standard." Wal-Mart, 564 U.S. at 350. Rather, the party seeking class certification bears the burden of "affirmatively demonstrat[ing] his compliance with the Rule — that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id.

The CECOT Plaintiffs easily surmount both of Rule 23's hurdles. First, they assert that at least 137 individuals were removed to CECOT on March 15, see Class Cert. Br. at 8; Roman Decl., Exh. 13 (news report quoting "senior administration official"), all of whom lack contact with the outside world and face challenges in procuring legal representation. See Class Cert. Br. at 9. In such circumstances, joinder would be impracticable. See Taylor v. D.C. Water & Sewer Auth., 241 F.R.D. 33, 37 (D.D.C. 2007) ("[C]ourts in this jurisdiction have observed that a class of at least forty members is sufficiently large to meet [numerosity] requirement.").

Class members are also united by common "questions of law or fact." Fed. R. Civ. P. 23(a)(2). They have "suffered the same injury," Falcon, 457 U.S. at 157 — removal to CECOT without adequate notice and an opportunity to file a habeas petition— and their claims "depend upon a common contention," Wal-Mart, 564 U.S. at 350 — namely, that those actions violated their procedural-due-process rights. See Class Cert. Br. at 10. The Government disputes commonality, arguing that each Class member may differ in whether he contests Tren de Aragua membership, "the evidence available" to support his designation, the "process [he] has already

been given," and "whether [he] is removable under a different provision of law."  Class Cert.

Opp. at 15.  Most of those purported differences, however, are irrelevant to whether each Class

member was removed from the United States before he could "actually seek habeas relief."

J.G.G., 145 S. Ct. at 1006.  As to that question, the CECOT Class is uniform: they all assert that

they were summarily removed in a manner that vitiated any practical opportunity to file a habeas

petition.  See Class Cert. Br. at 10.  The determination of the "truth or falsity" of that "common

contention" will "resolve an issue that is central to the validity" of each Class member's legal

case "in one stroke."  Wal-Mart, 564 U.S. at 350.  To provide common relief, moreover, there is

no need to "delve into the specific facts of each alien's case," Class Cert. Opp. at 15, because the

Class members are similarly situated with regard to the due-process violation providing the

injury at the heart of each claim.  And "if there is a single common question, factual variations

among the class members will not defeat the commonality requirement."  Damus v. Nielsen, 313

F. Supp. 3d 317, 332 (D.D.C. 2018) (quotation marks omitted).

Typicality "often overlap[s]" with commonality.  Id. at 331.  That is true here, too.  Each

named Plaintiff alleges that he was removed from the United States to CECOT, see Am. Compl.,

¶¶ 12–17, and the Complaint asserts that all members of the putative CECOT Class (named

Plaintiffs included) received similarly unconstitutional notice and no practical opportunity to file

a habeas petition prior to removal.  See id., ¶¶ 69–70, 99–100.  The named Plaintiffs thus

"suffered a similar injury from the same course of conduct."  Bynum v. District of Columbia, 214

F.R.D. 27, 34 (D.D.C. 2003); accord Wal-Mart, 564 U.S. at 348–49.  Defendants respond that the

proposed Class representatives may not have "the same remedies" as other Class members, as

"[s]ome detainees at CECOT may have final orders of removal under the INA and thus would

not have the right to return to the United States."  Class Cert. Opp. at 17.  To the extent that is

true, the Court agrees that the CECOT Class must be limited to those removed <u>solely</u> under the Proclamation, and, as it will shortly discuss, it will adjust the Class definition accordingly. But even so, that argument presumes that facilitating a "return" to the United States is the only appropriate equitable remedy for the asserted due-process violation. As the Court will discuss, <u>see</u> *infra* Section III.C, that is not necessarily so.

Finally, the Government does not contest — and the Court agrees — that the named Plaintiffs can "adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). They have no "antagonistic or conflicting interests with the unnamed members of the class," and they "appear able to vigorously prosecute the interests of the class through qualified counsel." <u>Twelve John Does v. District of Columbia</u>, 117 F.3d 571, 575 (D.C. Cir. 1997) (quotation marks omitted). Their current counsel, moreover, are well qualified to vigorously litigate this case on behalf of the Class, as they have done heretofore. <u>See</u> ECF No. 103-2 (Daniel A. Galindo Decl.).

For reasons that track those above, the CECOT Class also meets Rule 23(b)(2)'s standard. Defendants have acted "on grounds that apply generally to the class" by summarily removing them to CECOT under a single statutory authority, and injunctive relief — *e.g.*, mandating an opportunity to challenge that authority — "is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); <u>see</u> <u>Azar</u>, 925 F.3d at 1314–15. "[A] single injunction" would thus "provide relief to each member of the class." <u>Wal-Mart</u>, 564 U.S. at 360. The Government responds by rehashing its assertion that, because due process is "flexible," Class members seeking relief for a violation of their due-process rights would each "be entitled to a different injunction or declaratory judgment." Class Cert. Opp. at 18. As the Court has already explained, however, the CECOT Class complains of the same injury — denial of the right to seek habeas

relief — which would be redressable by the same injunction mandating that they receive such opportunity.  That is the heartland of Rule 23(b)(2).

Defendants separately protest that, even if the Rule 23(a) and (b)(2) factors are met, the CECOT Class falls short because it is not "definite" or "ascertainable."  Class Cert. Opp. at 19 (quoting Azar, 925 F.3d at 1319–20).  Such requirement is often phrased as the command that class members "be identified or identifiable early in the litigation."  In re White, 64 F.4th 302, 313 (D.C. Cir. 2023).  The Court is not persuaded, however, that it poses an issue here.  The Government's argument that the inclusion of "future claimants" renders a class non-ascertainable is at odds with existing law on Rule 23(b)(2) actions, which often include future members.  See O.A. v. Trump, 404 F. Supp. 3d 109, 160 (D.D.C. 2019) (collecting cases).  Besides, as will be next explained, the Court will exclude such members from the Class definition for separate reasons.  Nor is the Court convinced by the argument that ascertainability "would require obtaining custodial records from El Salvador."  Class Cert. Opp. at 21.  Under the Court's Class definition, membership does not turn on whether Class members remain at CECOT; rather, the Class is simply whoever there was removed from U.S. custody — a group Defendants concede is ascertainable.  Id.  There is thus no barrier to certifying the CECOT Class.

As the Court has just alluded to, however, Plaintiffs' proffered class definition, viewed in light of their due-process claim, suffers from three deficiencies.  First, it does not isolate those removed from the United States solely because of the Proclamation — i.e., those without final orders of removal under the INA.  This litigation does not concern those who were removed under other immigration authorities, and the named Plaintiffs would not be appropriate representatives for such a class.  Second, the proposed definition encompasses any noncitizen who "will be" subject to the Proclamation and held in custody at CECOT.  See Class Cert. Mot.

at 2.  But the Court has no way of knowing if any future prisoners will receive constitutionally

adequate notice and an opportunity to file for habeas relief prior to their removal to CECOT,

which could raise serious commonality concerns.  Finally, Plaintiffs define the class as those "in

custody" at CECOT.  Id.  If El Salvador, however, were to transfer any class members to a

separate facility, see Class Cert. Opp. at 21, they would be arbitrarily excluded from that class —

even though their underlying injury meriting injunctive relief would remain unchanged.

In light of the above, the Court will "exercise its broad discretion to redefine and reshape

the proposed class to the point that it qualifies for certification."  Wagner v. Taylor, 836 F.2d 578,

589 (D.C. Cir. 1987).  It defines the CECOT Class as follows:

> All noncitizens removed from U.S. custody and transferred to the
> Terrorism Confinement Center (CECOT) in El Salvador on March
> 15 and 16, 2025, pursuant solely to the Presidential Proclamation
> entitled, "Invocation of the Alien Enemies Act Regarding the
> Invasion of The United States by Tren De Aragua."

This Class essentially comprises the vast majority of individuals who are similarly situated to the

named CECOT Plaintiffs at the moment and who therefore meet the strictures of Rule 23.

Although Plaintiffs allege that "at least one flight" has transported alleged members of Tren de

Aragua to CECOT since March 15, see Am. Compl., ¶ 75, they provide no details about the

process those individuals received or whether they were removed solely pursuant to the

Proclamation.  To the extent such individuals believe they have meritorious due-process claims,

they may seek separate relief or Plaintiffs may move to amend the Class definition.

### 2.    *Criminal Custody Class*

The Court may dispense more swiftly with whether the Criminal Custody Class can be

certified.  It cannot.  Because their due-process claim is the sole claim that this Court could hear,

see *supra* Section III.A.1.b.i.(b), only it may undergird the Class.  Yet neither named Plaintiff

T.C.I. nor any putative Class member has standing to seek injunctive relief on that claim.  See *supra* Section II.A.1.b.ii.  T.C.I.'s lack of standing alone defeats class certification.

"A court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if" — as here — "no named plaintiff has standing."  Frank v. Gaos, 586 U.S. 485, 492 (2019); see also Cnty. of Riverside v. McLaughlin, 500 U.S. 44, 51–52 (1991) (noting inapplicable exception when plaintiff has standing at outset but her claim is subsequently mooted).  That is so because class certification "comes after [a] suit is filed, so if the named plaintiff[] lacked standing when [he] filed the suit," there is properly speaking "no case" to speak of "when class certification [is] sought."  Walters v. Edgar, 163 F.3d 430, 432–33 (7th Cir. 1998).  Even if the Class were later able to establish that its members are suffering or will suffer a due-process injury, T.C.I. would probably still be fatally atypical.  As the Supreme Court "has repeatedly held, a class representative must . . . suffer the same injury as the class members.'"  E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) (emphasis added) (quotation marks omitted); Wal-Mart, 564 U.S. at 348–49 (same).  Unlike Class members, T.C.I. has actually filed a habeas petition, making it doubtful that he could suffer the Class's claimed due-process injury.  And if a named plaintiff "could have suffered no injury as a result of the alleged" wrong, he is "simply not eligible to represent a class of persons who did allegedly suffer injury."  Rodriguez, 431 U.S. at 403–04.  Because the named Plaintiff's lack of standing prevents certification, the Court need not address whether the putative Class could satisfy the remaining Rule 23 requirements.

C.    Remedy

While "the United States has been emphatically termed a government of laws, and not of men," Chief Justice Marshall warned, "[i]t will certainly cease to deserve this high appellation, if

the laws furnish no remedy for the violation of a vested legal right." Marbury v. Madison, 5 U.S. (1 Cranch) 137, 163 (1803); accord Bell, 327 U.S. at 684. Here, the Government has violated the CECOT Class's vested right to due process, an infringement that risks inflicting irreparable harm for which the public interest requires a remedy. The question — simply asked but not so simply answered — thus becomes what relief they must obtain for that violation.

Numerous courts have recognized "the duty of the court to supply corrective process where due process of law ha[s] been denied." Brown v. Mississippi, 297 U.S. 278, 287 (1936) (citation omitted). As the Ninth Circuit has explained, "Broadly speaking, due process violations are remedied by providing the aggrieved party the process he or she was deprived (or an equivalent)." Lara-Torres v. Ashcroft, 383 F.3d 968, 975 (9th Cir. 2004); accord Ray, 370 F.3d at 1085 n.8; Ahmed v. Gonzales, 398 F.3d 722, 728 (6th Cir. 2005) (holding that, in case where plaintiffs did not receive fair hearing before immigration judge, "[t]he proper remedy for this due process violation is to give the [plaintiffs] an opportunity to have their case heard fairly" and remanding "with instructions that the [plaintiffs] be provided with a new hearing before a different immigration judge"). Indeed, when other courts in this district have found violations of plaintiffs' procedural-due-process rights, they have ordered the Government to provide the process that was due. See, e.g., Mills v. Bd. of Ed. of D.C., 348 F. Supp. 866, 880 (D.D.C. 1972); Minney v. U.S. Off. of Personnel Mgmt., 130 F. Supp. 3d 225, 234 (D.D.C. 2015).

The Supreme Court has already concluded that a proper remedy for an unlawful removal is for the Government to facilitate the restoration of that person's rights. In Abrego Garcia, the Court reviewed an order requiring the Government to "facilitate and effectuate the return" of a noncitizen, Abrego Garcia, who had been deported to El Salvador in violation of a withholding order forbidding such removal. See 145 S. Ct. at 1018. The Court unanimously determined that

the district court's "order properly requires the Government to 'facilitate' Abrego Garcia's release from custody in El Salvador <u>and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador</u>." Id. (emphasis added). At the same time, the Court noted that the "effectuate" requirement "may exceed the District Court's authority" and instructed the court to "clarify its directive." <u>Id.</u> Although the Court was thus cognizant of the "deference owed to the Executive Branch in the conduct of foreign affairs" and directed the district court to proceed accordingly, it nonetheless did not hesitate to require the Government to "facilitate" Abrego Garcia's release from custody and redo its handling of his case. <u>Id.</u> The Court, moreover, instructed the Government to be "prepared to share what it can concerning the steps it has taken and the prospect of further steps." <u>Id.</u>

In light of that guidance, the district court on remand ordered the Government to "take all available steps to facilitate the return of Abrego Garcia to the United States as soon as possible." <u>Abrego Garcia v. Noem</u>, 2025 WL 1085601, at *1 (D. Md. Apr. 10, 2025); <u>see also</u> <u>Abrego Garcia v. Noem</u>, 348 F.R.D. 589, 592 (D. Md. 2025) ("Defendants . . . remain obligated, at a minimum, to take the steps available to them toward aiding, assisting, or making easier Abrego Garcia's release from custody in El Salvador and resuming his status quo ante."). The Fourth Circuit, in turn, left that order in place over an objection from the Government. <u>Abrego Garcia v. Noem</u>, 2025 WL 1135112, at *1 (4th Cir. Apr. 17, 2025) ("'Facilitate' is an active verb."). In a similar case in which a person was wrongfully removed to El Salvador, another district court likewise ordered the Government "to facilitate [the noncitizen's] return to the United States so that he can receive the process he was entitled to." <u>J.O.P. v. DHS</u>, 2025 WL 1180191, at *1 (D. Md. Apr. 23, 2025), <u>app. for stay denied</u>, 2025 WL 1431263 (4th Cir. May 19, 2025).

66

As is now clear, CECOT Class members were entitled to notice and an opportunity to challenge their removability pursuant to the Proclamation. That process — which was improperly withheld — must now be afforded to them. Put differently, Plaintiffs' ability to bring habeas challenges to their removal must be restored. In light of the well-established law of remedies and the example that has already been set by all three levels of the federal judiciary, then, Defendants must facilitate Plaintiffs' ability to proceed through habeas and ensure that their cases are handled as they would have been if the Government had not provided constitutionally inadequate process. The Court determines that such a remedy balances Defendants' distinct role in conducting foreign affairs with the grave need to right their legal wrongs; absent this relief, the Government could snatch anyone off the street, turn him over to a foreign country, and then effectively foreclose any corrective course of action. See Abrego Garcia, 145 S. Ct. at 1019 (statement of Sotomayor, J.). Mindful of national-security and foreign-policy concerns, the Court will not — at least yet — order the Government to take any specific steps. It will instead allow Defendants to submit proposals regarding the appropriate actions that would "allow [Plaintiffs] to actually seek habeas relief." J.G.G., 145 S. Ct. at 1006.

    D.    Bond

Federal Rule of Civil Procedure 65(c) provides that a "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In response to Plaintiffs' original motion for a preliminary injunction, the Government requested that they post a bond to compensate it for "the cost of continued detention during the pendency of the injunction of individuals who would otherwise have been removed." ECF No. 72 (Opp. to First PI) at 32. Plaintiffs, for their part,

asked the Court to dispense with the bond requirement or impose a nominal bond.  See ECF No. 77 (First PI Reply) at 24.  As Plaintiffs point out, however, see PI Reply at 25 n.18, Defendants do not request a bond this time around and have thus arguably forfeited (or waived) the issue of the appropriate amount.  See United States v. Olano, 507 U.S. 725, 733 (1993)).

Regardless, given the Rule's apparently compulsory language, the Court will consider whether and how to require a bond.  To be sure, "[c]ourts in this Circuit have found the Rule vests broad discretion in the district court to determine the appropriate amount of an injunction bond, including the discretion to require no bond at all."  Escobar Francisco ex rel. P.J.E.S. v. Wolf, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (cleaned up).  Some courts have accordingly withheld bond requirements when the parties asking for an injunction were likely unable to pay and "seeking to vindicate important rights under the immigration laws."  Id.; see also Simms v. District of Columbia, 872 F. Supp. 2d 90, 107 (D.D.C. 2012) (imposing minimal security requirement when costs sustained would be "modest," plaintiff had "extremely limited financial resources," and plaintiff sought to protect constitutional rights).  Courts have also determined that withholding a bond is especially warranted when the defendant has not shown it will suffer a material monetary injury from an injunction.  See Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 759 (D.C. Cir. 1980); N. Am.'s Building Trades Unions v. Dep't of Def., 2025 WL 1423610, at *15 (D.D.C. May 16, 2025).  While our Circuit has noted the "widely recognized discretion" of a district court "not only to set the amount of security but to dispense with any security requirement whatsoever," Fed. Prescription Serv., 636 F.3d at 759, however, it has more recently expressed skepticism of this longstanding practice.  See Nat'l Treasury Emps. Union v. Trump, 2025 WL 1441563, at *3 n.4 (D.C. Cir. May 16, 2025); see also Widakuswara v. Lake, 2025 WL 1288817, at *5 n.7 (D.C. Cir. May 3, 2025).

Here, Plaintiffs and their next friends are seeking to vindicate fundamental rights and, given their vulnerable status, in all likelihood lack the monetary resources necessary to post a bond.  Because the Court has not decided the exact scope of the remedy, it is difficult at this point to assess the potential costs to the Government.  The Court, however, recognizes that Defendants will have to deploy some of their resources in order to facilitate Plaintiffs' ability to seek habeas review.  Given that reality and the uncertain nature of courts' ability to forgo a bond altogether, the Court will require Plaintiffs to post a bond.  In light of the circumstances and nature of this case, it finds that a nominal amount is proper and exercises its discretion to require Plaintiffs to collectively post $1.00.  See A.S.R. v. Trump, 2025 WL 1378784, at *23 (W.D. Pa. May 13, 2025) (taking same approach).

## IV.  Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' Motion for Preliminary Injunction; grant their Motion for Class Certification as to the CECOT Class, subject to the revisions previously discussed; and deny without prejudice their Motion for Class Certification as to the Criminal Custody Class.  It will give Defendants one week to submit a Notice to the Court advising how they intend to facilitate the ability of the CECOT Class to seek habeas relief.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  June 4, 2025

69