## ORAL ARGUMENT NOT YET SCHEDULED

No. 25-5217

In the United States Court of Appeals
for the District of Columbia Circuit

**J.G.G.** et al.,

*Plaintiffs–Appellees,*

v.

**DONALD J. TRUMP**, in his official capacity
as President of the United States, et al.,

*Defendants–Appellants.*

On Appeal from an Order
of the United States District Court
for the District of Columbia

## APPELLANTS' EMERGENCY MOTION
## FOR A STAY PENDING APPEAL
## AND ADMINISTRATIVE STAY

**Yaakov M. Roth**
Acting Assistant Attorney General
Civil Division

**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation

**Tiberius T. Davis**
Counsel to the Assistant Attorney
  General

**Anthony Nicastro**
Acting Director
Office of Immigration Litigation

*Counsel for Defendants–Appellants*

## TABLE OF CONTENTS

INTRODUCTION...........................................................................................1

BACKGROUND ........................................................................................4

LEGAL STANDARD ...............................................................................9

ARGUMENT ............................................................................................9

    I.    The Government Is Likely to Prevail on the Merits. .............9

        A.    Because there is no constructive custody, the district court lacked jurisdiction...................................10

        B.    Plaintiffs cannot bring a freestanding, retrospective due-process claim for injunctive relief...........................................................................15

    II.    The Remaining Equitable Factors Favor a Stay.................21

    III.    This Court Should Issue an Immediate Administrative Stay........................................................................................23

CONCLUSION .......................................................................................24

## INTRODUCTION

For the third time in just three months, the district court has issued an unprecedented, baseless, and constitutionally offensive injunction that interferes with the President's removal of dangerous criminal aliens from the United States. The court's first two injunctions were blocked on appeal. The third try is not the charm. If anything, its new *sua sponte* theory—that a class of removed aliens may sue *outside* of habeas in order to secure a due-process right to *seek* habeas, despite a conceded absence of actual or constructive custody—is the least defensible one. This Court should grant a stay pending appeal.

In March, the district court issued two injunctions prohibiting the Government from invoking the Alien Enemies Act (AEA) to remove from the United States a group of aliens associated with the designated foreign terrorist organization Tren de Aragua (TdA), which the President found was entwined with the Maduro regime in Venezuela. But the Supreme Court vacated those orders because the aliens' challenge to their removal had to be brought in habeas—and the District of Columbia was not the proper venue for a habeas action on behalf of aliens held elsewhere. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025) (per curiam).

Rather than relinquish jurisdiction, the district court pressed ahead with criminal contempt based on the Government's supposed failure to comply with the orders that the Supreme Court vacated. The district court volunteered, however, that the Government could "purge" its contempt and avoid sanctions if it took steps to regain custody over the removed aliens, who were by then imprisoned by El Salvador, so that the aliens could pursue habeas relief. As the Government explained in an emergency appeal to this Court, that order violates Article II by threatening to usurp the President's prosecution power unless the President agrees to give up his foreign affairs power. This Court issued an administrative stay of that injunction, which remains in place.

The district court has now developed a third way to reach that same remedy. The court acknowledged, after reviewing diplomatic materials, that the United States does not have constructive custody over the TdA members being detained by El Salvador. That finding foreclosed the plaintiffs' only argument for relief. Yet the court then circumvented that barrier by finding a due-process violation and awarding as a remedy an order directing the Government to facilitate habeas review—exactly what the court previously suggested as a "cure" for contempt.

The district court's third try is too clever by half. The court's lack of habeas jurisdiction cannot be cured by reconceptualizing the suit as an implied constitutional cause of action to provide the class with a right to habeas. The plaintiffs' due-process claims necessarily imply the invalidity of their removal to El Salvador, and the district court therefore lacked jurisdiction over those claims for the same reasons the Supreme Court identified in the first round of this litigation.

Moreover, even if a freestanding equitable cause of action existed here, the court's novel remedy is incoherent and impermissible. The district court ordered the Government to facilitate the aliens' ability to seek habeas relief, but the court had already agreed there is no habeas jurisdiction because a foreign sovereign has custody. The only way to "facilitate" habeas review would be to somehow seize custody of the entire class of aliens from El Salvador, either by force or through coerced diplomacy. A federal court obviously could not order the Government to do either. The order thus is untenable because, in the absence of custody or control, the alleged past deprivation of the aliens' ability to seek habeas relief is no longer redressable in equity.

Put simply, the fact that the United States lacks custody or control over the detained TdA members in El Salvador does not just deprive the district court of habeas jurisdiction (as the court itself acknowledged). That fact also forecloses the aliens' ability to pursue an equitable due-process claim as a backdoor route to a non-existent habeas remedy. The district court's increasingly fantastical injunctions continue to threaten serious harm to the Government's national-security and foreign-affairs interests. This Court should grant a stay pending appeal.[1]

## BACKGROUND

On March 15, 2025, the President issued a Proclamation invoking the AEA to detain and remove members of TdA, an entity designated a foreign terrorist organization. 90 Fed. Reg. 13,033. The Proclamation authorizes the detention and removal under the AEA of "all Venezuelan citizens 14 years of age or older who are members of TdA, are within the United States, and are not actually naturalized or lawful permanent residents of the United States." *Id.* § 1; *see also id.* § 3.

---

[1] Because the district court's injunction requires the Government to take action only seven days after its issuance, the Government is concurrently seeking a stay pending appeal below. The Government called Plaintiffs' counsel to inform them this motion was being filed.

**Initial Proceedings.** Also on March 15, five Venezuelan nationals detained at an immigration detention center in Texas sued in the District of Columbia to block the Government from removing them under the Proclamation. Although they initially sought relief under both the Administrative Procedure Act (APA) and by a writ of habeas corpus, those plaintiffs later dismissed their habeas claims at the district court's suggestion. ECF 20 at 22:1–3. The court granted an injunction as to those plaintiffs, certified a class of "[a]ll noncitizens who were, are, or will be subject to the Alien Enemies Act Proclamation," and issued a second injunction as to that class. Second Mar. 15 Minute Order.

The Government appealed both injunctions and filed emergency motions for stays pending appeal. This Court issued a divided ruling denying a stay, each judge writing separately. *J.G.G. v. Trump*, 2025 WL 914682, at *1 (D.C. Cir. Mar. 26, 2025). The Supreme Court then vacated the orders for lack of jurisdiction, finding that those plaintiffs' claims fell "within the 'core' of the writ of habeas corpus and thus must be brought in habeas," and "[f]or 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement,'" which was not the District of Columbia. *J.G.G.*, 145 S. Ct. at 1005.

**Contempt Proceedings.** By the time the district court issued its second injunction on March 15, some members of the original class had already been removed from the United States. They later arrived in El Salvador and were detained under El Salvador's own authority. ECF 129 at ¶¶ 9–10. That led to further rounds of litigation.

On April 16, the court issued an order finding probable cause that the Government was in criminal contempt of its vacated orders for having failed to return to the United States the aliens who had been removed *before* the relevant order issued. ECF 80. The court offered that the Government could "purge" its contempt "by asserting custody of the individuals who were removed," so they could seek habeas review. ECF 81 at 43–44. Otherwise, the court said that it would seek prosecution, including by appointing a private prosecutor if necessary. *Id.* at 44.

The Government immediately sought relief, explaining that the order required the President either to give up his *foreign-affairs* power by asserting custody over aliens held by a foreign sovereign, or his *prosecutorial* power by charging his own officials with contempt. This Court granted an administrative stay that remains in place. *See J.G.G. v. Trump*, 2025 WL 1151208, at *1 (D.C. Cir. Apr. 18, 2025).

6

**Order Below.** Separately, the district court invited plaintiffs to amend their complaint to address factual developments since March. A new set of Petitioners–Plaintiffs, most of whom were already confined in El Salvador, then joined the case. ECF 101 at ¶¶ 12–17. They sought a writ of habeas corpus, and moved to certify a class consisting of "[a]ll noncitizens in custody at the Terrorism Confinement Center ('CECOT') in El Salvador who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua' and/or its implementation." ECF 103-3 at ¶ 3(a).[2]

These plaintiffs then moved for a preliminary injunction directing the Government to "to immediately request and take all reasonable steps to facilitate (i) the release of the CECOT Subclass from the CECOT prison in El Salvador, and (ii) the return of the CECOT Subclass to the United States." ECF 102-15 at ¶ 1.

---

[2] One Petitioner, T.C.I., is currently in criminal custody in New Jersey. ECF 101 at ¶ 18. The district court denied his motion for a preliminary injunction and for class certification of a putative "criminal custody" class of aliens detained in the United States who fear future removal under the AEA. *See generally* ECF 148. Those claims are not at issue in this appeal.

In opposition, the Government pointed out that the court lacked habeas jurisdiction because the United States does not have constructive custody over these plaintiffs. ECF 108 at 5–12. After a hearing and after the Government filed under seal documents demonstrating that the United States lacks constructive custody over the CECOT detainees, *see* ECF 118-1 to -6, the district court ordered additional discovery into the issue of constructive custody.

Following subsequent productions and further briefing, the district court held that it lacked jurisdiction over the CECOT detainees' habeas claims because they had not shown that they were in the United States' custody. ECF 148 ("Op.") at 15–27.

Nevertheless, the district court held that it did have jurisdiction in equity over these plaintiffs' freestanding claim that their removal to El Salvador violated their due-process rights. *Id.* at 27–31. The court then unilaterally modified the putative class and certified it as modified. *Id.* at 63. The district court granted a preliminary injunction based on this due-process claim, ordering the Government to "facilitate the ability of the CECOT Class to seek habeas relief." ECF 147 at ¶ 3. The Government timely appealed. ECF 149.

## LEGAL STANDARD

In considering whether to grant a stay pending appeal, this Court asks whether the applicant (1) "is likely to succeed on the merits," (2) "will be irreparably injured absent a stay," (3) whether a stay will not "substantially injure" other interested parties, and (4) whether a stay is in the "public interest." *Nat'l Treasury Emps. Union v. Trump*, 2025 WL 1441563, at *1 (D.C. Cir. May 16, 2025).

## ARGUMENT

## I.    The Government Is Likely to Prevail on the Merits.

The Government is likely to succeed on appeal because the district court's analysis is fundamentally incoherent. The court agreed that the United States does not have actual or constructive custody over plaintiffs, and therefore that there is no jurisdiction for their claims in habeas. Yet the court *sua sponte* recognized a freestanding due-process claim by which plaintiffs could seek the opportunity to pursue habeas relief. That does not cure the jurisdictional problem. Further, the lack of custody means the Government cannot "facilitate" habeas review—at least not without engaging in military or diplomatic efforts that courts lack authority to order. Plaintiffs thus cannot seek equitable relief for these past due-process violations.

9

### A.    Because there is no constructive custody, the district court lacked jurisdiction.

The Supreme Court made clear that challenges to the Proclamation (or to detention or removal pursuant thereto) must be brought in habeas in the district of confinement. *J.G.G.*, 145 S. Ct. at 1005. Since plaintiffs are being held in El Salvador, the district court could only have habeas jurisdiction over this case if the Government had constructive custody. Based on the evidence produced below, the court correctly concluded that the United States does *not* have constructive custody. Op. at 22–27.

Constructive custody exists only if "the imprisoning sovereign is the respondent's agent." *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 47 (D.D.C. 2004). Here, however, the evidence shows that plaintiffs are being held under the authority of El Salvador alone. *See* Op. at 24; Redacted Kozak Decl. at ¶¶ 9–10. Nor does the United States have control or even a presence at the detention facility. *See Al Maqaleh v. Gates*, 605 F.3d 84, 97 (D.C. Cir. 2010) (lack of control over leased Air Force base meant no habeas). Based on a fulsome record following jurisdictional discovery, the district court correctly ruled that the United States lacks constructive custody over the aliens held at CECOT and therefore that the court lacks jurisdiction over their habeas claims. Op. at 27.

That should have been the end of this case. Indeed, as to the aliens held in El Salvador, this was the only theory that plaintiffs' counsel even pursued below. *See* ECF 102 (no mention of equitable claim for due process). Yet the district court *sua sponte* reasoned that it could exercise jurisdiction over a standalone due-process claim targeting the Government's failure to provide sufficient notice to plaintiffs before they were removed under the AEA. Op. at 30.

Doing so was reversible error, even apart from the merits. The Supreme Court has made clear that courts are not advocates; they must evaluate the theories pressed to them, not come up with their own. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). Having rejected plaintiffs' constructive-custody theory, the district court should not have developed a substitute alternative theory on its own accord.

That theory was also plainly wrong. This retrospective claim of inadequate notice is, in purpose and effect, a challenge to plaintiffs' removal. It therefore sounds in habeas—no less than the constitutional claims asserted by the original plaintiffs, which the Supreme Court held had to be pursued through habeas. The district court's transparent workaround will not withstand merits scrutiny on appeal.

11

As the Supreme Court said in rejecting the district court's first set of orders, because plaintiffs' "claims for relief 'necessarily imply the invalidity' of their confinement and removal under the AEA, their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *J.G.G.*, 145 S. Ct. at 1005 (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). Applying this logic, the Court vacated the district court's orders that were, in part, premised on a due-process claim that plaintiffs did not receive adequate notice before removal. *Id.* at 1006; ECF 1 at ¶¶ 101–04.

The district court's new concocted due-process claim is no different. Since that claim is not brought in habeas (because there is no habeas jurisdiction), this order fails just like the first. The district court's novel due-process claim sounds in habeas for at least two reasons. *First*, notice is core to due process and "due process rights have historically been vindicated by the writ of habeas corpus." *Hamdi v. Rumsfeld*, 542 U.S. 507, 555 (2004) (Scalia, J., dissenting). So due-process claims are core habeas claims. *See Brown v. Davenport*, 596 U.S. 118, 128–29 (2022) ("[H]abeas was no less than 'the instrument by which due process could be insisted upon.'").

*Second*, the point of the due-process claim is to challenge the validity of plaintiffs' removal. Their argument is that they did not get enough process prior to removal and thus were unable to dispute the basis for that removal. *See* Op. at 67; *I.M. v. U.S. Customs & Border Prot.*, 67 F.4th 436, 443 (D.C. Cir. 2023) (rejecting argument that request for a hearing by itself did not reflect a habeas remedy, as it is sufficient that "a removal hearing *can* result in release"). The district court acknowledged this when it said that the violation requires "restoration of the status quo ante and an injunction barring deprivation of the plaintiff's rights without the requisite procedural protections." Op. at 36 (quotation omitted). Restoration of the status quo means undoing the removal, thus "necessarily imply[ing] the invalidity" of the removal. *J.G.G.*, 145 S. Ct. at 1005

The district court's attempt to separate the due-process challenge from a challenge to the validity of removal slices the baloney far too thin. Op. at 30. If the district court were right, due-process challenges to a criminal defendant's trial would not challenge the validity of the conviction. But such due process claims are core to habeas and cannot be brought through standalone equitable challenges. *See Mack v. City of*

*Chicago*, 723 F. App'x 374, 376 (7th Cir. 2018) ("Mack's due-process claim based on an unfair criminal trial necessarily would impugn the validity of his conviction"); *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008) ("[A] § 1983 claim for a due process violation based on the denial of a fair criminal trial may be brought only after the conviction is set aside."). So too for challenges to a lack of notice prior to a hearing. *See Early v. Blankenship*, 221 F.3d 1342 (8th Cir. 2000) (challenge to notice of disciplinary hearing "would necessarily imply the invalidity of [the] disciplinary result" and thus must be brought in habeas). The due-process claim strikes at the heart of the validity of the removals, and packaging the claim as notice-related does nothing to change that fact.

The district court's analysis is not helped by the Supreme Court's dicta that it is "skeptical of the self-defeating notion that the right to the *notice* necessary to actually seek habeas relief . . . must *itself* be vindicated through individual habeas petitions, somehow by plaintiffs who have not received notice." *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1370 (2025) (cleaned up). The majority in *A.A.R.P.* was responding to the dissent's arguments regarding class-wide relief, and defending the proposition that such claims could proceed for a putative class—not that

14

they could proceed *outside of habeas*. *Id.* Indeed, that case *was* a habeas action, filed in the correct venue. *Id.* Nothing in *A.A.R.P.* calls into the question the Supreme Court's ruling in this case, just weeks earlier, that challenges to AEA detention or removal must proceed in habeas. And if anything, the district court's due-process theory here is even more of a "core" habeas challenge given that it involves removals that have already occurred (and thus that would necessarily be invalidated if plaintiffs prevail). The district court was unable to metamorphosize plaintiffs' habeas claims into a standalone equitable due-process claim.

### B.    Plaintiffs cannot bring a freestanding, retrospective due-process claim for injunctive relief.

Even setting jurisdiction aside, the court's injunction remains indefensible, because the purely retrospective due-process claim that the court identified is not redressable in equity. Indeed, there is no way for the district court to order effective injunctive relief. Plaintiffs are not in United States custody. And the separation of powers prevents the district court from ordering the Executive to retake custody from El Salvador— that would be akin to ordering an invasion of a foreign country or a directive to negotiate a diplomatic deal, neither of which falls within the scope of the Judicial power.

Again, the district court correctly recognized that the United States does not have constructive custody over plaintiffs, and so the court lacked jurisdiction to hear their habeas challenges. Op. at 23–24. Still, the court ruled that plaintiffs' due-process rights were violated when they were removed to El Salvador without enough notice to allow them to file for habeas. *Id.* at 39. And, to remedy that injury, the court ordered the Government to "facilitate Petitioners' ability to proceed through habeas." *Id.* at 67. Even assuming jurisdiction, that remedy is internally contradictory. Because the Government lacks constructive custody, the Government cannot facilitate plaintiffs' ability to file for habeas.

Insofar as the court intended for the Government to facilitate the filing of habeas petitions *in the United States* while plaintiffs remain *in custody in El Salvador*, the problem is obvious: As the district court itself ruled, no federal court would have jurisdiction over such petitions since the United States does not exercise custody over plaintiffs and so cannot release them. *Id.* at 27. The ability to file a petition that no court would have jurisdiction over is no remedy at all. It would not meaningfully provide plaintiffs with the ability to be heard and bring their claims, the very injury the district court seeks to redress. *Id.* at 39.

16

Insofar as the district court instead intended for the Government to facilitate the filing of habeas petitions by *regaining custody*, that mirrors the extraordinary and impermissible relief that the district court already twice attempted to impose—but that reviewing courts twice rejected. *See J.G.G.*, 145 S. Ct. at 1005 (vacating orders that purported to require the Government to retain custody over aliens subject to Proclamation); *J.G.G.*, 2025 WL 1151208, at *1 (granting administrative stay of order threatening prosecution unless Government reasserted custody).

Separation-of-powers principles foreclose the district court's third attempt to do the same thing. To regain custody of plaintiffs, the Government would have to take active steps either to compel or persuade the Salvadoran government to release them from its custody. The district court's order thus yet again attempts to compel the United States to commit to a course of military or diplomatic action.

That extreme remedy unconstitutionally intrudes on the Executive's plenary power over foreign affairs. "Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952). Article II "authorizes the

Executive to engag[e] in direct diplomacy with foreign heads of state and their ministers," *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 14 (2015), which is why the Supreme Court has "taken care to avoid 'the danger of unwarranted judicial interference in the conduct of foreign policy,'" *Biden v. Texas*, 597 U.S. 785, 805 (2022). The district court's order impermissibly seeks to wrestle this complex matter of foreign affairs away from the Executive. In doing so, it violates the separation of powers. *See United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) ("[T]he President alone has the power to speak or listen as a representative of the nation.").

Article III further bars the relief the district court ordered. As the district court agreed, plaintiffs "bear the burden" of "demonstrat[ing] standing for each claim that they press." Op. at 52–53. These standing requirements "persist from a lawsuit's cradle to its grave"; a case becomes "moot once the federal courts can no longer grant effectual relief." *Ali v. Adamson*, 132 F.4th 924, 930 (6th Cir. 2025) (Sutton, C.J.). Among other things, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023). And when "existence of one or more of the

essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to . . . permit redressability of injury." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs can only demonstrate redressability in such cases if "substantial evidence of a causal relationship between the government policy and the third-party conduct . . . leav[es] little doubt as to . . . the likelihood of redress." *Hecate Energy LLC v. FERC*, 126 F.4th 660, 665–66 (D.C. Cir. 2025). Simple "guesswork as to how independent decisionmakers will exercise their judgment" is insufficient. *Id.*

Here, as the district court found, El Salvador is not "indifferent" to plaintiffs' detention and has itself chosen "for reasons far outside the ken of a federal district court . . . to detain Plaintiffs at CECOT." Op. at 24. In anticipating that the United States would be able to regain custody simply by asking, mere "guesswork" is all plaintiffs have. *Hecate Energy*, 126 F.4th at 665. They provided no facts suggesting that El Salvador would likely transfer custody if a court ordered the United States to

19

facilitate such a transfer. To the contrary, the very facts the district court relied on to find no constructive custody prove otherwise: El Salvador has chosen to detain plaintiffs on its own and maintains control over their detention, outside access, and even transfers, without American input. Op. at 22; *see also id.* (observing that El Salvador offered to trade plaintiffs to their home country of Venezuela in exchange for an equal number of political prisoners held there by the Maduro regime).[3]

There is thus no evidence that El Salvador would release plaintiffs "upon nothing more than a request by the United States." *Abu Ali*, 350 F. Supp. 2d at 68. That is why plaintiffs' constructive-custody theory failed. *Accord Gul v. Obama*, 652 F.3d 12, 18 (D.C. Cir. 2011) (rejecting habeas jurisdiction over prisoners transferred to Afghanistan and Sudan, even though court could "order the Government to take all steps within

---

[3] The district court repeatedly cited *Abrego Garcia v. Noem*, Op. at 21, 57, where courts ordered the Government to facilitate the return of an alien whose removal order prohibited removing him to El Salvador. But that experience only confirms that the United States lacks control over El Salvador's custody determinations. Abrego Garcia was ultimately returned to the United States only after he was criminally indicted and the Government presented El Salvador with an arrest warrant. *See* Department of Justice Press Conference, *Attorney General Bondi Announces Charges Against Abrego Garcia*, June 6, 2025, https://www.justice.gov/opa/video/attorney-general-bondi-announces-charges-against-abrego-garcia.

its power to alleviate their injury," because injury was "traceable" to a foreign sovereign with broad discretion on how to act). And for the very same reasons, the prospect of "facilitation" is too speculative to confer standing on plaintiffs to seek an injunction on due-process grounds. To hold otherwise would create an end-run around constructive custody and habeas jurisdiction: if a respondent lacks custody, simply order them to gain custody and thereby create jurisdiction. That is too facile.

In the end, plaintiffs' only injury traceable to the United States is a purely *past* one: that they were removed without adequate notice or an opportunity to file habeas. Op. at 39. That is not an "ongoing" or "imminent injury" that can justify prospective injunctive relief. *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1227 (D.C. Cir. 2024). The district court's further order granting such relief is thus likely to be reversed on appeal.

## II. The Remaining Equitable Factors Favor a Stay.

The other equitable factors also favor a stay. To start, the district court's order, if not stayed, will irreparably injure the Government. As explained, the order intrudes on the Executive's foreign-affairs authority by forcing the United States to engage in military actions or sensitive

diplomatic negotiations to regain custody of over 100 gang members from a foreign prison. It is difficult to conceive of a more significant harm to the separation of powers. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (order threatens "serious, perhaps irreparable, consequence" to the separation of powers).

This injunction also illustrates why the harm to the Government and the public interest "merge" where the Government seeks a stay. *Nken v. Holder*, 556 U.S. 418, 435 (2009). By binding the Executive's hands as to foreign affairs or military action, the district court's order severely harms the public interest. Requiring the United States to seek to extract plaintiffs from Salvadoran custody risks alienating a strategic ally in the war on foreign terrorist organizations that have devastated countries in Central and South America and have targeted this nation. *See, e.g.*, ECF 118-3 at 2; ECF 118-4; ECF 118-5 at 1. If the United States were to seek the return of over 100 individuals that El Salvador has imprisoned, for the express purpose of giving them an opportunity to seek their release, the United States' reliability as a partner in fighting foreign terrorist organizations would diminish. Other countries, too, may see the United States as unable to commit to a single course of action in foreign affairs,

weakening the President's ability to negotiate with foreign sovereigns on behalf of the nation.

Further, the "sensitive and weighty interests of national security and foreign affairs" warrant the utmost deference to the Executive's view. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–35 (2010). Courts have neither "technical expertise nor official responsibility" to make judgments that may have wide-ranging effects on the United States' strategic interests. *Ludecke v. Watkins*, 335 U.S. 160, 170 (1948).

Meanwhile, plaintiffs will suffer no harm from a stay of the district court's order. They are currently in the custody of El Salvador, and the United States has no authority over their detention. Even if the district court's order were not stayed, plaintiffs would experience no change in their station. But, absent a stay, the court's dramatic and unprecedented order once again threatens to trigger a constitutional crisis of the sort that this Court defused when it stayed this district court's *last* order. The equities thus decidedly tip in favor of a stay.

## III.  This Court Should Issue an Immediate Administrative Stay.

Under the district court's injunction, the government is required to "submit a Notice to the Court advising how they intend to facilitate the

23

ability of the CECOT Class to seek habeas relief" by tomorrow evening. ECF 147. As set forth above, that requirement is premised on serious legal errors that would irreparably harm the Government if enforced. This Court should enter an immediate administrative stay to prevent the harms from the district court's erroneous injunction from being inflicted on the government, just as it did last time the district court demanded such a precipitous filing. *See J.G.G.*, 2025 WL 1151208, at *1.

## CONCLUSION

This Court should issue an administrative stay and stay the district court's order pending appeal.

Respectfully submitted,

**Yaakov M. Roth**
Acting Assistant Attorney General
Civil Division

s/Drew C. Ensign
**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044-0878
(202) 514-2000
drew.c.ensign@usdoj.gov

**Tiberius T. Davis**
Counsel to the Assistant Attorney General

**Anthony Nicastro**
Acting Director
Office of Immigration Litigation

Dated: June 10, 2025            *Counsel for Respondents–Appellants*

## Certificate of Compliance for Papers Submitted Under Fed. R. App. P. 27(d)(2)(A)

1.    This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,953 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word for Microsoft 365 MSO (Version 2503 Build 16.0.18623.20266) 64-bit.

Dated: June 10, 2025          s/Drew C. Ensign
                              *Counsel for Respondents–Appellants*