_____

**No. 25-5217**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

J.G.G., *et al.*,

*Plaintiffs–Appellees*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,

*Defendants–Appellants.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
No. 1:25-cv-00766
Hon. James E. Boasberg

**RESPONSE IN OPPOSITION TO
EMERGENCY MOTION FOR A STAY PENDING APPEAL**

Evelyn Danforth-Scott
Spencer Amdur
Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo
Cody Wofsy
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
Tel.: (415) 343-0770

Lee Gelernt
  *Counsel of Record*
Daniel Galindo
Ashley Gorski
Patrick Toomey
Omar Jadwat
Hina Shamsi
Michael K.T. Tan
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor

Arthur B. Spitzer
Scott Michelman
Aditi Shah
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF THE
DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
Tel.: (202) 457-0800

Kathryn Huddleston*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street, NW, 7th Floor
Washington, D.C. 20005
Tel.: (202) 546-6616

*Barred in Texas and Arizona only;
supervised by a member of the D.C. Bar

New York, NY 10004
Tel.: (212) 549-2660
Fax: (332) 220-1702
lgelernt@aclu.org

Brian Netter
Bradley Girard
Christine L. Coogle
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel.: (202) 448-9090
Fax: (202) 796-4426

*Counsel for Plaintiffs–Appellees*

# Table of Contents

Table of Authorities ........................................................................... ii

INTRODUCTION AND BACKGROUND ............................................... iv

STATEMENT .......................................................................................... 5

ARGUMENT ........................................................................................... 7

    I.    Defendants are unlikely to succeed on the merits. ................................. 7

        A.    The district court had equity jurisdiction to rule on Plaintiffs' procedural due process claim. ......................................... 7

        B.    The district court has the power to order Defendants to facilitate Plaintiffs' ability to seek habeas relief. ........................... 13

    II.    The equities weigh heavily against a stay. ............................................. 19

CONCLUSION ....................................................................................... 22

## Table of Authorities

**Cases**

*A.A.R.P. v. Trump*,
  145 S. Ct. 1364 (2025)................................................................. 1, 3, 4, 8, 10, 21

*Abrego Garcia v. Noem*,
  2025 WL 1135112 (4th Cir. Apr. 17, 2025)................................... 10, 15, 20, 21

*Abrego Garcia v. Noem*,
  348 F.R.D. 589 (D. Md. 2025) ..........................................................15

*Animal Legal Def. Fund, Inc. v. Vilsack*,
  111 F.4th 1219 (D.C. Cir. 2024).........................................................19

*Anyanwutaku v. Moore*,
  151 F.3d 1053 (D.C. Cir. 1998)................................................... 10, 12

*Brown v. Davenport*,
  596 U.S. 118 (2022).............................................................................11

*Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*,
  904 F.3d 1014 (D.C. Cir. 2018)............................................................7

*Davis v. U.S. Sentencing Comm'n*,
  716 F.3d 660 (D.C. Cir. 2013)..................................................... 10, 12

*Early v. Blankenship*,
  221 F.3d 1342 (8th Cir. 2000) ...........................................................12

*Edwards v. Balisok*,
  520 U.S. 641 (1997)..............................................................................9

*Gul v. Obama*,
  652 F.3d 12 (D.C. Cir. 2011)..............................................................18

*Hamdi v. Rumsfeld*,
  542 U.S. 507 (2004).............................................................................11

*Huisha-Huisha v. Mayorkas*,
  27 F.4th 718 (D.C. Cir. 2022)..............................................................21

*I.M. v. U.S. Customs & Border Protection*,
  67 F.4th 436 (D.C. Cir. 2023)..............................................................12

*Mack v. City of Chicago*,
  723 F. App'x 374 (7th Cir. 2018) .........................................................11

*Nken v. Holder*,
  556 U.S. 418 (2009).........................................................................7, 19

*Noem v. Abrego Garcia*,
  145 S. Ct. 1017 (2025)........................................ 4, 13, 14, 16, 18, 20

*Ray v. Foltz*,
  370 F.3d 1079 (11th Cir. 2004) ...........................................................19

*Skinner v. Switzer*,
  562 U.S. 521 (2011)..................................................................... 10, 12

*Spencer v. Kemna*,
  523 U.S. 1 (1998)..................................................................................9

*Trump v. J.G.G.*,
  145 S. Ct. 1003 (2025)....................................... 3, 7, 8, 10, 13

*U.S. Pub. Int. Rsch. Grp. v. Atl. Salmon of Maine, LLC*,
  339 F.3d 23 (1st Cir. 2003)..................................................................19

*United States v. Sineneng-Smith*,
  590 U.S. 371 (2020)..............................................................................13

*Wilkinson v. Dotson*,
  544 U.S. 74 (2005)...........................................................................9, 12

# Other Authorities

Bier, David J. *50+ Venezuelans Imprisoned in El Salvador Came to US Legally*, *Never Violated Immigration Law*, Cato Institute (May 19, 2025), https://perma.cc/526F-VAEH ............................................................6

Bukele, Nayib (@nayibbukele), X.com (Mar. 16, 2025), https://x.com/nayibbukele/status/1901245427216978290 ................................18

Defs.' Reply in Support of Notice of Compliance, *Abrego Garcia v. Noem*, No. 8:25-cv-00951 (D. Md. June 10, 2025), ECF No. 194....................17

Department of Justice, *Press Release: MS-13 Gang Member Fugitive Extradited from El Salvador to Face Racketeering and Murder Charges on Long Island* (Aug. 10, 2022), https://perma.cc/7YPB-37FU ............................................................17

Farrow, Fritz, *Trump says 'I could' get Abrego Garcia back from El Salvador*, ABC News (Apr. 29, 2025), https://perma.cc/57A9-6AQY ............................................................18

Gov't Reply in Support of Appl. to Vacate Inj., *Noem v. Abrego Garcia*, 2025 WL 1101707 (U.S. Apr. 8, 2025)..................................14

Gov't Appl. to Vacate Inj., *Noem v. Abrego Garcia*, 2025 WL 1038907 (U.S. Apr. 7, 2025) ............................................................14

Pet'rs' Resp. in Opp. to Resp'ts' Mot. for Stay Pending Appeal, *J.G.G. v. Trump*, No. 25-5124 (D.C. Cir. Apr. 23, 2025) ....................................5

Vega, Cecilia, *U.S. sent 238 migrants to Salvadoran mega-prison; doments indicate most have no apparent criminal records*, CBS News (Apr. 6, 2025), https://perma.cc/5LP3-VKZ8 ............................................6

**INTRODUCTION AND BACKGROUND**

Plaintiffs have now been held incommunicado in the notorious Salvadoran CECOT prison—widely known for brutalizing and torturing its detainees—for more than 90 days. The government does not dispute the district court's holding that the Plaintiffs' removals were unconstitutional, as they were given no meaningful notice of the allegations of Tren de Aragua ("TdA") membership, much less an opportunity to contest them. ECF No. 148 ("Op.") at 39. Indeed, the Supreme Court recently stated that even 24 hours' notice "surely does not pass muster," *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025), yet Plaintiffs received far less. To the extent that Plaintiffs received a written notice, it was provided to them while they were being transported to the planes. And it stated pointedly that "no review" was available.

Since then, evidence has emerged, including from the government itself, that few of the individuals sent to CECOT had any criminal convictions, much less serious ones. Evidence has likewise emerged that many, if not the overwhelming majority, were not members of TdA, and that the untested allegations against them were based on "flimsy, even frivolous accusations," Op. 4—largely consisting of tattoos that experts have testified have no bearing on gang membership, *see id.* (citing declarations). The need for relief is thus especially acute.

Faced with a clear constitutional violation, and the prospect of Plaintiffs languishing in a notorious foreign "mega prison" based on nothing more than the

government's say-so, the district court held that Plaintiffs must have some opportunity to contest the government's allegations, and that the government must "facilitate" that opportunity. In an abundance of judicial restraint, the district court did not, however, order the government to take any concrete steps, but simply to "submit proposals" for how it would proceed. Op. 67. The government now seeks emergency relief from an order that does nothing more than require it to propose how the constitutional injuries it inflicted can be remedied.

The government initially argues that the district court could only act in habeas, and that because the court concluded it lacked habeas jurisdiction (due to the absence of "constructive custody"), it had no jurisdiction, in equity or otherwise, to rule on the conceded due process violation. The government then contends that even assuming jurisdiction in equity exists, the district court exceeded its authority by ordering the government to facilitate Plaintiffs' ability to proceed in habeas (or by ordering the government to submit proposals for how to do so). Setting aside the premature nature of the government's appeal and emergency request for extraordinary relief, the government's two arguments are substantively wrong and squarely at odds with Supreme Court precedent.[1]

---

[1] The district court's conclusion that the United States lacks constructive custody over the Plaintiffs at CECOT was incorrect. But because the court also correctly concluded that it could rule on Plaintiffs' due process claim in equity, this Court need not address the custody issue at the stay stage.

Defendants' first argument—that Plaintiffs' due process claim could only be brought in habeas—would be risible if it were not so extreme. Because the government rushed Plaintiffs out of the country, they had zero opportunity to file a habeas petition. So they could not have raised their due process claim by that means in advance of their removal. Yet the government now argues that Plaintiffs are stuck: according to the government, habeas is the only basis for raising a due process claim, and habeas is unavailable for those the government swiftly disappeared to CECOT. Under that logic, the government can sweep *anyone* off the streets, deny them any opportunity to file a habeas petition, and send them to a foreign prison—and no one could ever claim a violation of due process.

Defendants argue, however, that the Supreme Court effectively blessed such a scenario in *J.G.G.* when it held that challenges to the AEA Proclamation could be brought only in habeas. But Defendants ignore that the Court unanimously held that individuals must *first* receive due process, with meaningful notice, precisely so they could in fact bring a habeas challenge to their AEA designation. *Trump v. J.G.G.*, 145 S. Ct. 1003, 1006 (2025). Defendants also ignore that, in making that due process pronouncement, the Court was acting under *equity* jurisdiction, not habeas. *Id.* (analyzing Plaintiffs' procedural due process claim in equity). Even more to the point, the Supreme Court followed its *J.G.G.* decision with *A.A.R.P.*, where the government argued that class-action habeas challenges to the AEA, even to raise a

3

due process notice claim, were inappropriate. Recognizing the catch-22 in the government's argument, the Court rejected as "self-defeating" the "notion that the right to the *notice* necessary to 'actually seek habeas relief' must *itself* be vindicated through individual habeas petitions, somehow by plaintiffs who have not received notice." *A.A.R.P.*, 145 S. Ct. at 1370 (quoting *J.G.G.*, 145 S. Ct. at 1006).

Defendants are also wrong that the district court lacks the power to require them to "facilitate" Plaintiffs' ability to seek relief in habeas. The Supreme Court in *Abrego Garcia* held that a district court may order the government to "facilitate" the return of a person removed to CECOT, without running afoul of separation-of-powers or redressability concerns. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). Here, although the district court erred in holding that Plaintiffs did not sufficiently establish U.S. constructive custody, its reasoning is entirely consistent with the relief it ordered. Even if Defendants currently lack custody over Plaintiffs, they can actively seek to facilitate physical or constructive custody to allow Plaintiffs to pursue their habeas claims. In *Abrego Garcia*, the plaintiff was also before the Supreme Court in a non-habeas posture, yet the Court required the government to facilitate his return—and did so notwithstanding the government's contention that the plaintiff was under El Salvador's control.

On the equities, Defendants face no irreparable harm—indeed, no harm at all. At this preliminary stage, the district court has simply ordered them to advise the

court how they intend to facilitate habeas relief. But even if the district court eventually requires Defendants to engage diplomatically with El Salvador, the Supreme Court and the Fourth Circuit in *Abrego Garcia* have rejected that as a basis for a stay. In contrast, Plaintiffs' need for relief is urgent. They are shut off from the world and are at risk of torture, and even death.

The Court should not accept the government's extraordinary argument that it can whisk away to a foreign prison anyone it unilaterally alleges to be a gang member and then disclaim the power to facilitate a remedy. The district court properly recognized that equitable jurisdiction exists here to provide a remedy.

## STATEMENT

The factual and procedural background of this case and its prior iterations are fully laid out in Judge Boasberg's opinions and need not be repeated.[2] Accordingly, Plaintiffs highlight only the following points.

1. The record is replete with evidence that the CECOT prison in El Salvador is barbaric; prisoners are routinely beaten and tortured, and have little prospect for release before their timely or premature deaths. *See* ECF Nos. 102-5 (Bishop Decl.); 102-6 (Goebertus Decl.); 67-21 at 129 (describing conditions).

---

[2] Plaintiffs also incorporate by reference their Statement to this Court in their Response in Opposition to Respondents' motion for stay pending appeal in *J.G.G. v. Trump*, No. 25-5124 (D.C. Cir. Apr. 23, 2025), Doc. No. 2112443.

2. Since Plaintiffs' removal to CECOT, substantial evidence has emerged that few had criminal convictions, in the United States or in Venezuela,[3] and that many if not most were not in fact associated with TdA, but nevertheless have been confined indefinitely at this notorious prison, possibly for the rest of their lives. ECF Nos. 67-10 (Reyes Decl.); 67-13 (Tobin Decl.); 67-15 (Caro-Cruz Decl.); 67-21 at Exhs. 4–18.

3. The district court concluded Defendants lacked "constructive custody" over the CECOT prisoners and that the court therefore lacked statutory habeas jurisdiction. Although Plaintiffs disagree with that ruling, they note that the court found it a "close question" and expressly stated that its ruling was based on the "current record." Op. 23. That record was incomplete because Defendants failed to provide full discovery responses. *See* Pet'rs' Resp. to Resp'ts' Jurisdictional Discovery Submissions & Responses (ECF No. 145). Among other things, Defendants improperly narrowed the time frame of their responses, refusing to provide records created prior to March 12 (only three days before Plaintiffs' summary removal); refused to search for records held by any Defendant other than

---

[3] *See* Cecilia Vega, *U.S. Sent 238 Migrants to Salvadoran Mega-prison; Documents Indicate Most Have No Apparent Criminal Records*, CBS News (Apr. 6, 2025), https://perma.cc/5LP3-VKZ8; David J. Bier, *50+ Venezuelans Imprisoned in El Salvador Came to US Legally, Never Violated Immigration Law*, CATO Institute (May 19, 2025), https://perma.cc/526F-VAEH.

the State Department; unjustifiably narrowed the scope of the document requests; and improperly asserted privileges to withhold records. *See id.* at 16–20. If necessary at a later stage, Plaintiffs will seek more fulsome discovery.

## ARGUMENT

A stay pending appeal is an "extraordinary" remedy, *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018), and requires an applicant to (1) make a "strong showing that he is likely to succeed on the merits" of the appeal; (2) establish that he will be "irreparably injured" absent a pause while the appeal proceeds; (3) show that a stay will not "substantially injure the other parties"; and (4) demonstrate that "the public interest" favors a stay, *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted).

## I.      Defendants are unlikely to succeed on the merits.

### A.      The district court had equity jurisdiction to rule on Plaintiffs' procedural due process claim.

The district court correctly held that Plaintiffs' procedural due process claim need not be brought in habeas and may be brought in equity. Op. 27–31. Its analysis followed the Supreme Court's earlier decision in this case, where nine Justices ruled—in equity, not in habeas—that due process requires Defendants to provide AEA detainees with meaningful notice and an opportunity to be heard prior to removal. *J.G.G.*, 145 S. Ct. at 1005 (discussing plaintiffs' voluntary dismissal of their habeas claim); *id.* at 1006 (holding that "notice must be afforded within a

reasonable time and in such a manner as will allow [AEA detainees] to actually seek habeas relief in the proper venue before such removal occurs"). Because the Supreme Court has already issued a procedural due process ruling outside of habeas *in this case*, the district court's holding was proper.

That is not all. The Court recognized in a subsequent AEA case in which the government tried again to remove individuals without adequate notice (there, 12–24 hours) that the right to challenge one's AEA designation by habeas is only meaningful if one is provided advance notice and time to file a petition. *A.A.R.P.*, 145 S. Ct. at 1370 (rejecting as "self-defeating" the "notion that the right to the *notice* necessary to 'actually seek habeas relief' must *itself* be vindicated through individual habeas petitions, somehow by plaintiffs who have not received notice" (quoting *J.G.G.*, 145 S. Ct. at 1006)). The Court's point is as basic as it is simple. While detainees may challenge their AEA designation only in habeas, a claim of insufficient notice, time, and opportunity to file the habeas petition cannot *itself* be restricted to habeas. If it were otherwise, the government would control whether anyone ever gets to challenge their designation.

Only claims that "necessarily imply the invalidity of [one's] confinement and removal under the AEA" must be brought in habeas. *J.G.G.*, 145 S. Ct. at 1005. Although an evidentiary challenge to one's AEA designation must be brought in habeas because success would "necessarily imply" the invalidity of confinement and

ultimate removal pursuant to the AEA, Plaintiffs' success on their procedural due process claim does not "necessarily imply" the invalidity of their confinement and removal. Rather, success would merely grant Plaintiffs an opportunity to pursue an *additional* process: the habeas proceeding to which they are constitutionally entitled. And, of course, the habeas proceeding may or may not restrict the government's ability to use the AEA. In short, because the process due to Plaintiffs does not "necessarily" preclude Defendants' use of the AEA, Plaintiffs' procedural due process claim may proceed in equity.

As the district court properly recognized, the ability to raise a procedural due process claim outside of habeas in AEA cases is squarely in line with longstanding Supreme Court precedent. Plaintiffs' due process claim is just like other procedural claims that prisoners routinely bring outside of habeas, because such claims do not invariably invalidate the substantive punishment. *See, e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 78–83 (2005) (rejecting argument that due process challenge to parole proceeding may only be brought in habeas; success for plaintiffs would result in a new hearing, during which authorities would retain discretion to decline to shorten the prison term); *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (claim need not be brought in habeas if based on "procedural defect" that does not "necessarily imply the invalidity" of punishment); *Edwards v. Balisok*, 520 U.S. 641, 648–49 (1997) (challenge to unconstitutional procedures may be brought outside of habeas; in

contrast, challenge to alleged decisionmaker deceit and bias necessarily implied the invalidity of the punishment); *Skinner v. Switzer*, 562 U.S. 521, 533–34 (2011) (prisoner deprived of DNA testing may bring that claim outside of habeas because the results would not "necessarily" be exculpatory); *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013) (prisoner may bring challenge to Sentencing Guidelines outside of habeas where success would "do no more than allow [the challenger] to seek a sentence reduction, which the district court retains the discretion to deny"); *Anyanwutaku v. Moore*, 151 F.3d 1053, 1055 (D.C. Cir. 1998) (challenge to date for parole eligibility hearing need not be brought in habeas because parole decisions were "entirely discretionary," without "guarantee that [prisoner] would have been released any earlier").

Here, as the Supreme Court recognized, meaningful notice is a *precondition* to habeas review. *See J.G.G.*, 145 S. Ct. at 1006. Thus, it would make no sense to require Plaintiffs to bring their claim for notice in habeas—because their very ability to seek habeas was defeated by the lack of notice. *See A.A.R.P.*, 145 S. Ct. at 1370. It would mean, as Judge Boasberg correctly noted, that the government could "snatch anyone off the street, turn him over to a foreign country, and then effectively foreclose any corrective course of action." Op. 67; *see also Abrego Garcia v. Noem*, 2025 WL 1135112, at *2 (4th Cir. Apr. 17, 2025) (Wilkinson, J.) (expressing

concern about "the abrogation of habeas corpus through the transfer of custody to foreign detention centers").

Defendants seek support in Justice Scalia's dissent in *Hamdi v. Rumsfeld*, 542 U.S. 507, 557 (2004), for the unremarkable proposition that "'due process rights have historically been vindicated by the writ of habeas corpus.'" Mot. 12; *see also id.* (quoting *Brown v. Davenport*, 596 U.S. 118, 128 (2022), which in turn quotes the same dissent in *Hamdi*). But Justice Scalia was speaking only to the importance of the Great Writ. His observation says nothing about whether due process claims *must* be brought in habeas, let alone whether Plaintiffs' due process claim here—seeking an opportunity to *pursue* a habeas petition—must itself be brought in habeas.

Defendants additionally argue that "the point of" Plaintiffs' due process claim is to "challenge the validity of plaintiffs' removal." Mot. 13. However, as explained, Plaintiffs' success on their due process claim would merely give them the chance to file a habeas petition. It would not by itself invalidate Defendants' use of the AEA. Straining for analogies, Defendants argue that due process challenges to "unfair" criminal trials must be brought in habeas. *See* Mot. 13. But this is true only where the challenge would *necessarily* invalidate the conviction, as Defendants' own case explains. *See Mack v. City of Chicago*, 723 F. App'x 374, 374–76 (7th Cir. 2018) (where plaintiff alleged that detectives' "use of torture" to obtain "fabricated evidence against him" violated his right to due process, success on that claim

11

"necessarily would impugn the validity of his conviction"). Regardless, the analogy is inapt. Plaintiffs are not somehow arguing that their future habeas proceedings were unfair. Instead, they are seeking to vindicate their due process right to obtain an *opportunity* for a habeas proceeding—making this case like *Wilkinson*, *Skinner*, *Davis*, and *Anyanwutaku*.[4]

It also bears emphasis that the district court did not (contrary to Defendants' suggestion) order Defendants to return Plaintiffs to the territorial United States. Op. 67; *contra* Mot. 13 (arguing that the district court required Defendants to "undo[]" the removal). The district court may conclude that Defendants can "facilitate" habeas petitions by, for example, asserting physical or constructive custody over Plaintiffs outside the United States. But even if Defendants are eventually ordered to return Plaintiffs to the United States to facilitate habeas petitions, that decision would not

---

[4] Defendants' reliance (Mot. 13) on *I.M. v. U.S. Customs & Border Protection*, 67 F.4th 436, 443 (D.C. Cir. 2023), is likewise misplaced. There, the Court interpreted a provision of the Immigration and Nationality Act that authorized habeas review of certain immigration determinations. *Id.* The Court concluded that custody was required where the case was proceeding solely in habeas and the statute specified certain factual determinations could be challenged in habeas, *id.* at 440, but nothing in the decision or the INA would require Plaintiffs' procedural due process claim here to be brought in habeas.

Defendants also cite *Early v. Blankenship*, 221 F.3d 1342 (8th Cir. 2000) (unpublished table decision), Mot. 14, where the court required a due process challenge to disciplinary proceedings to be brought in habeas. But unlike here, the plaintiff there was not seeking a new or additional process—instead, he sought damages, which the court held "would necessarily imply the invalidity of [the] disciplinary result." 221 F.3d at 1342.

"necessarily imply" the invalidity of Plaintiffs' confinement and ultimate removal under the AEA, *J.G.G.*, 145 S. Ct. at 1005, because the outcome of Plaintiffs' habeas petitions is unknown.

Finally, Defendants incorrectly fault the district court for "develop[ing] a substitute alternative theory" of a due process claim outside of habeas. Mot. 11. Plaintiffs squarely raised this claim in their amended complaint, and they argued in their motion for a preliminary injunction that they could proceed in equity. *See* Am. Compl. ¶¶ 87, 95, 101, 142–45 (explaining that due process "is a precondition to the effective exercise of habeas rights" and thus the claim "lies outside of habeas"); Pet'rs' PI Mot., ECF No. 102-1 at 9–10 ("In the alternative, the Court has non-habeas jurisdiction to order Respondents to facilitate Petitioners' return to the United States, just as the Supreme Court ordered in *Abrego Garcia*."). This case is thus nothing like *United States v. Sineneng-Smith*, 590 U.S. 371, 377 (2020), *contra* Mot. 11, where the plaintiff never "so much as hint[ed]" at an overbreadth claim prior to the court of appeals raising it. *See also* 590 U.S. at 376, 380 (noting that "[t]he party presentation principle is supple, not ironclad").

### B. The district court has the power to order Defendants to facilitate Plaintiffs' ability to seek habeas relief.

The district court plainly has the power to require Defendants to "facilitate" Plaintiffs' ability to seek relief in habeas. Defendants' arguments to the contrary,

Mot. 15–21, are either foreclosed by the Supreme Court's decision in *Abrego Garcia* or fail on their own terms.

In *Abrego Garcia*, which Defendants' stay motion addresses only in a single footnote, the government argued strenuously that the district court had no power to order it to effectuate or even "facilitate" the return of the plaintiff because the United States lacked control over CECOT prisoners. Specifically, the government argued that Abrego Garcia was "under foreign control," contending that (1) Abrego Garcia "cannot be returned to the United States unless the Government of El Salvador releases him"; (2) "El Salvador has its own legal rationales for detaining members of criminal associations and foreign terrorist groups"; and (3) even "*requesting release by El Salvador*" would require "negotiations with the foreign sovereign that is currently holding Abrego Garcia" in violation of the executive's foreign affairs power. Appl. to Vacate Inj., *Noem v. Abrego Garcia*, 2025 WL 1038907, at \*13 ("*Abrego Garcia* Gov't Appl."); Reply in Supp. of Appl. to Vacate Inj., *Noem v. Abrego Garcia*, 2025 WL 1101707, at \*2–3, \*5 (emphasis added) ("*Abrego Garcia* Gov't Reply"). Despite these arguments, the Supreme Court affirmed the district court's authority to require the government to "facilitate Abrego Garcia's release from custody in El Salvador and to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." 145 S. Ct. at 1018.

On remand, the government dragged its feet, arguing that it need only remove domestic barriers to Abrego Garcia's return. In support of that argument, it filed a declaration stating that Abrego Garcia was detained at CECOT "pursuant to the sovereign, domestic authority of El Salvador." *Abrego Garcia*, No. 8:25-cv-00951 (D. Md.), ECF No. 79 at 6 n.3 (quoting Decl. of Michael Kozak). That declaration is strikingly similar to the declaration that the district court relied upon here. *See* Op. 22; Kozak Decl., ECF No. 129 (detention of those at CECOT is a matter "within the legal authority of El Salvador"). Nevertheless, the district court in *Abrego Garcia* confirmed that the government must "take the steps available to them toward aiding, assisting, or making easier Abrego Garcia's release from custody in El Salvador and resuming his status quo ante." 348 F.R.D. 589, 592 & n.1 (D. Md. 2025) (citing examples of the U.S. government's active facilitation of the return of improperly removed noncitizens). The government appealed that ruling to the Fourth Circuit, which denied its motion for a stay pending appeal. *See Abrego Garcia*, 2025 WL 1135112, at *1 ("'Facilitate' is an active verb.").

Yet here, Defendants have refused even to submit a proposal with whatever steps they could pursue to facilitate jurisdiction over Plaintiffs' habeas petitions. The government's claim that an order requiring even this minimal step is an affront to separation-of-powers principles cannot be squared with the Supreme Court's ruling in *Abrego Garcia*. As noted, the government made an identical argument in that

case, claiming that even the mere act of "requesting release" would intrude on the executive's foreign-affairs power, because "courts cannot order the Executive to conduct the country's foreign relations in a particular way." *Abrego Garcia* Gov't Reply, at *3–5. Yet the Court not only required the government to facilitate the return, but to "ensure that his case is handled as it would have been had he not been improperly sent to El Salvador," and "share what it can concerning the steps it has taken." 145 S. Ct. at 1018. Here, the district court merely asked Defendants for a plan and, out of an abundance of restraint, did not require any specific steps at this initial stage, Op. 67, making the government's argument premature, at best.

Defendants contend that the district court's remedy is "internally contradictory," arguing that "[b]ecause the Government lacks constructive custody, the Government cannot facilitate plaintiffs' ability to file for habeas." Mot. 16. But again, that argument ignores *Abrego Garcia*, where the Supreme Court required the government to facilitate return without making a finding that the United States had constructive custody or control of the CECOT prisoners—and did so over the government's objection that it lacked control over detainees in El Salvador.

In any event, the district court's rulings are not contradictory. The court concluded that the United States lacked constructive custody because the "current record" contains insufficient evidence that the United States has control over their detention. Op. 23. Even assuming that the district court's custody conclusion is

correct (which Plaintiffs dispute), Defendants can readily "facilitate" Plaintiffs' habeas petitions by making efforts to assert physical or constructive custody over them. "Facilitation" does not require Defendants to have complete control over Plaintiffs' detention—or anything close to it—as the Supreme Court's decision in *Abrego Garcia* makes clear.

And now, the U.S. government has returned Mr. Abrego Garcia to the United States. *See* Defs.' Reply in Support of Notice of Compliance, *Abrego Garcia v. Noem*, No. 8:25-cv-00951 (D. Md. June 10, 2025) (ECF No. 194). Defendants make only a half-hearted effort to minimize this fact, observing that Abrego Garcia was returned to the United States after the U.S. government "presented El Salvador with an arrest warrant." Mot. 20 n.3. But notably, Defendants do not claim that he was formally extradited pursuant to a treaty.[5] The U.S. government's "present[ation]" of an arrest warrant to El Salvador is fundamentally a U.S. *request* for Abrego Garcia's return—showing that Defendants can likewise request custody or constructive custody over Plaintiffs to facilitate their ability to bring habeas petitions.

Taking a different tack, Defendants assert that Plaintiffs cannot satisfy Article III's redressability requirement, claiming that that the "prospect of 'facilitation' is

---

[5] *Cf.* Dep't of Justice, Press Release (Aug. 10, 2022), https://perma.cc/7YPB-37FU (extradition "formally authorized by the Supreme Court of Justice of El Salvador").

too speculative to confer standing on plaintiffs to seek an injunction on due-process grounds." Mot. 21. But the Supreme Court's decision in *Abrego Garcia* answers this argument, too. There, the government represented that Abrego Garcia could not be returned "unless the Government of El Salvador releases him," *Abrego Garcia* Gov't Appl. at *13—and the Court still ordered the facilitation of his return. Defendants also claim, incorrectly, that Plaintiffs "provided no facts suggesting that El Salvador would likely transfer custody if a court ordered the United States to facilitate such a transfer." Mot. 19–20. In fact, Plaintiffs pointed to extensive evidence of ongoing U.S. influence over Plaintiffs' detention, including President Trump's assertion that he could return Mr. Abrego Garcia with a phone call, and additional evidence about the nature of the U.S.–El Salvador agreement and the payment terms. *See, e.g.*, Pet'rs' Sealed Response, ECF No. 145; Fritz Farrow, *Trump says 'I could' get Abrego Garcia back from El Salvador*, ABC News (Apr. 29, 2025), https://perma.cc/57A9-6AQY; Nayib Bukele (@nayibbukele), X.com (Mar. 16, 2025), https://x.com/nayibbukele/status/1901245427216978290 (the United States is paying to detain TdA members at CECOT "for a period of one year (renewable)"), ECF No. 102-14 at Exh. 9.[6]

---

[6] Defendants cite *Gul v. Obama*, 652 F.3d 12, 18 (D.C. Cir. 2011), Mot. 20, to imply that Plaintiffs' injuries are not "traceable" to Defendants. But there, the plaintiffs claimed they were injured by foreign countries' imposition of "collateral consequences" on them. *Gul*, 652 F.3d at 15–16. Here, in contrast, Plaintiffs'

Finally, Defendants argue there is no "ongoing" or "imminent injury" justifying prospective relief. Mot. 21 (citing *Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219, 1227 (D.C. Cir. 2024)). But Plaintiffs' injuries are plainly ongoing: they are facing grave harm and continue to be denied the process to which they are constitutionally entitled. As the district court held, an injunction barring deprivation of a plaintiff's rights is a proper remedy for a procedural due process violation. *See* Op. 36 (citing *Ray v. Foltz*, 370 F.3d 1079, 1085 n.8 (11th Cir. 2004), and *U.S. Pub. Int. Rsch. Grp. v. Atl. Salmon of Maine, LLC*, 339 F.3d 23, 33 (1st Cir. 2003)).

## II. The equities weigh heavily against a stay.

None of the other stay factors warrant the exceptional relief of a stay pending appeal. *See Nken*, 556 U.S. at 434. The government faces no irreparable harm because none of the actions it purports to challenge have in fact been ordered. Indeed, the government's claims of injury are both premature and wildly hyperbolic. *See* Mot. 21 (claiming the district court's order could force the United States "to engage in military actions"). Defendants gesture at the supposed injury of being required to *propose* steps that would "facilitate" Plaintiffs' ability to seek habeas relief, *id.*, but that is no injury at all. Indeed, it is an even more preliminary step than the facilitation order the Supreme Court affirmed in *Abrego Garcia*. 145 S. Ct. at

---

injuries—the deprivation of their due process rights—are directly traceable to Defendants.

1018. Plaintiffs, on the other hand, remain detained in one of the world's most brutal prisons and stand to suffer grave injuries if the district court's proceedings are put on hold pending yet another interlocutory appeal.

Defendants argue that the district court's order could (eventually) require them to engage with the Salvadoran government diplomatically, Mot. 22, but the Supreme Court and Fourth Circuit have already roundly rejected that claim as sufficient basis for a stay. *See Abrego Garcia*, 145 S. Ct. at 1019; *Abrego Garcia*, 2025 WL 1135112, at *1. Likewise, the government speculates that a future order requiring facilitation could "diminish" the United States' "reliability as a partner in fighting foreign terrorist organizations." Mot. 22. But through their claims, Plaintiffs seek to establish that the government *wrongly* designated them as members of TdA, as it rushed to deport people to El Salvador. *See* ECF 102-1 at 5; *see also* ECF 67-1 at 3–7; Op. 4–5. If that showing ultimately undermines the government's "reliability" by confirming that it sent many innocent people to El Salvador, it is an injury entirely of the government's own making, traceable to the due process violations it now concedes. And again, that argument is disposed of by *Abrego Garcia*.

By contrast, Plaintiffs' ability to seek relief—and to challenge their designation as "alien enemies"—is a matter of urgent importance to the members of Plaintiffs' class, especially given the evidence that few had criminal convictions and

many if not most were not TdA members. *See* Bishop Decl., ECF No. 102-5; Goebertus Decl., ECF No. 102-6; *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) (irreparable harm exists where petitioners "expelled to places where they will be persecuted or tortured"); *A.A.R.P.*, 145 S. Ct. at 1368 ("where it is alleged that detainees face indefinite detention" in a prison in El Salvador, "detainees' interests at stake are accordingly particularly weighty").

The public interest also counsels strongly against a stay. The public has an important interest in the government's compliance with due process, especially as the government continues to defend its use of the AEA to detain and remove hundreds more people under this wartime authority. And the public would suffer a real injury from any suggestion that the government can illegally remove people to a notorious prison in El Salvador, pay millions of dollars to ensure their ongoing imprisonment abroad, and then falsely claim to be powerless to facilitate any remedy. The same lawless shell game could be used against any other person or group that Defendants declare an "enemy." As Judge Wilkinson pointedly noted: "If today the Executive claims the right to deport without due process and in disregard of court orders, what assurance will there be tomorrow that it will not deport American citizens and then disclaim responsibility to bring them home?" *Abrego Garcia*, 2025 WL 1135112, at *2.

**CONCLUSION**

The Court should deny the requested stay.

Dated: June 16, 2025

Respectfully submitted,

*/s/ Lee Gelernt*

Evelyn Danforth-Scott
Spencer Amdur
Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo
Cody Wofsy
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
Tel.: (415) 343-0770

Arthur B. Spitzer
Scott Michelman
Aditi Shah
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
Tel.: (202) 457-0800

Kathryn Huddleston*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street, NW, 7th Floor
Washington, D.C. 20005
Tel.: (202) 546-6616

*Barred in Texas and Arizona only;
supervised by a member of the D.C. Bar*

Lee Gelernt
Daniel Galindo
Ashley Gorski
Patrick Toomey
Omar Jadwat
Hina Shamsi
Michael K.T. Tan
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2660
Fax: (332) 220-1702
lgelernt@aclu.org

Brian Netter
Bradley Girard
Christine L. Coogle
DEMOCRACY FORWARD
FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Tel.: (202) 448-9090
Fax: (202) 796-4426

*Counsel for Plaintiffs–Appellees*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of D.C. Cir. R. 27(d) because it contains 5,197 words.

2. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced and easy-to-read typeface using Microsoft Word in 14-point size font.

/s/ *Lee Gelernt*
Lee Gelernt
June 16, 2025
Counsel for *Plaintiffs–Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, I electronically filed the foregoing Certificate with the Clerk for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ *Lee Gelernt*
Lee Gelernt
June 16, 2025
Counsel for *Plaintiffs–Appellees*