# ORAL ARGUMENT NOT YET SCHEDULED

No. 25-5217

In the United States Court of Appeals
for the District of Columbia Circuit

**J.G.G.** et al.,

*Plaintiffs–Appellees,*

v.

**DONALD J. TRUMP**, in his official capacity
as President of the United States, et al.,

*Defendants–Appellants.*

On Appeal from an Order
of the United States District Court
for the District of Columbia

## APPELLANTS' REPLY IN SUPPORT OF
## MOTION FOR A STAY PENDING APPEAL

**Brett A. Shumate**
Assistant Attorney General

**Yaakov M. Roth**
Principal Deputy Assistant
  Attorney General

**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation

**Tiberius T. Davis**
Counsel to the
  Assistant Attorney General

**Anthony Nicastro**
Acting Director
Office of Immigration Litigation

*Counsel for Defendants–Appellants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

ARGUMENT ....................................................................................... 3

    I.     Plaintiffs Cannot Pursue Freestanding Due-Process Claims Outside of Habeas. ................................................... 3

    II.    Plaintiffs Cannot Obtain Injunctive Relief Through Freestanding Due-Process Claims. .......................................... 7

    III.   The Equities Favor a Stay of This Unprecedented Injunction. .................................................................................. 11

CONCLUSION ................................................................................. 13

## INTRODUCTION

Plaintiffs acknowledge that the district court lacked jurisdiction over their *pre-removal* challenges to their designation under the AEA Proclamation; as the Supreme Court made clear, those claims had to be pursued in habeas. And the district court itself acknowledged that it lacked habeas jurisdiction over Plaintiffs' *post-removal* challenges to their AEA designation; as the court found after review of the factual record, the United States does not have custody (constructive or otherwise) over the Class Members.

Yet the district court nonetheless issued a preliminary injunction, inventing a freestanding equitable claim under the Due Process Clause to force the government to (somehow) "facilitate" the ability of aliens held by a foreign sovereign to file habeas actions. That unprecedented and puzzling order, which seeks to manufacture habeas jurisdiction that is concededly absent, threatens serious harm to the Executive Branch. It should be stayed pending appeal.

Plaintiffs' defense of the order lacks merit. They say the Supreme Court recognized a right to notice and an opportunity to seek judicial review of AEA designations—but the Court simultaneously ruled that

1

such challenges must be pursued in habeas, which is why the district court here lacked jurisdiction. That Plaintiffs are now raising the same challenges *after* their removal makes the problem worse, not better, since their claims now necessarily imply the invalidity of the removals that already occurred.

Plaintiffs also insist that the federal courts have equitable power to order "facilitation" of habeas because the government can always plead with a foreign sovereign to release and return aliens in foreign custody. But a district judge is not the Secretary of State; diplomacy cannot be mandated or enjoined by court order, even in the District of Columbia. The sole example of such an order that Plaintiffs identify is facially distinguishable on many grounds, including that constructive custody in that case was an open question.

After twice having its orders blocked by higher courts, the district court's frustration may be understandable. But notwithstanding the Supreme Court's clarification of the law after the events at issue, Article III limits the power of the federal courts to order backward-looking equitable relief here. Bedrock principles of jurisdiction and the separation of powers compel a stay of the district court's order.

# ARGUMENT

## I. Plaintiffs Cannot Pursue Freestanding Due-Process Claims Outside of Habeas.

Plaintiffs' due-process claims sound in habeas. The Supreme Court made that clear in this very case. *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025) (per curiam). Plaintiffs argue that the Supreme Court held "in equity, not in habeas," that they were entitled to certain due-process protections. Resp. 6–7. That reading has it backward—*J.G.G.* squarely forecloses the district court's workaround.

In the first round of litigation, Plaintiffs brought an equitable due-process claim and sought a TRO based on it. ECF 1 ¶¶ 101–04; ECF 3-2, at 16–17. The district court granted the TRO based on a finding that "all class members must be given the opportunity to challenge their classifications as alien enemies, if they wish to do so, before they may be lawfully removed from the United States pursuant to the Proclamation." ECF 53 at 24. That due-process-focused order is what the Supreme Court vacated after concluding that such claims "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *J.G.G.*, 145 S. Ct. at 1005.

Plaintiffs' due-process claim in this current round is exactly the same. *See* Op. 67 ("CECOT Class members were entitled to notice and an opportunity to challenge their removability pursuant to the Proclamation."). If that claim had to proceed in habeas before the removals, then *a fortiori* it must proceed in habeas afterward, for now there is no doubt that this claim "necessarily impl[ies] the invalidity" of Plaintiffs' "removal under the AEA." *J.G.G.*, 145 S. Ct. at 1005.

After all, if a removal violated due process, even for "inadequate" notice, it is "void." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). As Plaintiffs admit, the point of their due-process claims is to challenge their removals. Resp. 8–9. And other aliens have received relief solely on due-process claims brought through habeas. *See A.S.R. v. Trump*, 2025 WL 1378784, at *20 (W.D. Pa. May 13, 2025); *Arevalo v. Trump*, 2025 WL 1554183, at *10 (C.D. Cal. June 2, 2025). Due-process challenges thus necessarily call into question the validity of the removals—which is why they must be brought in habeas.[1]

---

[1] Plaintiffs' string-cite (Resp. 9–10), is not to the contrary. In those cases, the due-process challenges did not imply the invalidity of the plaintiffs' convictions or sentences. Here, as the opinion below confirms, success on the due-process claims means the removals were legally invalid. Op. 39. Under *J.G.G.*, that means the claims sound in habeas.

4

Plaintiffs' effort to use the Supreme Court order affirmatively is not credible. Yes, the Court discussed due-process requirements—but only to "confirm" that the "Government expressly agree[d]" on certain minimum protections. *Id.* But "the question," there as here, was "which court will resolve that challenge." *Id.* And the answer was *not* this D.C. court. *Id.* Just as that sufficed to vacate the original TROs, it suffices to vacate the new preliminary injunction. *See LoBue v. Christopher*, 82 F.3d 1081, 1082 (D.C. Cir. 1996) ("[T]he key to plaintiffs' inability to pursue a suit here is jurisdictional, and it rests merely on the availability—not the actual seeking—of habeas relief elsewhere.").

Nor does the Supreme Court's later order in *A.A.R.P. v. Trump*, 145 S. Ct. 1364 (2025) (per curiam), suggest otherwise. That case arose from a proper habeas petition filed in the district of confinement. *Id.* at 1366. The government argued that a *class action* could not proceed and that "individual habeas petitions" were required, which the dissent echoed. *Id.* at 1370; *see also id.* 1375 (Alito, J., dissenting). The majority disagreed. *Id.* But here, the problem is not that Plaintiffs are pursuing a *class action*; the problem is they trying to proceed *outside of habeas*. That is impermissible. *J.G.G.*, 145 S. Ct. at 1005.

5

Finally, Plaintiffs assert that "a claim of insufficient notice, time, and opportunity to file the habeas petition cannot *itself* be restricted to habeas" or else the "government would control whether anyone ever gets to challenge their designation." Resp. 8. That does not follow. If there is a dispute over the sufficiency of notice or opportunity to challenge an AEA designation, an alien may need to sue to vindicate that right. But that is exactly what the putative class did in *A.A.R.P.*— in the district of confinement. There is no reason why that sort of prospective challenge, inextricably intertwined with the legality of the detention and removal, could only be brought outside of habeas.

To be sure, habeas jurisdiction may not be available *ex post* if (as here) the government no longer has custody—just as a criminal defendant can no longer challenge his trial after he has served his sentence. *See, e.g.*, *Savory v. Cannon*, 947 F.3d 409, 431 (7th Cir. 2020) (en banc) (rejecting argument that "release from custody and the unavailability of habeas relief means that section 1983 must be available as a remedy"). But that is not a basis to ignore jurisdictional limits. *See id.* at 420 ("[T]here is not always a . . . remedy for every constitutional wrong.").

6

In short, Plaintiffs' due-process claims must be pursued in habeas; if habeas is no longer available because of lack of custody, that simply means these claims can no longer be brought. The court cannot instead invoke the Constitution to order the government to manufacture habeas jurisdiction that all agree is lacking.

## II. Plaintiffs Cannot Obtain Injunctive Relief Through Freestanding Due-Process Claims.

Even assuming Plaintiffs could proceed outside of habeas, their due-process claims are a dead end. The district court found that the government lacks custody, and with no custody comes no remedy. This means there is no real Article III case or controversy.

The district court's order to "facilitate Petitioners' ability to proceed through habeas" is internally inconsistent. Op. 67. The court correctly found the United States does not have constructive custody: The Class Members are being held by an independent sovereign, for its own reasons, at its own prison. Op. 24. So how can the government "facilitate" habeas? The government does not "have the bodies," and cannot bring them before the judge.

Plaintiffs respond that the government could "assert physical or constructive custody" over the aliens in CECOT (Resp. 17), but never

explain what that would entail. To the extent asserting "physical" custody would entail seizing CECOT by force, even Plaintiffs disclaim that option. Resp. 19. And asserting "constructive" custody would be meaningless given the finding that it does not exist. Asserting it would not make it so.

Plaintiffs ultimately concede that the only way to facilitate habeas would be to seek to regain custody from a foreign sovereign. But that is not something a court can order. For one thing, relief would be wholly "speculative" and dependent on the conduct of a foreign sovereign, which cannot suffice for Article III. *See Hecate Energy LLC v. FERC*, 126 F.4th 660, 665–66 (D.C. Cir. 2025); *Gul v. Obama*, 652 F.3d 12, 18 (D.C. Cir. 2011) (refusing to "order the Government to take all steps within its power to alleviate [plaintiffs'] injury" after transfer of custody to foreign sovereigns). For another, such an order would clearly violate the separation of powers by inserting the judiciary into sensitive issues of foreign affairs. *See J.O.P. v. DHS*, 2025 WL 1431263, at *14–15 (4th Cir. May 19, 2025) (Richardson, J., dissenting) ("[H]owever far 'facilitate' goes, it cannot encompass an order requiring specific diplomatic communication from the Executive Branch."). For good reason, matters

of foreign affairs are "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952). The President's power to speak for the country "in the field of international relations" is both "plenary and exclusive." *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936). Yet the district court's order, in effect, lets a single judge usurp that power and speak on behalf of the nation. That cannot be right.

Plaintiffs have no real answer to these points beyond rehashing *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). But *Abrego* does not justify the sweeping injunction here. To start, the district court there did not decide the habeas issues and made no factual findings regarding custody. *See Abrego Garcia v. Noem*, 2025 WL 1014261, at *4 (D. Md. Apr. 6, 2025) (disclaiming any need to "wade into the murky jurisdictional implications that flow from such a challenge"). Here, the district court correctly found no constructive custody, Op. 22–27, which makes facilitating return or habeas impossible. That has controlling implications for Article III justiciability.

9

Moreover, subsequent events in *Abrego* have exposed the problems with "facilitation" orders involving aliens in foreign custody. The order effectively required the Secretary of State to engage in foreign policy. *See Abrego Garcia v. Noem*, No. 8:25-CV-00951, ECF 200, at 3, 6–7 (D. Md.). And, in the end, El Salvador only agreed to return Abrego-Garcia after he was criminally indicted. *Id.*; *see also* https://x.com/nayibbukele/status /1931084729840800096?s=46, (June 6, 2025) (Salvadoran President Bukele explaining what motivated him to release Abrego Garcia: "As I said in the Oval Office . . . I would never smuggle a terrorist into the United States [and] I would never release a gang member onto the streets of El Salvador [but] we work with the Trump administration, and if they request the return of a gang member to face charges, of course we wouldn't refuse."). The order thus interfered with the Executive Branch's foreign-affairs power and its prosecution power.

While the Supreme Court may not have been willing to stay a narrow order for a single alien removed in admitted violation of an immigration judge's order, the Constitution assuredly does not permit a "facilitation" injunction for over 100 members of a foreign terrorist organization whose due-process rights were only elucidated by a

Supreme Court decision weeks after their removal—especially when the Court specifically said those procedures must be provided "after the date of this order." *J.G.G.*, 145 S. Ct. at 1006.

In the end, Plaintiffs cannot circumvent the absence of habeas jurisdiction by seeking on constitutional grounds an order that would force the government to create habeas jurisdiction. This Court should not countenance the third attempt at this extreme remedy.

**III. The Equities Favor a Stay of This Unprecedented Injunction.**

Plaintiffs argue the district court only ordered the government to propose how to facilitate habeas, so there is no irreparable injury. Resp. 15–16, 19. But other than military action or diplomatic steps, there are no other means to that end. And forcing the United States to submit a proposal to do either would infringe on the Executive's core foreign affairs and military powers, constituting an irreparable harm. *See Biden v. Texas*, 597 U.S. 785, 805 (2022) (Supreme Court has "taken care to avoid 'the danger of unwarranted judicial interference in the conduct of foreign policy.'"); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981) (order threatens "serious, perhaps irreparable, consequence" to separation of powers).

11

Notably, the district court previously issued an unprecedented criminal contempt order that likewise required additional submissions as a first step. ECF 80. Plaintiffs argued, as they do here, that a stay would be premature because the order gave the government options and did not (yet) impose irreparable harm to its foreign-affairs power or its prosecutorial authority. Yet this Court granted an administrative stay. *J.G.G. v. Trump*, 2025 WL 1151208, at *1 (D.C. Cir. Apr. 18, 2025). The district court's new injunction attempts to accomplish the same result through similar means. Allowing it to remain in place is likely to result in similar irreparable harms to the government; it should be stayed for the same reasons.

Plaintiffs also argue that there is a public interest in compliance with the Due Process Clause. But the government has been abiding by the Supreme Court's new due-process holdings; Plaintiffs do not suggest otherwise. The dispute here is solely retrospective, dealing with removals that occurred *before* the Supreme Court clarified the law. In that limited context, the overriding public interest lies in respecting the separation of powers, which means Executive Branch primacy over foreign affairs. *See Harisiades*, 342 U.S. at 589. The alternative is a constitutional collision

that benefits nobody. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 389–90 (2004) (A "constitutional confrontation between the two branches . . . should be avoided whenever possible.").

## CONCLUSION

The district court's order should be stayed.

Respectfully submitted,

**Brett A. Shumate**
Assistant Attorney General

**Yaakov M. Roth**
Principal Deputy Assistant Attorney General

s/Drew C. Ensign
**Drew C. Ensign**
Deputy Assistant Attorney General
Office of Immigration Litigation
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044-0878
(202) 514-2000
drew.c.ensign@usdoj.gov

**Tiberius T. Davis**
Counsel to the Assistant Attorney General

**Anthony Nicastro**
Acting Director
Office of Immigration Litigation

Dated: June 18, 2025    *Counsel for Defendants–Appellants*

# Certificate of Compliance for Papers Submitted Under Fed. R. App. P. 27(d)(2)(C)

1.    This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(C) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,456 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word for Microsoft 365 MSO (Version 2504 Build 16.0.18730.20220) 64-bit.

Dated: June 18, 2025    s/Drew C. Ensign
    *Counsel for Defendants–Appellants*