No. 25-5217

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

J.G.G., *et al.*,

*Plaintiffs–Appellees*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States, *et al.*,

*Defendants–Appellants*.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
No. 1:25-cv-00766
Hon. James E. Boasberg

## PLAINTIFFS–APPELLEES' REPLY
## IN SUPPORT OF MOTION TO SUPPLEMENT THE RECORD

| | |
|---|---|
| My Khanh Ngo | Lee Gelernt |
| Evelyn Danforth-Scott | *Counsel of Record* |
| Spencer Amdur | Daniel Galindo |
| Noelle Smith | Ashley Gorski |
| Oscar Sarabia Roman | Patrick Toomey |
| Cody Wofsy | Omar Jadwat |
| AMERICAN CIVIL LIBERTIES | Hina Shamsi |
|    UNION FOUNDATION | AMERICAN CIVIL LIBERTIES |
| 425 California Street, Suite 700 |    UNION FOUNDATION |
| San Francisco, CA 94104 | 125 Broad Street, 18th Floor |

(415) 343-0770

Arthur B. Spitzer
Scott Michelman
Aditi Shah
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION OF
   THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800

Kathryn Huddleston*
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
915 15th Street, NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500

*Barred in Texas and Arizona only; supervised by a member of the D.C. Bar

New York, NY 10004
(212) 549-2660
lgelernt@aclu.org

Brian Netter
Bradley Girard
Christine L. Coogle
DEMOCRACY FORWARD
   FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090

*Counsel for Plaintiffs–Appellees*

# INTRODUCTION

This case is not moot. Plaintiffs' core claim, and the district court's ruling, is not that Plaintiffs were erroneously sent to El Salvador rather than Venezuela, but that they were unlawfully removed *from the United States* under the Alien Enemies Act ("AEA") and denied the right to contest their AEA designations and removals. Because CECOT class members ("Plaintiffs") remain outside the United States, they continue to suffer the consequences of their unlawful removal (including danger in Venezuela, the country from which they fled).

Notably, despite this Court's specific request that the parties address the Harper Declaration and its impact on any relief that may require the Executive "to negotiate a diplomatic deal," Order at 1 (July 21, 2025) (quoting government motion), the government never even mentions the declaration. Importantly, the declaration affirms that the Maduro regime will not stand in the way of Plaintiffs' return, thereby eliminating the government's central contention that it cannot be forced to engage in negotiations with a foreign sovereign. With that argument gone, the government is left only with its catch-22 argument that Plaintiffs' procedural due process claim—the right to notice and a meaningful opportunity to file a habeas petition—can be sought only through habeas itself, even if the government forcibly whisks individuals out of the country without *any* opportunity to seek habeas.

1

In short, not only is the case still live, but Plaintiffs' transfer to Venezuela, along with other intervening factual developments, significantly undermine the government's arguments. Because these developments were not before the district court, Plaintiffs do not oppose a remand so that it can address mootness and other issues in the first instance (if this Court does not simply deny the stay).

## I. THE CASE IS NOT MOOT.

### A. Plaintiffs Continue To Suffer Injuries That Can Be Remedied.

Without even any semblance of process, the government designated Plaintiffs as "alien enemies," terminated their immigration proceedings mid-stream on that basis, and removed them without allowing them to pursue their asylum claims or other immigration relief to escape persecution in Venezuela. The district court found that Plaintiffs were unlawfully removed without due process, and specifically without the ability to contest their removal under the AEA. The government does not dispute that merits finding. *See generally* Defs.' Stay Mot. (Jun. 10, 2025). Because Plaintiffs remain outside the United States and unable to seek humanitarian protections here, the case is not moot: Plaintiffs' harms can be remedied by, for example, allowing them to return to the United States so they can challenge their

AEA designations and seek humanitarian protection if they prevail in their AEA challenges.¹

Defendants understandably do not claim that once a noncitizen is removed, the case automatically becomes moot and courts are powerless to remedy the unlawful removal. Nor do Defendants argue that they cannot facilitate Plaintiffs' return, given the assurances from the Maduro regime described in the Harper Declaration. As noted, Defendants do not even mention this change in circumstances, even though their central argument previously rested on their purported inability to obtain release of anyone at CECOT and the inappropriateness of a court asking them even to try. But now the option of facilitating class members' return or other effective relief is plainly available. Indeed, in another case, the government recently confirmed that, in light of the Harper Declaration, it is "prepared to . . . facilitat[e] [a CECOT class member's] return to the United States should he want to return."² Joint Status Rep., *J.O.P. v. DHS*, No. 8:19-cv-01944 (D. Md. July 25, 2025) (ECF No. 363).

---

¹ Plaintiffs' prospective claims ten through thirteen, which were brought in both habeas and equity, are likely now moot because they are specific to detention at *CECOT*. Am. Compl. ¶¶ 149–73.

² The individual in that case is a class member here and also part of a settlement guaranteeing certain individuals an affirmative asylum hearing before their removal. If the government can facilitate that individual's return to pursue relief in *J.O.P.*, it can facilitate the return of all the Plaintiffs in this case.

3

Instead, the government offers two arguments. First, Defendants argue that even if there was constructive habeas custody while Plaintiffs were detained at CECOT, they are not in physical custody in Venezuela, and for that reason the case is moot. Resp. to Mot. to Supp. 2–4 (July 23, 2025) ("Resp."). But that is immaterial. The claim that there was constructive custody in El Salvador was not the basis for the district court's exercise of jurisdiction and is not an issue presently on appeal. *But see infra* Section II (noting relevance of recently discovered facts as to whether Plaintiffs were in U.S. constructive custody in El Salvador at the time of Plaintiffs' habeas filing); *Carafas v. LaVallee*, 391 U.S. 234, 237–39 (1968) (jurisdiction over habeas petition was "not defeated by the release of the petitioner prior to completion of proceedings on such application").[3]

The government's other argument is that the relief the district court ordered— facilitating Plaintiffs' ability to file habeas petitions—renders the case moot.

---

[3] The government's reliance on cases such as *I.M. v. U.S. Customs and Border Protection*, 67 F.4th 436, 444 (D.C. Cir. 2023), is therefore misplaced. Resp. 3. That case was *not* about mootness, but about when habeas custody is established—an issue not currently before this Court. Defendants' reliance on *Qassim v. Bush*, 466 F.3d 1073, 1077 (D.C. Cir. 2006), is similarly misplaced because it also was about habeas custody. Notably, moreover, *Qassim* acknowledged the well-established exception to mootness in habeas proceedings where there are collateral consequences, explaining that the petitioners there "allege[d] no collateral consequence" of their past detention. Here, Plaintiffs are clearly suffering collateral consequences, but that issue need not be addressed unless and until the district court concludes that Plaintiffs were in constructive custody at the time of their habeas filing.

4

Defendants do not of course claim that relief is impossible, but rather that it is an "odd and inappropriate remedy" for Defendants to take Plaintiffs back into custody when they are free in Venezuela. Resp. 3. Defendants' argument is perplexing, to say the least. First, Plaintiffs are in danger in Venezuela, the country from which they fled. If they would prefer to be in the United States so they can seek humanitarian relief, even if it means doing so while in detention, then that is their (understandable) choice given the danger they face in Venezuela. More fundamentally, the district court did not require Defendants to detain Plaintiffs at all. Indeed, Defendants could simply place Plaintiffs back into immigration proceedings so they could continue to pursue asylum and other humanitarian relief from persecution in Venezuela.[4]

---

[4] The Supreme Court in *J.G.G.* held that detained individuals may only challenge their AEA designation in habeas. *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025). The Court did not address, however, whether habeas is required in cases where the government designated individuals as alien enemies but declined to place them in detention. In any event, even if habeas remained the only way to challenge one's AEA designation in such a scenario, one need not be in physical custody to seek habeas relief, as long as there is a restraint on the individual's liberty (as there would be if one were designated an alien enemy under the AEA), *see, e.g.*, *Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 301 (1984) ("restraints not shared by the public generally" amount to custody for habeas purposes, even if a petitioner is not physically confined); *Jones v. Cunningham*, 371 U.S. 236, 239–40 (1963) (habeas petitioner need not be in "physical custody" to seek the writ), or there are collateral consequences from prior designation and removal.

In short, there is nothing about the relief thus far ordered by the district court that would render this "entire action" moot. Resp. 3–4. That is especially so because the district court simply ordered Defendants to "submit proposals" for Plaintiffs to have an opportunity to pursue habeas relief. *See* Dist. Ct. Op. at 67 (ECF No. 148).

## II. THE NEW CIRCUMSTANCES SUPPORT REMAND OR SUPPLEMENTATION OF THE APPELLATE RECORD.

In light of the significant new developments, Plaintiffs believe it would be appropriate for the district court to first consider the impact of these developments. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *cf. Maqaleh v. Hagel*, 738 F.3d 312, 333 (D.C. Cir. 2013), *rev'd on other grounds*, 575 U.S. 908 (2015) (remanding question of whether United States retained custody over petitioner following transfer to foreign government because "we lack the benefit of the district court's examination of the evidence in the first instance"). Among the issues for the district court to consider in the first instance would be:

- Whether Defendants can show that "the entire action" is now moot. *See Maldonado v. D.C.*, 61 F.4th 1004, 1006 (D.C. Cir. 2023) (party claiming mootness bears a "heavy burden") (citation omitted);

- Whether Plaintiffs are in custody in Venezuela, and whether any wish to return to the United States, even if it means being placed in detention in the United States;

- Whether the Harper Declaration negates any argument that the district court's facilitation order interferes with the Executive Branch's conduct of foreign affairs;

- The extent to which Plaintiffs were in U.S. constructive custody in El Salvador or are currently in U.S. constructive custody in Venezuela;

- The relevance of the recent prisoner exchange to the parties' arguments about facilitation and custody, given the benefits and assurances the United States obtained from the exchange;

- Whether additional fact-finding is warranted regarding U.S. custody over the CECOT detainees at the time of the filing of the Amended Complaint, particularly in light of the recent disclosure of the U.N. Report, which reflects El Salvador's representation that the United States had "legal responsibility" for the detainees at CECOT;[5]

---

[5] Defendants misconstrue the substance and the significance of the U.N. Report. Resp. 6–7. The cited language is neither "confusing" nor "unclear," *id.*: it states that (1) El Salvador implemented a "bilateral cooperation mechanism with another State," (2) El Salvador "facilitated the use of the Salvadoran prison infrastructure for the custody of persons detained" within the legal system of the other State, and (3) "jurisdiction and legal responsibility for these persons lie exclusively with the

- Whether additional fact-finding is warranted as to whether Defendants violated their discovery obligations by not producing the U.N. document or other relevant materials. *See also* Pls.' Resp. to Stay Mot. 6–7 (Jun. 16, 2025) (describing deficiencies in Defendants' production).[6]

Alternatively, if the Court does not remand, it should supplement the appellate record to ensure that this case is not decided on an incomplete and inaccurate record. As explained in Plaintiffs' concurrently filed reply in *J.G.G. v. Trump*, No. 25-5124 (D.C. Cir.), the "interests of justice" standard has applied in this Court for decades, *see, e.g.*, *Gatewood v. United States*, 209 F.2d 789, 792 (D.C. Cir. 1953), and Defendants' citations to out-of-circuit cases do not alter that fact, Resp. 4–5.

## CONCLUSION

Plaintiffs respectfully request that the Court deny the stay and supplement the appellate record, or alternatively, remand for the district court to rule in the first instance on the many issues raised by the recent factual developments.

---

competent foreign authorities, by virtue of international agreements signed and in accordance with the principles of sovereignty and international cooperation in criminal matters." Pls.' Mot. to Supp., Ex. 1 at PDF 5. This language is plainly not "referring only to the *removals* of the individuals from the United States." Resp. 7.

[6] Defendants' claim that they did not possess the U.N. Report is belied by the face of the document, which states that the U.S. government is copied. *See* Pls.' Mot. to Supp., Ex. 1 at PDF 2. At a minimum, the omission of the U.N. Report from Defendants' production shows why further fact-finding is necessary.

| | |
|---|---|
| Date: July 28, 2025 | Respectfully submitted, |
| | /s/ *Lee Gelernt* |
| My Khanh Ngo | Lee Gelernt |
| Evelyn Danforth-Scott | *Counsel of Record* |
| Spencer Amdur | Daniel Galindo |
| Noelle Smith | Ashley Gorski |
| Oscar Sarabia Roman | Patrick Toomey |
| Cody Wofsy | Omar Jadwat |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION | Hina Shamsi |
| 425 California Street, Suite 700 | AMERICAN CIVIL LIBERTIES UNION FOUNDATION |
| San Francisco, CA 94104 | 125 Broad Street, 18th Floor |
| (415) 343-0770 | New York, NY 10004 |
| | (212) 549-2660 |
| Arthur B. Spitzer | lgelernt@aclu.org |
| Scott Michelman | |
| Aditi Shah | Brian Netter |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA | Bradley Girard |
| | Christine L. Coogle |
| | DEMOCRACY FORWARD FOUNDATION |
| 529 14th Street, NW, Suite 722 | P.O. Box 34553 |
| Washington, D.C. 20045 | Washington, D.C. 20043 |
| (202) 457-0800 | (202) 448-9090 |
| Kathryn Huddleston* | |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION | *Counsel for Plaintiffs–Appellees* |
| 915 15th Street, NW, 7th Floor | |
| Washington, D.C. 20005 | |
| (212) 549-2500 | |

*Barred in Texas and Arizona only; supervised by a member of the D.C. Bar*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. 27(d) because it contains 1,989 words.

2. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced and easy-to-read typeface using Microsoft Word in 14-point size font.

<u>/s/ *Lee Gelernt*</u>
Lee Gelernt
July 28, 2025
*Counsel for Plaintiffs–Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2025, I electronically filed the foregoing Certificate with the Clerk for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ *Lee Gelernt*
Lee Gelernt
July 28, 2025
*Counsel for Plaintiffs–Appellees*