No. 25-5217                                   September Term, 2024

1:25-cv-00766-JEB

**Filed On:** August 8, 2025

J.G.G., et al.,

       Appellees

    v.

Donald J. Trump, in his official capacity as
President of the United States, et al.,

       Appellants

      **BEFORE:**    Katsas, Rao, and Walker, Circuit Judges

# O R D E R

Upon consideration of the emergency motion for a stay pending appeal, the opposition thereto, and the reply; the Rule 28(j) letter and the response thereto; and the motion to supplement the record, the opposition thereto, and the reply, it is

**ORDERED** that the district court's order entered on June 4, 2025, Docket No. 147, be vacated and that this case be remanded to the district court for further proceedings for the reasons discussed in the attached statement. It is

**FURTHER ORDERED** that the motion to supplement the record and the motion for a stay pending appeal be dismissed as moot in light of the remand.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to issue the mandate herein and dissolve the administrative stay entered on June 10, 2025, seven days after issuance of this order.

### Per Curiam

                                            **FOR THE COURT:**
                                            Clifton B. Cislak, Clerk

                      BY:     /s/
                              Daniel J. Reidy
                              Deputy Clerk

*Per Curiam*: This case concerns an ongoing dispute over the rights of Venezuelan nationals and alleged members of Tren de Aragua removed from the United States pursuant to the Alien Enemies Act. In this latest round, the district court issued a preliminary injunction ordering the government to facilitate the ability of a class of Venezuelans, who had been removed to El Salvador, to seek habeas corpus relief. The government appealed and sought a stay pending appeal. While its appeal raised serious questions about a court's power to direct the Executive's diplomatic conduct, we do not reach those questions because of a fundamental change in circumstances: the class members have since been released from Salvadoran custody and transferred to Venezuela, where they are not likely to remain in custody. These intervening events have overtaken the rationale for the injunction. We therefore vacate the district court's order and remand for further proceedings.

\* \* \*

On March 14, the President invoked the Alien Enemies Act (AEA), 50 U.S.C. § 21, to order the detention and removal of Venezuelan nationals who are members of Tren de Aragua (TdA). Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua, 90 Fed. Reg. 13,033 (Mar. 20, 2025). TdA is a designated foreign terrorist organization, and the President has stated that it is "closely aligned with," and has "infiltrated," the regime of Nicolás Maduro that currently controls Venezuela. *Id.* On the evening of March 15, the government removed from the United States a number of aliens allegedly subject to this AEA proclamation. It then transferred custody over these aliens to the government of El Salvador, which placed them in a prison known as the Terrorism Confinement Center (CECOT).

Earlier on March 15, five suspected TdA members detained in southern Texas filed suit in our district court to prevent their removal under the AEA. They asserted a due-

process right to prior notice and an opportunity to contest their removability. The district court provisionally certified a class of individuals subject to the proclamation, and it temporarily restrained the government from removing these individuals pursuant to the proclamation. Before this TRO issued, two airplanes carrying members of this class left United States airspace. Most of these individuals were transferred into Salvadoran custody and placed in CECOT.

The government appealed and sought a stay. This court denied relief, but the Supreme Court vacated the TRO. *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025) (per curiam). It explained that the plaintiffs' claims were "core" habeas claims because they "necessarily impl[ied] the invalidity of [the plaintiffs'] confinement and removal under the AEA." *Id.* at 1005 (cleaned up). The Court further explained that jurisdiction over core habeas claims lies only in the district of confinement. *See id.* at 1005–06. Because the plaintiffs were detained in the Southern District of Texas, the Supreme Court held that our district court could not grant them habeas relief. *See id.* at 1006. Nonetheless, the Court observed that aliens subject to removal under the AEA must, as a matter of due process, receive notice and an opportunity to contest their removal in habeas before the proper court. *Id.*; *see also A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025) (per curiam).

After the Supreme Court's ruling, seven new plaintiffs, as next friends of individuals removed under the proclamation and then detained in CECOT, joined an amended habeas action brought on behalf of these individuals. The plaintiffs moved the district court to certify a class of all such aliens, and they sought an order for the government to return class members to the United States and to cease detaining them pursuant to the AEA. On the plaintiffs' telling, our district court could grant this relief because class members were detained in El Salvador,

which is not within any federal judicial district. *See Rasul v. Bush*, 542 U.S. 466, 483–84 (2004). The plaintiffs also requested a preliminary injunction directing the government "to immediately request and take all reasonable steps to facilitate" the release and return of class members to the United States. Text of Proposed Order, *J.G.G. v. Trump*, No. 25-cv-766 (JEB), Dkt. No. 102-15 at 2 (D.D.C. Apr. 25, 2025).

The district court granted a preliminary injunction. The court held that it likely lacked jurisdiction over the habeas claims of the CECOT detainees. It explained that, in relevant part, the federal habeas statute authorizes courts to grant relief only to persons in actual or constructive United States "custody." 28 U.S.C. § 2241(c)(1), (3); *see Munaf v. Geren*, 553 U.S. 674, 686 (2008). The court found that the United States had neither form of custody over the CECOT detainees. The plaintiffs argued that El Salvador was detaining them at the United States' behest. But the district court rejected that argument after jurisdictional discovery, and it concluded that El Salvador had independent legal grounds for the detentions—grounds "far outside the ken of a federal district court." *See J.G.G. v. Trump*, No. 25-cv-766 (JEB), 2025 WL 1577811, at *11 (D.D.C. June 4, 2025); *see also* Decl. of Michael G. Kozak ¶ 9, *J.G.G. v. Trump*, No. 25-cv-766 (JEB), Dkt. No. 129 (D.D.C. May 16, 2025) ("the detention and ultimate disposition" of the plaintiffs "are matters within the legal authority of El Salvador").

Yet the court construed the complaint as raising a different claim outside of habeas—an equitable claim that the government violated due process when it removed suspected TdA members without "notice and a meaningful opportunity to challenge their designation as alien enemies." *J.G.G.*, 2025 WL 1577811, at *14 (cleaned up). The court concluded that this claim need not be brought in habeas because it did not

"necessarily imply" that the CECOT detainees had been removed unlawfully; instead, success on this claim would grant them "only the chance to argue as much" in habeas. *Id*. The court then held that the claim was likely to succeed on the merits because the CECOT detainees had been removed from the United States before they had an adequate opportunity to seek habeas relief. *See id.* at *16–18.

The court proceeded to certify a class of all aliens removed from the United States and transferred to CECOT based on the proclamation. *See J.G.G.*, 2025 WL 1577811, at *29. And it preliminarily enjoined the government to "facilitate" class members' ability to contest their removals in habeas. *See id.* at *31. The court invited the government to propose ways of complying with this directive. But it emphasized that the government must take action that would allow class members to "actually seek habeas relief," and it indicated that it would order more concrete steps if the government's proposals proved unsatisfactory. *Id.* (cleaned up); *see also* Order, *J.G.G. v. Trump*, No. 25-cv-766 (JEB), Dkt. No. 147 (D.D.C. June 4, 2025).

The government appealed the order and sought a stay pending appeal. When that motion was filed, the order presented serious constitutional questions. It compelled the government "to facilitate the ability" of the CECOT detainees "to seek habeas relief" against the United States in our domestic courts, Order, *supra*, at 1, which would have required United States custody over the detainees, *see Munaf*, 553 U.S. at 686. Given the court's finding that the United States did not have custody over the detainees, *see J.G.G.*, 2025 WL 1577811, at *11, the order likely would have required the United States to engage in diplomacy to gain custody over the detainees from El Salvador. Yet federal courts likely cannot order the Executive Branch to engage in diplomacy or to reach

specified diplomatic goals. *See, e.g.*, *United States ex rel. Keefe v. Dulles*, 222 F.2d 390, 394 (D.C. Cir. 1954) ("[T]he commencement of diplomatic negotiations with a foreign power is completely in the discretion of the President and the head of the Department of State, who is his political agent. The Executive is not subject to judicial control or direction in such matters."); *see also, e.g.*, *Edye v. Robertson*, 112 U.S. 580, 598 (1884) (when it comes to matters of "international negotiations," "courts have nothing to do and can give no redress"); *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 111 (1948).

While the motion was pending, however, the Salvadoran government reached a diplomatic agreement with the Maduro regime to release 252 Venezuelan nationals, including the class members, from CECOT for transfer to Venezuela. *See* Decl. of Melissa B. Harper, *J.G.G. v. Trump*, No. 25-cv-766 (JEB), Dkt. No. 168-1 ¶ 7 (D.D.C. July 18, 2025) (Harper Decl.). It now appears that, pursuant to that agreement, the class members are, or soon will be, free in Venezuela. *See* Hearing Transcript, *J.G.G. v. Trump*, No. 25-cv-766 (JEB), Dkt. No. 169 at 5 (D.D.C. July 24, 2025) (Hearing Transcript). Moreover, the Venezuelan government apparently has promised not to oppose return of the class members to the United States under certain circumstances. *See* Harper Decl., *supra*, ¶ 9.

In light of these developments, we find that it is "just under the circumstances" to vacate the order and remand the case to the district court for further proceedings. *See* 28 U.S.C. § 2106. Vacatur and remand are often proper when changed circumstances "alter the appropriateness of injunctive relief" while a case is pending on appeal. *Goland v. CIA*, 607 F.2d 339, 370 n.7 (D.C. Cir. 1978) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208 & n.3 (2d Cir. 1972)); *cf. Douglas v.*

*Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 610 (2012). The class members' transfer from CECOT to Venezuela is such a change. Among other things, the transfer alters the harm experienced by plaintiffs. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). It may also affect the government's ability to obtain custody over class members without having to engage in diplomacy. And it may affect how, or even whether, the named plaintiffs or class members wish to continue to press their claims, particularly if doing so would require them to submit to United States' custody. *See* Hearing Transcript, *supra*, at 6–7. Moreover, if the plaintiffs do wish to proceed, they may be required to adjust their habeas and other claims to account for these changed circumstances. *See id.* at 8–9. For its part, the government contends that the transfer rendered the entire action moot—an issue best addressed by the district court in the first instance. Under these circumstances, it would make little sense for this Court to review a preliminary injunction that, in all likelihood, has been overtaken by events.

\* \* \*

For these reasons, we vacate the district court's June 4, 2025 order (Dkt. No. 147) and remand for further proceedings. We express no opinion on what kind of class or relief, if any, may be appropriate in light of the changed circumstances.

*So ordered*.